UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

                               **AFFIDAVIT**

               Plaintiff,

   -against-                      08 Civ. 1141 (WCC)

KIMBAL VISCUSO, CHARLES M. BIRNS     **ECF CASE**
and BETH S. MARTIN-BIRNS,

               Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK      )
                        :SS.:
COUNTY OF WESTCHESTER  )

    ROBERT D. MEADE, being duly sworn, deposes and says:

    1.     I am a member of the firm of Bleakley Platt & Schmidt, LLP, the attorneys for

the plaintiff, The William Penn Life Insurance Company of New York ("William Penn"), and

submit this affidavit in support of this motion pursuant to Rule 67 of the Federal Rules of

Civil Procedure for an order permitting plaintiff to deposit the sum of $350,000 plus interest

from April 4, 2007 to the date of deposit at the rate of 5 ½ % per annum into the registry of

the Court and for a further order pursuant to 28 U.S.C. § 2361 restraining the defendants from

instituting or prosecuting any proceeding in any state or federal court affecting the property

which is the subject of this action.

    2.     On February 5, 2008, William Penn commenced an action for interpleader in

this Court as to the right of the defendants to the sum of $350,000 by filing a summons and

complaint with the Clerk of this Court.  A copy of the summons and complaint is Exhibit "A."

3.    This action concerns the right to the proceeds of William Penn life insurance policy 070014261 issued on or about November 8, 1995 insuring the life of Jon Fieldman. The policy was issued in the amount of $350,000 (Ex. "B").

4.    As indicated in the application for the policy the designated beneficiary was Kimbal Viscuso (Ex. "C").

5.    On or about November 13, 2006, William Penn received a change of beneficiary form signed by Michael Birns (Ex. "D"), acting pursuant to a "Durable Power of Attorney" dated January 31, 2005, executed by Jon Fieldman (Ex. "E").  The beneficiaries indicated on the form submitted by Michael Birns were Charles M. Birns and Beth S. Martin-Birns.

6.    William Penn processed the request and sent written notice of the change of beneficiary to Jon Fieldman (Ex. "F").

7.    Upon information and belief, Jon Fieldman died on April 4, 2007 (Ex. "G").

8.    William Penn has received claims for the proceeds on behalf of Charles Birns and Beth S. Martin-Birns (Ex. "H").  As indicated in Exhibit "D," they are residents of the County of Westchester, State of New York.

9.    Kimbal Viscuso has also asserted a claim to the proceeds (Ex. "I").

10.    As discussed in the annexed affidavit of Victor Fonseca of William Penn, interest on the proceeds is payable from the date of death at the rate of 5 ½ % per annum pursuant to the terms of the policy.

11.    As a condition of proceeding with interpleader, 28 U.S.C. § 1335(a)(2) requires that the sum in dispute be deposited into the registry of the Court.  William Penn requests leave to deposit the funds at this time.

12.     William Penn makes no claim to any part of the funds sought to be deposited and has no interest in which of the parties asserting adverse claims against the sum recovers all or any part thereof.  Because William Penn has no further interest in the sum in question and later will seek to be discharged from this action, the deposit of the disputed sum is a precondition to that discharge.

13.     The sum sought to be deposited represents the full proceeds of the subject policy with statutory interest to date and is therefore the proper amount to be deposited with the Court for the purposes described above.

**THE MOTION OF WILLIAM PENN FOR INJUNCTIVE RELIEF**

14.     As discussed in William Penn's memorandum of law, submitted in support of this motion, 28 U.S.C. § 2361 provides that a district court before which a statutory interpleader action is pending may enjoin the claimants/defendants from commencing or maintaining any other action concerning the property which is the subject of the interpleader action.

15.     As indicated in Exhibit "J," Ms. Viscuso is a resident of the State of New Jersey.  Ms. Viscuso has commenced suit against William Penn in a New Jersey state court seeking to recover the policy proceeds.  Ms. Viscuso contends that the change of beneficiary was made without authority.  As alleged in her complaint (Ex. "J"), Ms. Viscuso is a resident of the State of New Jersey.

16.     The attorneys for Ms. Viscuso were requested by the attorneys for William Penn to agree to litigate this matter in a New York federal or state court in order for William Penn to insure that all claimants are before the same tribunal (Ex. "K").  They have refused to do so (Ex. "L").  As stated by her attorney, Richard D. Catenacci, "(w)e have not sued any parties other than William Penn Life Insurance Company of New York and have not filed an

interpleader action, nor is it our intention to voluntarily participate in an interpleader action in any Court."

17.    As further discussed in William Penn's memorandum of law, Ms. Viscuso should be enjoined from continuing her New Jersey action.

18.    A copy of the answer of the Birns defendants in this action is Exhibit "M." The first counterclaim seeks to recover the policy proceeds based upon a breach of contract theory.

19.    As the result, each defendant is seeking to recover the policy proceeds based upon a suit on the contract.

20.    William Penn did file an interpleader summons and complaint in the Supreme Court, County of Nassau on December 21, 2007 (Ex. "N").  This was before notice of the commencement of the New Jersey action was received.

21.    The Court subsequently refused to sign William Penn's ex-parte request for payment of the proceeds into Court and directed that a motion be submitted on notice to the defendants (Ex. "O").

22.    Service of the summons and complaint in the state action was not made on any party.  This action has now been discontinued, as a matter of right (Ex. "P"), for the reasons discussed in Point II of William Penn's memorandum of law.

WHEREFORE, it is requested that the relief sought on this motion be granted, together with such further and different relief as to this Court may seem just and proper.

ROBERT D. MEADE (RM-8324)

Sworn to before me this 23rd day of April, 2008

NOTARY PUBLIC

STEPHANIE MONDELLO
Notary Public, State of New York
No. 01MO4946377
Qualified in Putnam County
Certifcate Filed in Westchester County
Commission Expires 3|6|11

4

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

                    Plaintiff,

          v.

KIMBAL VISCUSO, CHARLES M. BIRNS
and BETH S. MARTIN-BIRNS,

                    Defendants.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

# 08 CIV. 1141

## JUDGE CONNER

TO: (Name and address of defendant)

Kimbal Viscuso                Charles M. Birns              Beth S. Martin-Birns
300 Spring Street             17 Hadden Road                17 Hadden Road
Red Bank, NJ 07701            Scarsdale, NY 10583           Scarsdale, NY 10583

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Bleakley Platt & Schmidt, LLP
One North Lexington Avenue
P.O. Box 5056
White Plains, NY 10602-5056

an answer to the complaint which is herewith served upon you, within ___ twenty (20) ___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

FEB - 5 2008

**J. MICHAEL McMAHON**
_____
CLERK

_____
BY) DEPUTY CLERK

DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

                Plaintiff,

   -against-

KIMBAL VISCUSO, CHARLES M. BIRNS
and BETH S. MARTIN-BIRNS,

                Defendants.

-------------------------------------------------------------------X

**COMPLAINT FOR
INTERPLEADER**

(28 U.S.C. § 1335(a))

CIVIL ACTION NO.: 08 Civ. 1141(WCC)

        Plaintiff, The William Penn Life Insurance Company of New York ("William Penn"),

complaining of defendants, by its attorneys Bleakley Platt & Schmidt, LLP, alleges:

## JURISDICTION AND VENUE

      1.     Plaintiff is a corporation organized and existing pursuant to the laws of the State of

New York, with its offices and principal place of business located in the County of Nassau, State of

New York.

      2.     At all times hereinafter mentioned, plaintiff was authorized by the New York State

Insurance Department to engage in the business of the issuance of policies of life insurance.

      3.     Upon information and belief, defendant Kimbal Viscuso is an individual who is a

citizen of the State of New Jersey.

      4.     Upon information and belief, defendant Charles M. Birns is an individual who is a

citizen of the State of New York and a resident of the County of Westchester.

      5.     Upon information and belief, defendant Beth S. Martin-Birns is an individual who is a

citizen of the State of New York and is a resident of the County of Westchester.

6. This Court has jurisdiction over this statutory interpleader action pursuant to the provisions of 28 U.S.C. § 1335(a) because there is diversity of citizenship between claimant Kimbal Viscuso and claimants Charles M. Birns, and Beth S. Martin-Birns, and because, as more fully explained below, they are asserting adverse claims to the proceeds of a life insurance policy that is in an amount in excess of $500.

7. This Court has jurisdiction over this statutory interpleader action pursuant to the provisions of 28 U.S.C. § 1335(2) because after the filing of this complaint the plaintiff will move for an order permitting the deposit of the full amount of the disputed proceeds into the registry of this Court.

8. This Court is the proper venue for this action under 28 U.S.C. § 1397 because the residence of defendants and claimants Charles M. Birns and Beth S. Martin-Birns is within the judicial district.

## SUMMARY OF ADVERSE CLAIMS

9. On or about November 8, 1995, William Penn issued life insurance policy 070014261 insuring the life of Jon Fieldman.

10. The policy was in the face amount of $350,000.

11. The owner of the policy was Jon Fieldman.

12. The designated beneficiary of the policy was Kimbal Viscuso.

13. On or about November 13, 2006, William Penn received a "Beneficiary Change Form" signed by Michael Birns, acting pursuant to a "Durable Power of Attorney" executed by Jon Fieldman dated January 31, 2005.

14. The Primary Beneficiaries indicated on the form submitted by Michael Birns were Charles M. Birns and Beth S. Martin-Birns.

15.     On or about November 13, 2006, William Penn sent a written notification of the purported change of beneficiary to Jon Fieldman.

16.     Upon information and belief, Jon Fieldman died on April 4, 2007.

17.     Subsequent to the death of Jon Fieldman, Michael Birns notified William Penn that the proceeds of the subject policy were claimed on behalf of Charles Birns and Beth S. Martin-Birns.

18.     Kimbal Viscuso has notified William Penn that she is claiming the proceeds of the subject policy as the "named beneficiary."

19.     Under the terms of the policy, there is now due the sum of $350,000 with interest from April 4, 2007 pursuant to New York Insurance Law § 3214.

20.     There is no dispute as to the amount payable under the policy.

21.     William Penn is indifferent and disinterested as to which of the defendants is entitled to the proceeds of the policy or to the division of the proceeds between them. William Penn is unable to determine to whom the amount due under the policy is payable and is unable to safely determine which of the defendants is entitled to that amount. As a result of these adverse claims, William Penn is or may be exposed to double liability.

22.     The whole amount of the proceeds or a part thereof is claimed adversely by the defendants, without any collusion on the part of William Penn.

23.     In pursuing this interpleader action, William Penn has incurred costs and attorney's fees in an amount to be shown at a hearing on the propriety of proceeding with this interpleader action.

WHEREFORE, plaintiff demands judgment:

(1)     That each of the defendants be restrained from instituting or maintaining any action against the plaintiff for the recovery of the proceeds of William Penn life insurance policy 070014261 or any action seeking any part of these proceeds;

3

(2)     Requiring defendants to interplead together concerning their claims to the proceeds;

(3)     That plaintiff be discharged from all further liability on the policy or for the proceeds payable on it;

(4)     That plaintiff be awarded its costs and attorney's fees incurred in this action; and

(5)     For such other and further relief as the Court deems just and proper, together with expenses, costs and disbursements of this action payable from the proceeds of the subject policy.

Dated: White Plains, New York
      February 4, 2008

BLEAKLEY PLATT & SCHMIDT, LLP

BY: _____

     ROBERT D. MEADE (RM8324)
*Attorneys for Plaintiff*
ONE NORTH LEXINGTON AVENUE
P.O. BOX 5056
WHITE PLAINS, NY 10602-5056
(914) 949-2700

4



# William Penn Life
## INSURANCE COMPANY OF NEW YORK

100 QUENTIN ROOSEVELT BLVD. • PO BOX 519
GARDEN CITY, NY 11530

The Company will pay the Beneficiary the death benefit as set forth in the contract. Payment will be made after due proof of the Insured's death and written claim are received at the Home Office. Such proof must show that the Insured died:

- while this Policy was in force; and
- prior to the Maturity Date.

The Company will pay the Owner any Cash Surrender Value on the Maturity Date if the Insured is living on that date.

Any payment is subject to the provisions on this and the following pages.

The consideration for this Policy is the application and the payment of the initial premium on or before policy delivery. A copy of the application is attached to and made a part of this contract.

This contract has been signed for the Company at its Home Office on the Date of Issue.

*Mark A. Canter*

Secretary

*Brinelli*

Registrar

*Joseph M. Sullivan*

President

**Flexible Premium Adjustable Life Insurance Policy**
**Adjustable Death Benefit Payable Prior to the Maturity Date**
**Flexible Premiums Payable During Insured's Lifetime to Maturity Date**
**Non-Participating - No Dividends**

**Notice Of Twenty-Day Right To Examine Contract**
**This is a legal contract between the Owner and William Penn Life. Read the Policy carefully. If the Owner is not satisfied with the contract, return it within 20 days to be cancelled. Return it to the Company at the address shown above, or to the agent who sold the Owner the contract. The Company will then return any payments made, and it will be as if no contract was issued.**

L-FPA 5/91

SPECIMEN

## Table of Contents

| Item | Page No. |
|---|---|
| Face Page | 1 |
| Policy Schedule | 3 |
| **General Provisions** | |
| The Contract | 4 |
| Policy Date, Month, Year & Anniversary | 4 |
| Owner and Beneficiary | 4 |
| Change of Owner and Beneficiary | 4 |
| Assignment | 4 |
| Time Limit on Contests (Incontestability) | 4 |
| Suicide | 5 |
| Misstatement of Age or Sex | 5 |
| Payment of Proceeds | 5 |
| Nonparticipating | 5 |
| Annual Report | 5 |
| Projection of Benefits and Values | 5 |
| **Premium Provisions** | |
| General | 6 |
| Flexible Premiums | 6 |
| Planned Premium Payments | 6 |
| Unscheduled Additional Premiums | 6 |
| Premium Limitation | 6 |
| Application of Premiums | 6 |
| Grace Period | 6 |
| Reinstatement | 7 |
| **Insurance Provisions** | |
| Death Benefit | 7 |
| Changes in Specified Amount | 8 |
| Maturity Date | 8 |

| Item | Page No. |
|---|---|
| Guaranteed Values | 8 |
| Policy Account Value | 9 |
| Monthly Deduction | 9 |
| Interest Rate | 9 |
| Cost of Insurance | 9 |
| Cost of Insurance Rate | 9 |
| Basis of Computations | 9 |
| **Non-forfeiture Provisions** | |
| Continuation of Insurance | 10 |
| Paid-Up Insurance on Guaranteed Basis | 10 |
| Surrender | 10 |
| Cash Surrender Value | 10 |
| Surrender Charge | 10 |
| Partial Surrender | 10 |
| Partial Surrender Charge | 11 |
| **Policy Loans** | |
| Loan Value | 11 |
| Available Loan Value | 11 |
| Interest on Policy Loans | 11 |
| Repayment of Policy Loans | 11 |
| **Options for Payment of Proceeds** | |
| Options Available | 12 |
| Death of Payee under Payment Options | 12 |
| Tables for Payment Options | 13 |

UPA 5/04

POLICY SCHEDULE

POLICY NUMBER:  0700014261

SCHEDULE OF BENEFITS

| FORM NUMBER | TYPE OF COVERAGE | AMOUNT | ANNUAL PREMIUM | RATING CLASS |
|---|---|---|---|---|
| L-FPA5/91 | FLEXIBLE PREMIUM ADJUSTABLE LIFE | $350,000.00 | $4,886.00 | M-SMOKER |

NOTE:  IT IS POSSIBLE THAT THE CASH SURRENDER VALUE MAY BE SMALL OR NON-EXISTENT ON THE MATURITY DATE SHOWN OR THAT COVERAGE WILL EXPIRE PRIOR TO THE MATURITY DATE, WHERE EITHER PREMIUMS ARE NOT PAID OR INTEREST CREDITED IS INSUFFICIENT. IF THE CURRENT INTEREST RATE OR COST OF INSURANCE RATES CHANGE, THIS WILL AFFECT COVERAGE AND CASH SURRENDER VALUE AT THE MATURITY DATE.

MINIMUM CASH SURRENDER VALUES ARE BASED ON THE COMMISSIONERS 1980 STANDARD ORDINARY MORTALITY TABLE, WITH INTEREST AT 4%.

PLANNED ANNUAL PREMIUM:        $4,886.00          OWNER:  JON FIELDMAN

PREMIUM PAYMENT INTERVAL:        ANNUAL           DATE OF ISSUE:        NOVEMBER  8, 1995

MATURITY DATE:        OCTOBER 13, 2043          POLICY DATE:        OCTOBER 13, 1995

INSURED:  JON        FIELDMAN                    POLICY NUMBER:        0700014261

AGE & SEX:                47    MALE            POLICY LOAN INTEREST RATE:
                                                        7.40% PER YEAR IN ADVANCE

BENEFICIARY:        SEE APPLICATION

L-FPA5/91                        PAGE 3        

POLICY SCHEDULE (CONTINUED)

POLICY NUMBER:  0700014261

INSURANCE COVERAGE INFORMATION:

INITIAL SPECIFIED AMOUNT:                $350,000.00

CURRENT SPECIFIED AMOUNT:                $350,000.00

MINIMUM SPECIFIED AMOUNT:                $175,000.00

BENEFIT OPTION:                          OPTION      1
                                         (SPECIFIED AMOUNT)

PREMIUM LIMITATION INFORMATION:

GUIDELINE LEVEL PREMIUM:                 $9,395.05

GUIDELINE SINGLE PREMIUM:                $100,333.09

EXPENSE CHARGES:

MONTHLY POLICY FEE:                      $6.25

ADMINISTRATION FEE FOR PARTIAL SURRENDER:   $25.00

INTEREST CREDITING:

THE MINIMUM GUARANTEED INTEREST RATE TO BE CREDITED IS 4%, EFFECTIVE ANNUALLY.  THE
POLICY ACCOUNT VALUE WHICH SECURES LOANS WILL BE CREDITED WITH AN EFFECTIVE ANNUAL
INTEREST RATE EQUAL TO THE POLICY LOAN INTEREST RATE, LESS 2%.

THE CREDITING OF ANY EXCESS INTEREST WILL VARY BY THE AMOUNT BY WHICH THE ACCOUNT
VALUE EXCEEDS POLICY INDEBTEDNESS, AS FOLLOWS:

| POLICY ACCOUNT VALUE IN EXCESS OF LOAN | TOTAL EFFECTIVE CREDITED INTEREST RATE |
|---|---|
| LESS THAN $10,000 | CURRENT ANNUAL BASE RATE |
| $10,000 - $19,999 | CURRENT ANNUAL BASE RATE + .50% |
| $20,000 AND OVER | CURRENT ANNUAL BASE RATE + .75% |

THE CURRENT ANNUAL BASE RATE WILL BE AS DETERMINED BY THE COMPANY AND MAY VARY
DEPENDING UPON CURRENTLY EXPECTED INVESTMENT YIELDS.  HOWEVER, THE CURRENT RATES
ARE GUARANTEED NOT TO CHANGE DURING THE FIRST POLICY YEAR.

L-FPA5/91                    PAGE 3A

SPECIMEN

POLICY SCHEDULE (CONTINUED)

TABLE OF SURRENDER CHARGES

POLICY NUMBER:  0700014261

| POLICY YEAR | SURRENDER CHARGE |
|---|---|
| 1 | 14,441.00 |
| 2 | 13,409.50 |
| 3 | 12,378.00 |
| 4 | 11,346.50 |
| 5 | 10,315.00 |
| 6 | 9,283.50 |
| 7 | 8,252.00 |
| 8 | 7,220.50 |
| 9 | 6,189.00 |
| 10 | 5,157.50 |
| 11 | 4,126.00 |
| 12 | 3,094.50 |
| 13 | 2,063.00 |
| 14 | 1,031.50 |
| 15 | 0.00 |

SPECIMEN

POLICY SCHEDULE (CONTINUED)
POLICY NUMBER: 0700014261

GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES PER $1,000
RATING CLASSIFICATION:    MALE    SMOKER    STANDARD

| POLICY YEAR | ATTAINED AGE | MAXIMUM RATE | POLICY YEAR | ATTAINED AGE | MAXIMUM RATE |
|---|---|---|---|---|---|
| 1 | 47 | .62251 | 25 | 71 | 5.08855 |
| 2 | 48 | .67630 | 26 | 72 | 5.55642 |
| 3 | 49 | .73685 | 27 | 73 | 6.08662 |
| 4 | 50 | .80082 | 28 | 74 | 6.66862 |
| 5 | 51 | .87496 | 29 | 75 | 7.31730 |
| 6 | 52 | .95760 | 30 | 76 | 7.99178 |
| 7 | 53 | 1.05216 | 31 | 77 | 8.68058 |
| 8 | 54 | 1.15868 | 32 | 78 | 9.37272 |
| 9 | 55 | 1.27212 | 33 | 79 | 10.08913 |
| 10 | 56 | 1.39507 | 34 | 80 | 10.86205 |
| 11 | 57 | 1.52246 | 35 | 81 | 11.71251 |
| 12 | 58 | 1.65858 | 36 | 82 | 12.66752 |
| 13 | 59 | 1.80005 | 37 | 83 | 13.73779 |
| 14 | 60 | 1.95717 | 38 | 84 | 14.88656 |
| 15 | 61 | 2.13432 | 39 | 85 | 16.07811 |
| 16 | 62 | 2.33420 | 40 | 86 | 17.27457 |
| 17 | 63 | 2.56130 | 41 | 87 | 18.45789 |
| 18 | 64 | 2.81241 | 42 | 88 | 19.76999 |
| 19 | 65 | 3.08515 | 43 | 89 | 21.08692 |
| 20 | 66 | 3.37018 | 44 | 90 | 22.42853 |
| 21 | 67 | 3.67025 | 45 | 91 | 23.82284 |
| 22 | 68 | 3.98026 | 46 | 92 | 25.33222 |
| 23 | 69 | 4.31179 | 47 | 93 | 27.31458 |
| 24 | 70 | 4.67927 | 48 | 94 | 29.94249 |

THESE RATES ARE BASED ON THE 1980 CSO MORTALITY TABLE, AGE NEAREST BIRTHDAY.

L-FPA5/91                          PAGE 3C

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261
                                  AGE 47 M SMOKER      TABLE STANDARD
                                  POLICY DATE:10/13/1995

ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:          4886
INITIAL SPECIFIED AMOUNT:        350000          MATURITY DATE:10/13/2043
OTHER COVERAGES:   NONE

| | | BASED ON CURRENT FACTORS | | | BASED ON GUARANTEED FACTORS | | |
|---|---|---|---|---|---|---|---|
| POLICY YEAR | ANNUAL PREMIUM | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT |
| 01 | 4886 | 2778 | 0 | 350000 | 2458 | 0 | 350000 |
| 02 | 4886 | 5573 | 0 | 350000 | 4720 | 0 | 350000 |
| 03 | 4886 | 8376 | 0 | 350000 | 6838 | 0 | 350000 |
| 04 | 4886 | 11354 | 8 | 350000 | 8794 | 0 | 350000 |
| 05 | 4886 | 14475 | 4160 | 350000 | 10540 | 225 | 350000 |
| 06 | 4886 | 17754 | 8471 | 350000 | 12034 | 2751 | 350000 |
| 07 | 4886 | 21257 | 13005 | 350000 | 13218 | 4966 | 350000 |
| 08 | 4886 | 24962 | 17742 | 350000 | 14027 | 6807 | 350000 |
| 09 | 4886 | 28909 | 22720 | 350000 | 14416 | 8228 | 350000 |
| 10 | 4886 | 33139 | 27982 | 350000 | 14323 | 9166 | 350000 |
| 11 | 4886 | 37574 | 33448 | 350000 | 13703 | 9577 | 350000 |
| 12 | 4886 | 42199 | 39105 | 350000 | 12485 | 9391 | 350000 |
| 13 | 4886 | 47146 | 45083 | 350000 | 10607 | 8544 | 350000 |
| 14 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| 15 | 4886 | 57968 | 57968 | 350000 | 4389 | 4389 | 350000 |
| 16 | 4886 | 63768 | 63768 | 350000 | 0 | 0 | 0 |
| 17 | 4886 | 69725 | 69725 | 350000 | 0 | 0 | 0 |
| 18 | 4886 | 75834 | 75834 | 350000 | 0 | 0 | 0 |
| 19 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| 20 | 4886 | 88517 | 88517 | 350000 | 0 | 0 | 0 |
| AGE 60 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| AGE 65 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| AGE 70 | 4886 | 116227 | 116227 | 350000 | 0 | 0 | 0 |

PAGE 1 OF 3     SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261
                                           AGE 47 M SMOKER     TABLE STANDARD
                                           POLICY DATE:10/13/1995


ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:        4886
INITIAL SPECIFIED AMOUNT:     350000         MATURITY DATE:10/13/2043
OTHER COVERAGES:   NONE

GUARANTEED VALUES ARE BASED UPON GUARANTEED COST OF INSURANCE AND EXPENSE
CHARGES AND 4% INTEREST.   CURRENT VALUES ARE BASED UPON THE CURRENT
COST OF INSURANCE AND EXPENSE CHARGES AND THE CURRENT INTEREST RATE,
WHICH VARIES BY POLICY ACCOUNT VALUES AS FOLLOWS:

        POLICY ACCOUNT VALUE       CURRENT INTEREST RATE
             0 - 9,999                   6.50%
         10,000 - 19,999                 7.00%
         20,000 AND OVER                 7.25%

THE CURRENT INTEREST RATES ARE GUARANTEED NOT TO CHANGE DURING THE FIRST
POLICY YEAR.

THE PORTION OF POLICY ACCOUNT VALUE WHICH EQUALS THE AMOUNT OF ANY UNPAID
LOAN IS CREDITED WITH 6% INTEREST.   ALL INTEREST RATES SHOWN ARE EFFECTIVE
ANNUAL RATES.   INTEREST IS CREDITED MONTHLY AFTER DEDUCTION OF EXPENSE
AND COST OF INSURANCE CHARGES.

PREMIUMS ARE FLEXIBLE.   PREMIUMS ILLUSTRATED ARE BASED ON INTENDED PREMIUMS
AND, IF PAID OTHER THAN ANNUALLY, POLICY ACCOUNT VALUES AND CASH SURRENDER
VALUES WILL BE LESS THAN IF PREMIUMS WERE PAID ON AN ANNUAL BASIS.

THE POLICY ACCOUNT VALUES, CASH SURRENDER VALUES AND DEATH BENEFIT ILLUSTRATED
ARE END OF THE POLICY YEAR VALUES.

COVERAGE WILL CEASE IN YEAR 16 UNLESS THE PREMIUM IS INCREASED ON THE
GUARANTEED BASIS.

THE POLICY LOAN INTEREST RATE IS 7.4% PAYABLE IN ADVANCE.

A SERVICE CHARGE OF $25.00 WILL BE DEDUCTED FROM THE POLICY ACCOUNT VALUE
EACH TIME A PARTIAL SURRENDER AMOUNT IS PAID.

THE TAX STATUS OF THIS CONTRACT AS IT APPLIES TO THE HOLDER OF THIS POLICY
OR CONTRACT SHOULD BE REVIEWED EACH YEAR.



WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX              POLICY #:0700014261

WILLIAM PENN LIFE INSURANCE COMPANY        EKA PLANNING SERVICES INC
   OF NEW YORK                             11 GRACE AVENUE
100 QUENTIN ROOSEVELT BLVD PO BOX 519      SUITE 402
GARDEN CITY, NEW YORK    11530             GREAT NECK NY 11021
                                           PREPARED ON:  11/08/95

|  | GUARANTEED VALUES | PROJECTED VALUES |
|---|---|---|
| FLEXIBLE PREMIUM ADJUSTABLE LIFE | | |
| 10 YEAR SURRENDER COST | 11.977 | 7.907 |
| 10 NET PAYMENT | 13.960 | 13.960 |
| 20 YEAR SURRENDER COST | .000 | 6.676 |
| 20 YEAR NET PAYMENT | .000 | 13.960 |

AN EXPLANATION OF THE INTENDED USE OF THE INDICES IS PROVIDED IN THE LIFE
INSURANCE BUYER'S GUIDE.

SPECIMEN

**General Provisions**

**The Contract**
This is a contract between the Owner and William Penn Life Insurance Company of New York (The Company). The entire contract consists of:
- this policy, and any attached riders, amendments and endorsements;
- the original application, a copy of which was attached at issue;
- any supplemental application, which will be made a part of the policy when a change goes into effect.

All statements made in an application are deemed representations and not warranties. No statements will void this Policy or be used in defense of a claim unless it is contained in the original or a supplemental application.

Only an Officer of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**Policy Date, Month, Year and Anniversary**
The policy date is stated in the policy schedule. Each policy month begins on the same day of each month as the policy date. The first day of each policy month is a monthly anniversary. Each policy year begins on the same day and month as the policy date. A policy anniversary occurs on the first day of each policy year after the first year.

**Owner and Beneficiary**
The Owner is named in the Policy Schedule. The beneficiary is as stated in the application. These designations will remain in effect until changed by the Owner.

The Owner has rights as stated in the Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent.

Unless otherwise specified, death proceeds will not be paid to a beneficiary who dies before, at the same time as, or within 30 days after the Insured and before the Company receives due proof of the Insured's death. If no beneficiary survives, payment will be made to the Owner or the Owner's estate or successors.

**Change of Owner and Beneficiary**
The Owner may change the designations of Owner and Beneficiary during the Insured's lifetime. Written notice of change must be filed at the Home Office at the address shown on the cover page in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**Assignment**
The Company is not responsible for the validity or effect of any assignment of this policy. No assignment will bind the company until it is received at the Home Office. Any proceeds payable to the assignee are payable in a single sum, even if a payment option was previously elected for settlement.

**Time Limit on Contests (Incontestability)**
The Company cannot contest this policy after it has been in force two years during the Insured's lifetime from the date of issue or the date of any reinstatement, except for nonpayment of premium. If the policy has been reinstated after the policy is in force two years after the date of issue, only statements in the reinstatement application may be contested. If reinstatement occurs within two years of the date of issue the Company may:

1. contest statements on the original application for two years after the date of issue; and
2. contest statements on the reinstatement application for two years after the date of reinstatement.

Any increase in specified amount, which requires evidence of insurability, will be contestable only after such increase has been in force during the Insured's lifetime for two years following the effective date of such increase.

This provision does not apply to any rider which is included with the Policy. The Incontestability section of the rider will apply.



**Suicide**

If the Insured dies by suicide within two years from the Date of Issue, the death proceeds will be an amount equal to:

- the premiums paid; less
- any loan against this Policy; less
- partial surrender amounts and partial surrender charges.

If the Insured dies by suicide:

- within two years from the effective date of an increase in the Specified Amount; but
- more than two years from the Date of Issue;

the death proceeds with respect to the increase will be an amount equal to the Cost of Insurance for the increase. This amount may be reduced if:

- there is a loan against this Policy; or
- there have been partial surrenders of this Policy.

**Misstatement of Age or Sex**

If the Insured's age or sex is misstated, the proceeds payable will be those purchased by the most recent monthly deduction at the correct attained age and sex.

**Payment of Proceeds**

Proceeds means:

- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy; or
- the amount payable on the Maturity Date.

The proceeds will be paid from the Home Office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum. Payment will be made immediately upon receipt of due proof of death. The Company will pay interest on the proceeds from the date of death to the date the proceeds are paid. The interest rate will not be less than that required by law at the place of delivery of this contract.

**Nonparticipating**

This Policy does not share in any distribution of surplus. No dividends are payable. The Company will not recoup any prior losses nor distribute past gains by means of changes in cost of insurance or in credited interest rates.

**Annual Report**

An Annual report will be sent to the Owner. It will show since the last report:

- the premiums paid;
- the cost of insurance and the cost of riders;
- interest credited;
- the amount of any partial surrenders;
- the amount of any policy loan, with interest for the current year;
- the Policy Account Value; and
- the Cash Surrender Value.

The report will also include other information as required by state law and regulation.

**Projection of Benefits and Values**

The Owner may request a projection of illustrative future death benefits and Cash Surrender Values. The request must be in writing to the Home Office. A fee may be charged for this service, but it will never exceed $25.00.

The illustration will be based on:

- assumptions specified by the Owner as to Specified Amount(s), death benefit option(s), and premium payment(s); and
- other necessary assumptions specified by the Company and/or the Owner.



**Premium Provisions**

**General**
The first premium is due on the Policy Date. No insurance is effective until the first premium is paid.

All premiums are payable in advance either:
- at our Home Office at the address shown on the cover; or
- to our authorized agent in exchange for a receipt signed by our President or Secretary and countersigned by such agent.

**Flexible Premiums**
Premium payments are flexible. The owner may choose the amount and frequency of premium payments. The actual amount and frequency of payment will affect the Policy Account Value and could affect the amount and duration of insurance provided by this policy.

**Planned Premium Payments**
The planned premium payment and payment interval are shown on in the Policy Schedule. The owner may change the planned premium payment shown on the premium notices. The notices may be sent at any interval offered by the Company on the date the change is requested.

**Unscheduled Additional Premiums**
The owner may pay additional premiums at any time prior to the Maturity Date subject to the Premium Limitation.

**Premium Limitation**
Congress has established certain guidelines which determine the qualification of this policy as a life insurance policy. These guidelines establish that the sum of the premiums paid under this policy may not at any time exceed the premium limitation as of such time. Any excess premium paid will be refunded, with interest if appropriate. The premium limitation is the greater of (1) or (2) where:

(1)  is the guideline single premium; and
(2)  is the sum of the guideline level premiums for the number of years this policy has been in force.

The guideline single premium and the guideline level premium are shown in the policy schedule. These guideline premiums will be adjusted if:

1.  the specified amount is changed;
2.  there is a change to any benefit riders attached to this policy which Congress has defined as qualified benefits; or
3.  there is a change in the benefit option.

The premium limitation will not apply if a premium payment is required under the grace period provision to prevent termination of this policy.

**Application of Premiums**
The company will apply any amount received under this contract as a premium unless it is clearly marked otherwise.

**Grace Period**
This policy provides for a grace period of 61 days to pay sufficient premiums to prevent policy termination. We will send written notice of the required premium due to the owner's last known address and to any assignee of record at least 30 days prior to the date the policy is to terminate. If the premium due is not paid within the grace period, all coverage under this policy will terminate without value at the end of the grace period. If a death claim occurs during the grace period, overdue monthly deductions will be deducted from the proceeds.

The grace period will begin on either:
1.  the monthly anniversary where the policy account value is less than the monthly deduction. In this case, the required premium is equal to the monthly deduction minus the policy account value; or
2.  the policy anniversary where:
    (a) the cash surrender value is less than the monthly deduction; and
    (b) the current policy account value is less than the policy account value as of the prior policy anniversary. At the first policy anniversary, this requirement will be fulfilled if the current policy account value is greater than zero.

In this case, the required premium is equal to the policy account value as of the prior anniversary minus the current policy account value.

**Reinstatement**
This policy may be reinstated, provided:

- the Owner makes his/her request within 5 years of termination;
- it terminated because a grace period ended without sufficient premium being paid;
- satisfactory evidence of insurability is submitted;
- the Owner pays enough premium to keep the policy in force for 2 months; and
- any policy loan is paid or reinstated.

The account value on the effective date of reinstatement will be the account value on the date of entering the grace period plus the premiums paid at reinstatement.

If this policy is reinstated, the surrender charges will be the same as if this policy had been continuously in force from the policy date.

This policy will be approved for reinstatement as of the monthly anniversary on or next following the date we receive satisfactory proof of insurability.

**Insurance Provisions**

**Death Benefit**
The death benefit depends on the benefit option in effect at the date of death. The death benefit as defined below ensures that this policy qualifies as life insurance under the Internal Revenue Code. The company reserves the right to change the death benefit in order for this policy to comply with any change in federal law.

Option 1. The Specified Amount includes the Policy Account Value. Under this option, the death benefit is the greater of: (a) the Specified Amount and (b) the Policy Account Value at the date of death, times the percentage shown in the Table below for the Insured's attained age.

Option 2. The Specified Amount is in addition to the Policy Account Value. Under this option, the death benefit is the greater of: (a) the Specified Amount plus the Policy Account Value at the date of death and (b) the Policy Account Value at the date of death, times the percentage shown in the Table below for the Insured's attained age.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 55 | 150% | 70 | 115% |
| 41 | 243% | 56 | 146% | 71 | 113% |
| 42 | 236% | 57 | 142% | 72 | 111% |
| 43 | 229% | 58 | 138% | 73 | 109% |
| 44 | 222% | 59 | 134% | 74 | 107% |
| 45 | 215% | 60 | 130% | 75-90 | 105% |
| 46 | 209% | 61 | 128% | 91 | 104% |
| 47 | 203% | 62 | 126% | 92 | 103% |
| 48 | 197% | 63 | 124% | 93 | 102% |
| 49 | 191% | 64 | 122% | 94 | 101% |
| 50 | 185% | 65 | 120% | 95 or more | 100% |
| 51 | 178% | 66 | 119% | | |
| 52 | 171% | 67 | 118% | | |
| 53 | 164% | 68 | 117% | | |
| 54 | 157% | 69 | 116% | | |

The option may be changed subject to the Company's approval. The effective date of change will be the monthly anniversary following the date the request is received by us. If the benefit option in effect is option 1, it may be changed to option 2. In this case, the specified amount will be decreased to equal the death benefit less the policy account value.

If the benefit option in effect is option 2, it may be changed to option 1. In this case, the specified amount will be increased to equal the death benefit on the effective date of the change.

The amount of death benefit will be reduced by the amount of any policy loan. There may also be an adjustment in the amount paid due to:

- a successful contest of this policy;
- misstatement of age or sex;
- death by suicide; and/or
- death during the grace period.



**Changes in Specified Amount**
The Owner may request a change in the Specified Amount at any time after the first year. Written request for change must:

- be filed at the Home Office; and
- be in a form acceptable to the Company.

To increase the Specified Amount, the Owner must:

- submit a supplemental application; and
- provide satisfactory evidence of the insurability of the Insured.

The Company reserves the right to limit decreases in Specified Amount during the first five policy years.  A decrease is applied:

- first, to reduce the amount provided by the most recent increase;
- next, to reduce the next most recent increases successively;
- finally, to reduce the initial Specified Amount.

After the decrease, the Specified Amount cannot be less than the minimum amount shown in the Policy Schedule.  Any increase or decrease in Specified Amount which is approved will become effective as of the next monthly anniversary.

**Maturity Date**
The Maturity Date is shown in the Policy Schedule.

The Maturity Date is the latest date on which the Owner may elect to:

- terminate this policy;
- stop paying premiums; and
- receive any remaining Cash Surrender Value.

It is possible that this policy will end prior to the Maturity Date if:

- premium payments are insufficient;
- changes are made in the Specified Amount or plan as originally issued;
- the current rate of interest applicable on the Date of Issue changes;
- the current cost of insurance rates applicable on the Date of Issue change; or
- a policy loan or partial surrender is made.

Guaranteed Values

**Policy Account Value**
On each monthly anniversary, the policy account value will equal (1) plus (2) plus (3) minus (4) minus (5) where:

(1) is the policy account value on the preceding monthly anniversary;

(2) is one month's interest on item (1);

(3) is any premium received since the preceding monthly anniversary, plus interest from the day that premium is received at our Home Office until the end of the policy month in which that premium was received;

(4) is the monthly deduction described below for the policy month following the monthly anniversary; and

(5) is any partial surrender amount, plus any partial surrender charge, made since the preceding monthly anniversary, plus interest from the day that surrender is made until the end of the policy month in which that surrender is made.

On any day other than a monthly anniversary, the policy account value will be calculated on a basis consistent with that prescribed above.

The policy account value on the policy date will be the first premium less the monthly deduction for the month following the policy date.



**Monthly Deduction**
The monthly deduction for a policy month will equal (1) plus (2) plus (3) where:
(1) is the cost of insurance described below;
(2) is the cost for the policy month of additional coverage provided by benefit riders; and
(3) is the monthly policy fee shown in the Policy Schedule.

**Interest Rate**
The guaranteed minimum interest rate used in the calculation of the policy account value is .32737% a month, compounded monthly. This is equivalent to 4% per year, compounded yearly. Interest in excess of the guaranteed rate may be used in the calculation of the policy account value at such increased rate and in such manner as determined by us. The Company will vary any excess interest crediting rate based on policy account value amounts as shown in the policy schedule. Additional amounts of interest will be non-forfeitable from the effective date of crediting. Any amount which equals policy debt will be credited with interest equal to the policy loan interest rate, less two percent, but in no event less than the minimum rate.

**Cost of Insurance**
The cost of insurance is determined on a monthly basis. The cost is (1) multiplied by the result of (2) minus (3) where:
(1) is the monthly cost of insurance rate described below;
(2) is the death benefit at the beginning of the policy month, divided by 1.0032737; and
(3) is the policy account value at the beginning of the policy month, prior to the deduction of item (1) of the monthly deduction provision for the following month.

If the benefit option is Option 1 and if there has been an increase in the specified amount, then the policy account value will first be considered a part of the specified amount when the policy was issued. If the policy account value is greater than the initial specified amount, it will then be considered a part of each increase in order, starting with the first increase. The benefit options and death benefit are described in the Insurance Provisions.

**Cost of Insurance Rate**
The monthly cost of insurance rate is based on the Insured's attained age, sex, and rating classification. The rating classification is shown in the policy schedule.

The cost of insurance rates are based on the Company's expectations as to future mortality, persistency, expenses and investment earnings. Any change in cost of insurance rates will be based on the Company's expectations in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in cost of insurance rates will apply to all insureds with the same attained age, sex and rating classification. The cost of insurance rates will be reviewed at least once every five years and no more frequently than once a year to determine if a change should be made. Any change in cost of insurance rates will be in accordance with procedures and standards on file with the insurance department of the state in which this policy was delivered.

The cost of the insurance rates for the Insured's rating classification will not be greater than the guaranteed maximum rates shown in the policy schedule. The guaranteed maximum rates are based on the 1980 Commissioners' Standard Ordinary Mortality Table, Male or Female, age nearest birthday. For attained ages below 20, the aggregate basis of this table will be used; otherwise, the smoker and nonsmoker basis will be used, as appropriate.

If there is an increase in specified amount, the rating classification for such increase will be shown in the policy schedule. If the rating classification for the increase is different from previous rating classifications, additional policy schedule pages will be issued with the applicable guaranteed maximum cost of insurance rates for that rating classification.

**Basis of Computations**
Minimum cash surrender values are based on 4% interest per year, compounded yearly, and the 1980 Commissioners' Standard Ordinary Mortality Table, Male or Female, age nearest birthday. For attained ages below 20, the aggregate basis for the table will be used; otherwise, the smoker or nonsmoker basis will be used, as appropriate.

A detailed statement of the method of computation of cash surrender values under this policy has been filed with the insurance department of the state in which this policy was delivered. Cash surrender values under this policy are never less than the minimum values required on the policy date by the state in which this policy was delivered.

## Non-Forfeiture Provisions

**Continuation of Insurance**
If premium payments are not made as planned, and no additional unscheduled premium payments are received, this policy may still continue in force. However, this policy will only remain in force until the earliest of:

1. the monthly anniversary where the policy account value is less than the monthly deduction; or
2. the policy anniversary where:
    (a) the cash surrender value is less than the monthly deduction; and
    (b) the current policy account value is less than the policy account value as of the prior policy anniversary. At the first policy anniversary, this requirement will be fulfilled if the current policy account value is greater than zero.

If either of these two events occur, the terms of the grace period provision will take effect. If the required premium is not received before the end of the grace period, this policy will terminate as provided in the grace period provision.

**Paid-Up Insurance Option On Guaranteed Basis**
If you wish to discontinue premium payments, but retain some coverage on a permanent basis, the Owner may elect the paid-up insurance option. If the option is elected the Company will apply the Cash Surrender Value to provide a reduced amount of paid-up insurance. The Death Benefit will be the amount that the Cash Surrender Value will purchase, based on the guaranteed interest rate and the guaranteed maximum insurance rates shown in this policy. Once the paid-up insurance option has been elected, there will be no further monthly policy fees assessed against the policy.

**Surrender**
The Owner may surrender this policy and receive the cash surrender value during the Insured's lifetime. Surrender terminates this insurance. Surrender will be effective on the next monthly anniversary of this policy. The Company may postpone payment for as long as six months from the effective date of surrender. If payment is deferred for 10 working days or more, interest at the rate shown under the payment options will be added, unless that interest is less than $25.00. The Company reserves the right to require the return of the policy.

**Cash Surrender Value**
The cash surrender value will be (1) minus (2) minus (3) where:

(1) is the policy account value on the date of surrender;

(2) is any policy indebtedness; and

(3) is the surrender charge described below.

If the surrender is requested within 30 days after a policy anniversary, the cash surrender value will not be less than the cash surrender value on such anniversary, less any policy loans or partial surrenders made on or after such anniversary.

The surrender value may be paid in cash or under any of the payment options described in this contract.

**Surrender Charge**
The surrender charge for applicable policy years is shown in the policy schedule.

An additional surrender charge may be payable after any increase in the specified amount. If applicable, the additional charge will be added to any remaining surrender charge to determine the total surrender charge. The Company will send you a new policy schedule showing the total surrender charge for applicable policy years after an increase in specified amount.

**Partial Surrender**
A partial surrender of this policy may be made during the Insured's lifetime and prior to the maturity date. The partial surrender will be effective on the next monthly anniversary of this policy. The owner must send us a written request for a partial surrender. The minimum amount which will be paid as a partial surrender is $500. In addition, the amount paid may not exceed the cash surrender value on the date of partial surrender less $275. The Company reserves the right to limit the number of partial surrenders to six within a policy year.

When a partial surrender is made, the policy account value will be reduced by the amount of the partial surrender. The specified amount for benefit option 1 will be reduced by the same amount. The specified amount remaining in force after a partial surrender will be subject to the minimum amount set forth in the Policy Schedule.

The Company may postpone payment of a partial surrender for as long as six months from the effective date of the partial surrender. If payment is deferred for 10 working days or more, interest at the rate shown under the payment options will be added unless that interest is less than $25.00. A partial surrender used to pay a premium on any policy issued by us will not be postponed.

**Partial Surrender Charge**
Upon a partial surrender of the policy, the policy account value will be reduced by a partial surrender charge. The specified amount for benefit option 1 will be reduced by the same amount. The amount of the partial surrender charge will be equal to (1) plus (2), where:

(1) is the administration fee shown in the policy schedule.

(2) is the full surrender charge multiplied by the ratio of the partial surrender amount to the cash surrender value of the policy.

Future surrender charges will be reduced by the ratio described in (2) above.

Policy Loans

While the policy is in force, the owner may obtain all or part of the available loan value by written notice. This policy, assigned to us, is the only security needed. The Company may postpone making a loan for as long as six months from the date the notice is received at our Home Office. If payment is deferred for 10 working days or more, interest at the rate shown under the payment options will be added, unless that interest is less than $25.00. A policy loan used to pay a premium on any policy issued by us will not be postponed.

**Loan Value**
The loan value will be (1) minus (2) where:

(1) is the policy account value of this policy; and

(2) is the surrender charge as described in the non-forfeiture provisions.

**Available Loan Value**
The available loan value will be the loan value less the sum of:

(1) any existing policy loan;

(2) loan interest in advance to the next policy anniversary; and

(3) any due and unpaid monthly deductions payable prior to the date of the next planned premium payment, based upon the frequency of premium notices that are sent to the owner. Monthly deductions for future policy months will be based upon guaranteed cost of insurance rates and monthly policy fees.

**Interest on Policy Loans**
Interest on policy loans will be payable in advance from the date of the loan to the next policy anniversary at the annual interest rate of 7.4%. Interest is payable in advance at the beginning of each subsequent policy year. If interest is not paid when due, it will be added to the policy loan and bear interest at the same rate.

**Repayment of Policy Loans**
A policy loan may be repaid in full or in part in minimum amounts of $50.00 at any time while the policy is in force. Failure to pay back the policy loan may cause this policy to terminate. This will occur if the policy indebtedness decreases the cash surrender value to the point that condition 2 of the grace period provision applies; in this event, the policy will terminate unless part of the loan is repaid or the premium required by condition 2 is paid.



## Options For Payment of Proceeds

The proceeds of this contract will be paid in a single sum if no other form of payment is elected. All or part of this sum may be applied under any of the payment options described or in any other manner approved by the Company. These optional forms of settlement are available for payment in the event of the Insured's death or of cash surrender.

The Owner may elect any payment option for payment of death proceeds while the Insured is alive. If no payment option has been chosen when the proceeds become payable, the beneficiary may elect an option within certain time limits. For death proceeds, the election must be made within one year after the Insured dies. For other proceeds, the election must be made within 60 days after the proceeds become payable. The election must be made in writing in a form which clearly identifies the settlement desired.

A payment option can be elected only if the amount to be applied for any one Payee is at least $2,000. The amount for each Payee must also be large enough to provide a periodic payment of at least $25.00.

Under Option 1, the first payment is due one payment period from the date the option goes into effect. Under the other options, the first payment is due on the date the option goes into effect.

The yearly interest rate for money left under any Payment Option will be at least 5 1/2%. The Company may elect to credit interest at a higher rate. Money held by the Company under the Payment Options is held with the general assets, and not in a separate fund.

### Options Available

Option 1: Proceeds Left at Interest – Under this option, the company will hold the proceeds. Interest will be paid either once a month, four times a year, twice a year, or once a year. Proceeds will not be held under this option for more than 30 years.

Option 2: Payments of a Fixed Amount – Under this option, the company will make payments in the amount chosen until the proceeds and earned interest have been paid out in full.

The total amount paid each year must be at least 5% of the original proceeds. The length of the payment period will depend on the amount chosen, the amount of the proceeds applied and the amount of interest earned.

Option 3: Payments For a Fixed Period – Under this option, the Company will make monthly payments for the number of years chosen. Table A shows the monthly payment for each $1,000 of proceeds for payment periods of 1 to 30 years. The payment amounts shown include guaranteed interest.

Option 4: Life Income – Under this option, the Company will make monthly payments for the life of the Payee. We have the right to require satisfactory proof that the Payee is alive. If a guaranteed payment period is elected, the Company will make payments for at least the period elected, whether or not the named Payee is living.

When this option is elected, the amount of each installment will be based on the Payee's age and sex at the birthday nearest the date the option goes into effect. We have the right to require satisfactory proof of the Payee's age. Table B shows the monthly amounts payable at various ages for life with no guarantee, and for 10-year and 20-year guaranteed periods. Where the monthly installments for 2 or more periods are the same, payments will continue for the longer period.

Option 4 is available only if the Payee is a natural person who is the Insured, Owner, or Beneficiary. This option is not available to a Payee who is an assignee, estate, fiduciary, partnership or corporation.

### Death of Payee Under Payment Options

Unless the Owner or the Beneficiary has made other provisions in electing a payment option, amounts remaining at the Payee's death will be paid to the Payee's estate.

Under Option 1, the proceeds on deposit will be paid in a single sum.

Under Option 2, any unpaid proceeds and earned interest will be paid in a single sum.

Under Options 3 and 4, the present value of any unpaid guaranteed payments will be paid in a single sum. The sum to be paid will equal the total of guaranteed payments remaining, discounted at 5 1/2% yearly compound interest.

## Tables For Payment Options
### Table A, Option 3 — Monthly Payments For Each $1,000 of Proceeds*

| Number of Years | Monthly Payments | Number of Years | Monthly Payments | Number of Years | Monthly Payments |
|---|---|---|---|---|---|
| 1 | $85.39 | 11 | $10.00 | 21 | $6.59 |
| 2 | 43.84 | 12 | 9.39 | 22 | 6.43 |
| 3 | 30.00 | 13 | 8.88 | 23 | 6.29 |
| 4 | 23.09 | 14 | 8.44 | 24 | 6.15 |
| 5 | 18.95 | 15 | 8.06 | 25 | 6.03 |
| 6 | 16.20 | 16 | 7.74 | 26 | 5.92 |
| 7 | 14.24 | 17 | 7.45 | 27 | 5.82 |
| 8 | 12.78 | 18 | 7.20 | 28 | 5.73 |
| 9 | 11.64 | 19 | 6.97 | 29 | 5.65 |
| 10 | 10.74 | 20 | 6.77 | 30 | 5.57 |

*The final payment will be increased by any remaining unpaid balance.

### Table B, Option 4
### Monthly Payments For Each $1,000 of Proceeds

| Nearest Age of Payee | | Monthly Payments Guaranteed for | | | Nearest Age of Payee | | Monthly Payments Guaranteed for | | |
|---|---|---|---|---|---|---|---|---|---|
| Male | Female | Life | 10 Yrs. Certain and Life | 20 Yrs. Certain and Life | Male | Female | Life | 10 Yrs. Certain and Life | 20 Yrs. Certain and Life |
| 10 & Under | 15 & Under | $4.65 | $4.64 | $4.64 | 45 | 50 | $5.65 | $5.59 | $5.44 |
| 11 | 16 | 4.66 | 4.65 | 4.64 | 46 | 51 | 5.72 | 5.65 | 5.48 |
| 12 | 17 | 4.67 | 4.66 | 4.65 | 47 | 52 | 5.79 | 5.72 | 5.53 |
| 13 | 18 | 4.68 | 4.67 | 4.66 | 48 | 53 | 5.86 | 5.78 | 5.57 |
| 14 | 19 | 4.69 | 4.68 | 4.67 | 49 | 54 | 5.94 | 5.85 | 5.62 |
| 15 | 20 | 4.70 | 4.69 | 4.69 | 50 | 55 | 6.02 | 5.92 | 5.67 |
| 16 | 21 | 4.71 | 4.71 | 4.70 | 51 | 56 | 6.11 | 5.99 | 5.72 |
| 17 | 22 | 4.72 | 4.72 | 4.71 | 52 | 57 | 6.20 | 6.07 | 5.77 |
| 18 | 23 | 4.74 | 4.73 | 4.72 | 53 | 58 | 6.29 | 6.15 | 5.82 |
| 19 | 24 | 4.75 | 4.75 | 4.74 | 54 | 59 | 6.39 | 6.23 | 5.87 |
| 20 | 25 | 4.77 | 4.76 | 4.75 | 55 | 60 | 6.49 | 6.32 | 5.92 |
| 21 | 26 | 4.78 | 4.78 | 4.77 | 56 | 61 | 6.60 | 6.41 | 5.97 |
| 22 | 27 | 4.80 | 4.80 | 4.78 | 57 | 62 | 6.72 | 6.51 | 6.03 |
| 23 | 28 | 4.82 | 4.81 | 4.80 | 58 | 63 | 6.84 | 6.61 | 6.08 |
| 24 | 29 | 4.84 | 4.83 | 4.82 | 59 | 64 | 6.97 | 6.71 | 6.13 |
| 25 | 30 | 4.86 | 4.85 | 4.83 | 60 | 65 | 7.11 | 6.82 | 6.19 |
| 26 | 31 | 4.88 | 4.87 | 4.85 | 61 | 66 | 7.26 | 6.94 | 6.24 |
| 27 | 32 | 4.90 | 4.90 | 4.87 | 62 | 67 | 7.42 | 7.06 | 6.29 |
| 28 | 33 | 4.93 | 4.92 | 4.90 | 63 | 68 | 7.59 | 7.18 | 6.34 |
| 29 | 34 | 4.95 | 4.94 | 4.92 | 64 | 69 | 7.77 | 7.32 | 6.39 |
| 30 | 35 | 4.98 | 4.97 | 4.94 | 65 | 70 | 7.97 | 7.45 | 6.44 |
| 31 | 36 | 5.01 | 5.00 | 4.97 | 66 | 71 | 8.18 | 7.60 | 6.48 |
| 32 | 37 | 5.04 | 5.03 | 4.99 | 67 | 72 | 8.40 | 7.75 | 6.52 |
| 33 | 38 | 5.07 | 5.06 | 5.02 | 68 | 73 | 8.65 | 7.90 | 6.56 |
| 34 | 39 | 5.11 | 5.09 | 5.05 | 69 | 74 | 8.91 | 8.06 | 6.60 |
| 35 | 40 | 5.14 | 5.13 | 5.08 | 70 | 75 | 9.19 | 8.23 | 6.63 |
| 36 | 41 | 5.18 | 5.16 | 5.11 | 71 | 76 | 9.50 | 8.39 | 6.66 |
| 37 | 42 | 5.22 | 5.20 | 5.14 | 72 | 77 | 9.83 | 8.56 | 6.69 |
| 38 | 43 | 5.26 | 5.24 | 5.17 | 73 | 78 | 10.18 | 8.73 | 6.71 |
| 39 | 44 | 5.31 | 5.29 | 5.21 | 74 | 79 | 10.57 | 8.90 | 6.72 |
| 40 | 45 | 5.36 | 5.33 | 5.24 | 75 | 80 | 10.98 | 9.08 | 6.74 |
| 41 | 46 | 5.41 | 5.38 | 5.28 | 76 | 81 | 11.43 | 9.25 | 6.75 |
| 42 | 47 | 5.46 | 5.43 | 5.32 | 77 | 82 | 11.92 | 9.41 | 6.76 |
| 43 | 48 | 5.52 | 5.48 | 5.36 | 78 | 83 | 12.45 | 9.57 | 6.76 |
| 44 | 49 | 5.58 | 5.54 | 5.40 | 79 | 84 | 13.02 | 9.73 | 6.77 |
| | | | | | 80 & Over | 85 & Over | 13.64 | 9.88 | 6.77 |

SPECIMEN

2754

# WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
### 100 QUENTIN ROOSEVELT BLVD • PO BOX 519 • GARDEN CITY NY 11530

## AMENDMENT OF APPLICATION

I, _____ Jon Fieldman _____, hereby amend my application to

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK under date of ____ Aug. 23, 1995

as follows:   Part I Question 5 Owner shall read:   Insured

I agree that these changes shall be an amendment to and form a part of the original application and of the policy issued as a result, if any; I also agree that they shall be binding on any person who shall have or claim any interest under the policy.

I have signed the copy of this amendment form which remains attached to the Policy as well as the copy for the Home Office.

Date _____ 11/9/95 _____

Policy No. ____ 070-14261 ____

I have witnessed the signature(s) on the copy of this amendment form which remains attached to the Policy, as well as on the copy for the Home Office.

Witness _____

Proposed Insured _____

Applicant-Owner _____ (If Applicant is a Firm or Corp., insert name of Company)

By _____ (Signature & Title of Officer Authorized to Sign for Firm or Corp.)

By _____ (Additional Signature)

AP-L-A/83

2042

SPECIMEN

# William Penn Life Insurance Company of New York

Policy Number 070-14261

## PART I

1. a. Proposed Insured's Name: **Jon Fieldman**

   First _____ Middle _____ Last

   Maiden and/or Prior Name _____

   b. ☒ Male ☐ Female

   c. ☐ Single ☒ Married ☐ Divorced ☐ Widowed ☐ Separated

   d. Date of Birth 9 / 29 / 48  e. Age _____
      Mo.   Day   Yr.  (nearest birthday)

   f. Place of Birth  N Y  /  USA
      State  Country

   g. Social Security or Tax I.D. No. 127-36 8789

   h. Driver's License No. _____

2. b. Are you a citizen of the U.S.? ☒ Yes ☐ No

   If No, state country and type of visa _____

3. Send all mail to Owner at address in ☐ 4a ☐ 4b ☐ 5

4. a. Residence Address:

   No. & Street  2 Country Club DR

   City/State/Zip  White Plains  NY  10607

   Telephone Number ( 914 )  592 8250

   Questions 4b & c apply to proposed insured if age 15 or over;
   to owner or payor if proposed insured under age 15.

   b. Business Address:

   Name of Employer  Viss Cuesos Inc

   No. & Street  210 W 44th ST

   City/State/Zip  NY  NY

   Telephone Number ( 212 )  398-0360

   Number of years employed  10 yrs

   c. Occupation(s)  Owner

   Duties (describe) _____

   _____

5. Owner (if other than proposed insured)

   a. Name  John Viscuso

   b. Relationship to proposed insured  Business Partner

   c. Address: ☐ Residence ☒ Business

   No. & Street (Viss Cuesos Inc) 210 W 44th ST

   City/State/Zip  New York  NY

   Telephone No. ( 212 ) 398-0360

   d. Social Security or Tax I.D. No. _____

6. Send Premium Notices to:

   ☐ Proposed Insured ☒ Owner ☐ Other

   (Give name, address and telephone number if Other)

   Name  See # 5

   No. & Street _____

   City/State/Zip _____

   Telephone No. ( ) _____

7. a. Plan  Penn Option Flex

   b. If Last Survivor plan, indicate joint equal age: _____

   c. Amount $ 350,000

   d. Premiums Payable ☒ Annual ☐ Semi-annual
      ☐ Pre-Authorized Check ☐ Quarterly ☐ Other _____

   e. List Bill ☐ Yes ☐ No
      Special Billing Number if previously assigned _____

   f. Automatic Premium Loan, if available ☐ Yes ☐ No

   g. Other Riders/Benefits:
      ☐ Primary Insured Rider $ _____
      ☐ Waiver of Monthly Deduction Rider (UL)
      ☐ Spouse Rider (UL) $ _____
      ☐ Other Insured Rider $ _____
      $ _____ $ _____
      $ _____ $ _____
      ☐ Children's Insurance Rider--Units/Face: _____
      ☐ Family Insurance Rider -- Units: _____
      ☐ Accidental Death Benefit $ _____
      ☐ Cost of Living Rider
      ☐ Waiver of Premium Benefit Rider
      ☐ Annual Renewable & Convertible Term Rider (for Universal Life only) $ _____
      ☐ Annual Renewable Term (ART) Rider to Age 70/90
      ☐ Guaranteed Re-Entry Option (GRO) Rider
      ☐ Other _____
      ☐ Other _____

8. ☐ Alternate Policy ☐ Additional Policy
   Plan _____ Amount $ _____
   ☐ Additional Benefits: ☐W.P. ☐ADB ☐Other: _____

9. Complete for Universal Life only:

   a. Proceeds Option:
      ☒ Option 1: The Specified Amount includes the Policy Account Value
      ☐ Option 2: The Specified Amount is in addition to the Policy Account Value.

   b. Billing Instructions:
      Total First Year Annual Premium Planned $ 4886.00
      Remainder of First Year Premium to be billed as follows:

      Planned Future Premiums for Second Year and thereafter:
      ☒ Annual $ 4886. ☐ Semi-Annual $ _____ (x2)
      ☐ Quarterly $ _____ (x4) ☐ Other (See Item c)

   c. Special Planned Premium Arrangements (Attach Illustration):
      If you wish the policy summary to reflect planned future premiums which vary over the duration of the policy, please indicate here (Example: $1,000 per year for the first 5 years; $2,000 per year for the next 10 years, etc.): _____

10. Amount paid with this application: $ _____
    Please read Conditional Receipt. ☒ NONE

AP-L-H/94

2968

-2-

**PART I (continued)**

**11. Other Proposed Insured(s):**

| Name | Sex | Relationship to Proposed Insured | Date of Birth (Mo-Day-Yr) | State/Country of Birth | Driver's License # | Social Security or Tax I.D.# |
|------|-----|----------------------------------|---------------------------|------------------------|--------------------|-----------------------------|
|      |     |                                  |                           |                        |                    |                             |
|      |     |                                  |                           |                        |                    |                             |
|      |     |                                  |                           |                        |                    |                             |
|      |     |                                  |                           |                        |                    |                             |

**12.** For other proposed insured(s) age 18 or older listed in #11 above provide: Name, address and telephone number of employer, occupation & duties, years employed there and current annual income.

_____
_____
_____
_____
_____

**13.** Life insurance in force on all persons proposed for insurance.

| Name of Proposed Insured | Company | Issue Year | Face Amount | ADB | Purpose (pers/bus.) |
|--------------------------|---------|------------|-------------|-----|---------------------|
| NONE                     |         |            |             |     |                     |
|                          |         |            |             |     |                     |
|                          |         |            |             |     |                     |
|                          |         |            |             |     |                     |

For any Yes answer to Questions 14 a - i, give full details in Remarks section and complete any special form(s) required.

**14. HAS ANY PERSON PROPOSED FOR INSURANCE:**

|   |   | Yes | No |
|---|---|-----|-----|
| a. | smoked cigarettes or used tobacco in any other form in the past twelve (12) months? | ☑ | ☐ |
| b. | engaged or intend to engage in hang gliding, racing, mountain climbing, skin, scuba or sky diving? (If Yes, complete Hazardous Activities Questionnaire.) | ☐ | ☑ |
| c. | had driver's license restricted, revoked or suspended? | ☐ | ☑ |
| d. | been convicted of a felony or misdemeanor within the past 10 years? | ☐ | ☑ |
| e. | other life or health insurance applications pending? | ☐ | ☑ |
| f. | ever had life or health insurance declined, modified or rated? | ☐ | ☑ |
| g. | any intention of traveling or residing outside the country? | ☐ | ☑ |
| h. | any intention of replacing or changing any life insurance or annuity policy in force in this or any other company? | ☐ | ☑ |
| i. | taken within five years or intend to take flights other than as a fare-paying passenger on a regularly scheduled airline? (If Yes, complete Aviation Questionnaire.) | ☐ | ☑ |

**15. Complete for Indeterminate Premium Life Policy Only:**
I understand that: (a) the premium for the policy applied for may change after the initial guarantee period; (b) the premium then charged is not guaranteed; and (c) the Company may charge the full maximum guaranteed premium.      ☑ Yes   ☐ No

SPECIMEN

**PART I** (continued)

16. **Complete only if a medical examination is to be taken:**
    Has any person proposed for insurance consulted a physician within the last five years? If answer is "Yes," give dates, names, addresses and reasons for consultations.    ☐ Yes  ☐ No

_____

_____

_____

17. **Beneficiary Designation**

| Primary Beneficiary and Address (If Trust, give name and date of Trust) | Relationship to Proposed Insured |
|---|---|
| Kimbal Viscuso | Business Partners (Wife) |
| 6 Shadow Lane | |
| Holmdel   NJ   07735 - 2366 | |

If living, otherwise to: Contingent Beneficiary and Address:

_____

_____

18. **REMARKS**

| Question No. | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

19. Home Office Corrections (not for use with policies issued for delivery in PA): _____

_____

_____

_____

PART I (continued)                                              -4-

### IN CONNECTION WITH THIS APPLICATION FOR INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:

The statements contained here and in Part II of this application and any supplements thereto, copies of which shall be attached to and made a part of any policy to be issued, are true to the best of my (our) knowledge and belief and are made to induce the Company to issue an insurance policy.

No agent or other person has power to make, modify, or discharge any contract of insurance or to bind the Company by making promises respecting benefits upon any policy to be issued. No information as to any matter made a subject of inquiry here and in Part II of this application and any supplements thereto, copies of which shall be attached to and made part of any policy to be issued, shall be considered known by the Company unless set out in writing on this application.

Except as may be provided in a duly issued Conditional Receipt bearing the same number as this application, no insurance shall take effect unless and until the policy has been physically delivered and the first full premium paid during the lifetime of the insured(s) and then only if the person(s) to be insured is (are) actually in the state of health and insurability represented in Parts I and II of this application and any supplements thereto, copies of which shall be attached to and made part of any policy to be issued.

Changes or corrections made by the Company and noted in Part I, Question 19 above are ratified by the Owner upon acceptance of a contract containing this application with the noted changes or corrections. In those states where written consent is required by statute or State Insurance Department regulation for amendments as to plan, amount, classification, age at issue, or benefits, such changes will be made only with the Owner's written consent.

### DECLARATION

I (We) have carefully read the receipt and understand and agree to the terms thereof including the conditions under which a limited amount of insurance may become effective prior to policy delivery. I (We) understand that all premium checks are to be made payable to **William Penn Life Insurance Company of New York**; checks are not to be made payable to the agent or the payee left blank. I (We) have received the MIB Disclosure and Fair Credit Reporting Act/Abbreviated Notice of Insurance Practices.

City _New York_    State of _N.Y_

Date _7/31/95_

_____
Signature of Proposed Insured, or parent or legal guardian if Proposed Insured is a minor

_____
Signature of Witness (Licensed Resident Agent where required by statute or regulation)

_____
Signature of Spouse or Other Proposed Insured

_____
Agent Name (if required)-Please Print  State/Lic.# (if required)

_____
Signature of Other Proposed Insured

_____
Signature of Owner, if other than Proposed Insured

_____
Signature of Other Proposed Insured

**AUTHORIZATION.** A photocopy of this authorization shall be as valid as the original, which shall be valid for 30 months from the date below. I (We) hereby authorize any physician, medical practitioner, hospital, clinic or medical or medically related facility, insurance company, employer, consumer reporting agency, the Medical Information Bureau or any other organization, institution or person having any information (including diagnosis, treatment or prognosis) about my (our) physical or mental condition or any other information about me (us) or my (our) health, to give to William Penn Life Insurance Company of New York, its authorized representatives or its reinsurers any such information. This includes data related to drugs or alcoholism. It also includes data obtained in connection with the preparation of any investigative consumer report as defined under the Fair Credit Reporting Act(s) and referred to elsewhere in this application. To expedite the collection of data, I (we) authorize all such sources, except the Medical Information Bureau, to give the data to any agency employed by William Penn Life Insurance to collect and transmit such data. I (We) further authorize William Penn Life Insurance to prepare or obtain an investigative consumer report in connection with this application. If an investigative consumer report is prepared, I (we) elect to be interviewed: ☐ Yes    ☐ No.

I (We) am (are) aware that I (we) am (are) entitled to receive a copy of this authorization form.    No. **11188**

Date _7/31/95_

_____
Signature of Proposed Insured, or parent or legal guardian if Proposed Insured is a minor

_____
Signature of Other Proposed Insured

_____
Signature of Other Proposed Insured

SPECIMEN

-8-

## William Penn Life Insurance Company of New York

### PERSONAL INFORMATION STATEMENT

**COMPLETE ON ALL BUSINESS CASES AND IF REQUIRED ON NON-BUSINESS CASES**
(REFER TO CURRENT UNDERWRITING REQUIREMENTS CHART)

1. a. Personal Finances for each person proposed for insurance:

| Name of Proposed Insured | Total Assets | Total Liabilities | Net Worth | Earned Income | Unearned Income |
|---|---|---|---|---|---|
| Jon Fieldman | 750,000+ | — | 750,000+ | 50,000+ | — |
| | | | | | |
| | | | | | |
| | | | | | |

   b. Has any person proposed for insurance ever filed for bankruptcy?          ☐ Yes   ☒ No
   If "Yes," provide details below.

2. What is the purpose of this insurance? (i.e., Keyman, Stock Redemption, (Buy and Sell) Creditor, Estate Liquidity, Other):
   _____ Buy / Sell _____

3. How was the face amount determined? ___ Stock holders + acct. ___

4. Business Finances (Complete **only** if this is business insurance):
   a. Total Assets $ 1,000,000 +  b. Total Liabilities $ —   c. Net Worth $ 1,000,000
   d. Net Profit After Taxes for Past Two Years: Last Year $ _____   Previous Year $ _____
   e. Is the business a (Corporation) Partnership, or Proprietorship? (circle one)   S Corp -
   f. How long has the business been established? ___ 10 YRS ___
   g. What is the nature of the business? ___ Restaurant ___
   h. What is the percentage ownership of this firm? ___ 50 ___
   i. Is there business insurance applied for or in force on other key members of this firm?   ☒ Yes   ☐ No
   If "Yes," provide details below.
   j. Has the proposed insured's company ever filed for bankruptcy?          ☐ Yes   ☒ No
   If "Yes," provide details below.

5. Are there any special considerations or circumstances relevant to this case? _____

6. Details: ___ NO PROFIT DUE TO S Corp STATUS - all income passes thru. ___

The statements contained in this PERSONAL INFORMATION STATEMENT, a copy of which shall be attached to and made part of any policy to be issued, are true to the best of my knowledge and belief and are made to induce the company to issue an insurance policy.

_____
Signature of Witness

7/31/95
Date

_____
Signature of Proposed Insured

_____
Signature of Other Proposed Insured

_____
Signature of Other Proposed Insured

_____
Signature of Other Proposed Insured

PART II OF APPLICATION TO WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
EXAMINATION TO BE MADE IN PRIVATE. PLEASE READ ALL QUESTIONS TO APPLICANT.
ANSWERS TO BE RECORDED BY THE MEDICAL EXAMINER IN HIS OWN HANDWRITING.

| 1. | PROPOSED INSURED'S NAME | A. DATE OF BIRTH | B. HEIGHT | C. WEIGHT | D. Change in weight in past 12 months. (Give reason) lbs. Loss __ Gain __ |
|---|---|---|---|---|---|
| | Jon M Fieldman | month 9 day 24 yr 48 | 5'10 | 180 | |

E. Name of Personal Physician | Physician's Address | Physician's Phone No.
Dr Bernard A Curcio | 112 Lexington Ave NYC NY 10016 | (212) 696-2680

Date and reason last consulted - if none, so state
7/95 - Check-up, LAB, EKG (WNL)

| | | YES | NO | Give full details if answer to Questions 2 through 11 is Yes. Details, Dates, Doctors' Names & Addresses |
|---|---|---|---|---|
| 2. | Do you have any physical defect? | ☐ | ☑ | (4A) 10 cigarettes per Day (20yrs) |
| 3. | Have you ever applied for or received disability benefits from any source? | ☐ | ☑ | |
| 4. | HAVE YOU: | | | 7F) 1985 DR PiHS-NYC NY E65 EAST |
| a. | smoked cigarettes in the past 12 months? | ☑ | ☐ | PASSED Kidney STONE |
| b. | used tobacco in any other form in the past 12 months? | ☐ | ☑ | Hosp. in Connecticut |
| 5. | HAVE YOU: | | | DOES NOT RECALL NAME |
| a. | used barbiturates, heroin, cocaine, marijuana, or any other illegal, restricted, or controlled substance except as prescribed by a physician? If Yes, when, how much? | ☐ | ☑ | 1992 - PASSED Kidney STONE - AT HOME - |
| b. | been advised to seek, or received treatment for drug use, or been arrested for drug use or distribution? | ☐ | ☑ | DR PiHS (see Above) |
| 6. | HAVE YOU: | | | 7L) DR Schwartz NYC NY |
| a. | ever used alcoholic beverages? If Yes, how often and how many ounces? | ☐ | ☑ | 55 E 90 St 1993 |
| b. | been advised to limit or cease the use of alcoholic beverages? | ☐ | ☑ | Physical EXAM - |
| c. | been counseled, sought help or treatment, or been advised to undergo counseling or treatment for alcohol problems? | ☐ | ☑ | LAB, Chest X-RAY EKG (WNL) |
| d. | attended or joined any organization for alcohol or related problems? | ☐ | ☑ | |
| 7. | HAVE YOU EVER HAD: | | | |
| a. | convulsions, paralysis, neuritis, nervous breakdown, dizziness, fainting spells, migraine headaches, nervous or mental disorders? | ☐ | ☑ | |
| b. | high blood pressure, chest pain, palpitation, heart attack, disorder of heart or blood vessels? | ☐ | ☑ | |
| c. | hemorrhage, asthma, tuberculosis, emphysema, disorder of respiratory system? | ☐ | ☑ | |
| d. | shortness of breath, chronic hoarseness or cough, blood spitting? (past 10 years) | ☐ | ☑ | |
| e. | chronic indigestion, ulcer, hernia, colitis, intestinal bleeding, disorder of stomach, gall bladder, liver, digestive or abdominal organs? | ☐ | ☑ | |
| f. | kidney stone, diabetes, sugar, albumin, pus, or blood in urine, disorder of kidneys, bladder, genito-urinary organs? | ☑ | ☐ | |
| g. | rheumatic fever, arthritis, gout, disorder of muscles, bones, joints or spine? | ☐ | ☑ | |
| h. | impairment of vision or hearing or disease of eyes, ears, nose or throat? | ☐ | ☑ | |
| i. | tumor, cancer, venereal disease, disorder of blood, skin, thyroid or other glands? | ☐ | ☑ | |
| j. | treatment or observation in any hospital or institution? (past 5 years) | ☐ | ☑ | |
| k. | x-rays, electrocardiograms, blood studies or other diagnostic tests other than an HIV or HTLV-III test (past 5 years). Give details. | ☑ | ☐ | |
| l. | treatment or consultations with any physicians or practitioners, other than as stated above (past 5 years). Give details. | ☐ | ☑ | |
| 8. | Have you been diagnosed by or received treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☑ | |
| 9. | Have you in the past 5 years been advised to have or do you contemplate a surgical operation? | ☐ | ☑ | |
| 10. | Are you now pregnant? (If so, how many months) | ☐ | ☐ | |

| 11. | Provide family history | Age, if Living | Age at Death | Cause of Death |
|---|---|---|---|---|
| | Mother | 83 | | |
| | Father | | 83 | NATURAL |
| | Brothers and Sisters | 49 | | |

The statements and answers are true to the best of my knowledge and belief and are made for the purpose of inducing the company to issue insurance on my life.

AUTHORIZATION - A photo copy of this authorization shall be as valid as the original, which shall be valid for 30 months. I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or my health, to give William Penn Life Insurance Company of New York or its reinsurers any such information. This includes data related to drugs, alcoholism or mental illness. To expedite the collection of data, I authorize all such sources, except the Medical Information Bureau, to give the data to any agency employed by William Penn Life Insurance to collect and transmit such data. I am aware that I am entitled to receive a copy of this authorization form.

Signed at  NYC    NY
              City    State

Date  8-27-96

Proposed Insured

Witness  Carole Zanobella    Examiner

MP-1000/08 NY                    2540



SPECIMEN

## PART III MEDICAL EXAMINER'S REPORT
WHERE INDICATED, GIVE FULL DETAILS UNDER NUMBER 9 OR IN A SEPARATE LETTER TO THE MEDICAL DIRECTOR.

| | | | YES | NO |
|---|---|---|---|---|
| 1. How long have you known applicant? _____ Yrs. | | **PLEASE CHECK (✓) APPROPRIATE COLUMN** | | |
| 2. Is general appearance as to health and habits good? ☐ Yes ☐ No | | 5. Do you find any evidence of past or present disease of: | | |
| If "No" give details under No. 9) | | a. Brain or nervous system? | ☐ | ☐ |
| 3. a. Height in shoes 5 ft. 10 in. Weight (clothed) 180 lbs. | | (Test patellar and pupillary reflexes and observe gait.) | | |
| Did you measure? ☐ Yes ☐ No | | b. Lungs or respiratory organs? | ☐ | ☐ |
| Did you weigh? ☐ Yes ☐ No | | c. Abdomen? (Describe scars, tenderness or masses. | ☐ | ☐ |
| b. Any change in weight in past year? Gain ___ lbs. Loss ___ lbs. | | If a hernia is present, give size and reducibility.) | | |
| c. Reason for any change? | | d. Genito urinary system? | ☐ | ☐ |
| Present weight maintained how long? 54RS | | (Examine prostate if indicated by history.) | | |
| d. Chest: Inspiration 10½ ins. Expiration 37½ ins. Abdomen 32 ins. | | e. Eyes, ears, nose or throat? | ☐ | ☐ |
| 4. Cardiovascular Examination: | | f. Bones, lymph glands, thyroid or skin? | ☐ | ☐ |
| a. Blood Pressure: Systolic 170 Diastolic 88 | | g. Any other part of the body? | ☐ | ☐ |
| If pressure is above 140 systolic or 90 diastolic, take two additional | | | | |
| readings at least five minutes apart. | | B. a. Any varicosities, edema, amputation or deformity? | ☐ | ☐ |
| | | b. Artificial limb, brace or crutch used? | ☐ | ☑ |

|  | Before Exercise | Immediately After | 3 Minutes After |
|---|---|---|---|
| b. Pulse Rate | 72 | | |
| Irregularities | 0 | | |

7. Amount of Insurance applied for: $ 350,000

c. Any dyspnea, pain or discomfort after exercise? ☐ Yes ☐ No
d. Any sclerosis of peripheral vessels, clubbing, or cyanosis? ☐ Yes ☐ No
e. Is the heart enlarged? ☐ Yes ☐ No
(Locate apex by [X] on diagram.)
f. Is there a murmur? ☐ Yes ☐ No
(Examine heart in erect and recumbent positions.)

TIMING:  Systolic ☐   Presystolic ☐   Diastolic ☐
INTENSITY:  Faint ☐   Moderate ☐   Loud ☐
GRADING:  ☐1  ☐2  ☐3  ☐4  ☐5  ☐6

8. Urinalysis — Repeat if Specific Gravity is below 1.012.
SEND A SPECIMEN TO THE HOME OFFICE IF:
a. Amount in Question 7 above is:

$100,000 and Over — Ages 0 - 60
Any Amount — Over Age 60

| | | YES | NO |
|---|---|---|---|
| b. History of urinary disease or abnormal findings: | | ☐ | ☑ |
| c. History or finding of hypertension: | | ☐ | ☑ |
| Specific Gravity _____ | Albumin | ☐ | ☑ |
| | Sugar | ☐ | ☑ |
| Are you sending a specimen to the Home Office? | | ☑ | ☐ |

PLEASE COMMENT on the presence or absence of thrills, or any undue accentuation of heart sounds, and on the effects of exercise, change of position, or phase of respiration.

ON DIAGRAM, LOCATE: Apex by X    Area of murmur by ⬚

Point of maximum intensity by ○    Transmission by →

9. DETAILS AND ADDITIONAL REMARKS:

g. Based on the history and findings, what is your impression of the cardiac status?

......................................................
......................................................
......................................................
......................................................
......................................................
......................................................

**TO THE MEDICAL EXAMINER:** Any erasures or alterations in this report should be initialled by you. Send this report, or any information which you prefer not to embody in this report, direct to the Medical Department of the Company.

**IMPORTANT:** If the Examiner has any information which may adversely affect the risk, please indicate such information under Item 9.

➤ Mail when completed to: Medical Director - William Penn Life Insurance Company of New York
100 Quentin Roosevelt Blvd • PO Box 519 • Garden City NY 11530

SPECIMEN

**Flexible Premium Adjustable Life Insurance Policy**
**Adjustable Death Benefit Payable Prior to the Maturity Date**
**Flexible Premiums Payable During Insured's Lifetime to Maturity Date**
**Non-Participating - No Dividends**

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261
                                    AGE 47 M SMOKER      TABLE STANDARD
                                    POLICY DATE:10/03/1995

ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:          4886
INITIAL SPECIFIED AMOUNT:        350000          MATURITY DATE:10/03/2043
OTHER COVERAGES:   NONE

| | | BASED ON CURRENT FACTORS | | | BASED ON GUARANTEED FACTORS | | |
|---|---|---|---|---|---|---|---|
| POLICY YEAR | ANNUAL PREMIUM | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT |
| 01 | 4886 | 2778 | 0 | 350000 | 2458 | 0 | 350000 |
| 02 | 4886 | 5573 | 0 | 350000 | 4720 | 0 | 350000 |
| 03 | 4886 | 8376 | 0 | 350000 | 6838 | 0 | 350000 |
| 04 | 4886 | 11354 | 8 | 350000 | 8794 | 0 | 350000 |
| 05 | 4886 | 14475 | 4160 | 350000 | 10540 | 225 | 350000 |
| 06 | 4886 | 17754 | 8471 | 350000 | 12034 | 2751 | 350000 |
| 07 | 4886 | 21257 | 13005 | 350000 | 13218 | 4966 | 350000 |
| 08 | 4886 | 24962 | 17742 | 350000 | 14027 | 6807 | 350000 |
| 09 | 4886 | 28909 | 22720 | 350000 | 14416 | 8227 | 350000 |
| 10 | 4886 | 33139 | 27982 | 350000 | 14323 | 9166 | 350000 |
| 11 | 4886 | 37574 | 33448 | 350000 | 13703 | 9577 | 350000 |
| 12 | 4886 | 42199 | 39105 | 350000 | 12485 | 9391 | 350000 |
| 13 | 4886 | 47146 | 45083 | 350000 | 10607 | 8544 | 350000 |
| 14 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| 15 | 4886 | 57968 | 57968 | 350000 | 4389 | 4389 | 350000 |
| 16 | 4886 | 63768 | 63768 | 350000 | 0 | 0 | 0 |
| 17 | 4886 | 69725 | 69725 | 350000 | 0 | 0 | 0 |
| 18 | 4886 | 75834 | 75834 | 350000 | 0 | 0 | 0 |
| 19 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| 20 | 4886 | 88517 | 88517 | 350000 | 0 | 0 | 0 |
| AGE 60 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| AGE 65 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| AGE 70 | 4886 | 116227 | 116227 | 350000 | 0 | 0 | 0 |

PAGE 1 OF 3

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX               POLICY #:0700014261
                                         AGE 47 M SMOKER    TABLE STANDARD
                                         POLICY DATE:10/03/1995


ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:          4886
INITIAL SPECIFIED AMOUNT:       350000          MATURITY DATE:10/03/2043
OTHER COVERAGES:   NONE

GUARANTEED VALUES ARE BASED UPON GUARANTEED COST OF INSURANCE AND EXPENSE
CHARGES AND 4% INTEREST.  CURRENT VALUES ARE BASED UPON THE CURRENT
COST OF INSURANCE AND EXPENSE CHARGES AND THE CURRENT INTEREST RATE,
WHICH VARIES BY POLICY ACCOUNT VALUES AS FOLLOWS:

| POLICY ACCOUNT VALUE | CURRENT INTEREST RATE |
|---|---|
| 0 - 9,999 | 6.50% |
| 10,000 - 19,999 | 7.00% |
| 20,000 AND OVER | 7.25% |

THE CURRENT INTEREST RATES ARE GUARANTEED NOT TO CHANGE DURING THE FIRST
POLICY YEAR.

THE PORTION OF POLICY ACCOUNT VALUE WHICH EQUALS THE AMOUNT OF ANY UNPAID
LOAN IS CREDITED WITH 6% INTEREST.  ALL INTEREST RATES SHOWN ARE EFFECTIVE
ANNUAL RATES.  INTEREST IS CREDITED MONTHLY AFTER DEDUCTION OF EXPENSE
AND COST OF INSURANCE CHARGES.

PREMIUMS ARE FLEXIBLE.  PREMIUMS ILLUSTRATED ARE BASED ON INTENDED PREMIUMS
AND, IF PAID OTHER THAN ANNUALLY, POLICY ACCOUNT VALUES AND CASH SURRENDER
VALUES WILL BE LESS THAN IF PREMIUMS WERE PAID ON AN ANNUAL BASIS.

THE POLICY ACCOUNT VALUES, CASH SURRENDER VALUES AND DEATH BENEFIT ILLUSTRATED
ARE END OF THE POLICY YEAR VALUES.

COVERAGE WILL CEASE IN YEAR 16 UNLESS THE PREMIUM IS INCREASED ON THE
GUARANTEED BASIS.

THE POLICY LOAN INTEREST RATE IS 7.4% PAYABLE IN ADVANCE.

A SERVICE CHARGE OF $25.00 WILL BE DEDUCTED FROM THE POLICY ACCOUNT VALUE
EACH TIME A PARTIAL SURRENDER AMOUNT IS PAID.

THE TAX STATUS OF THIS CONTRACT AS IT APPLIES TO THE HOLDER OF THIS POLICY
OR CONTRACT SHOULD BE REVIEWED EACH YEAR.

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX                POLICY #:0700014261

WILLIAM PENN LIFE INSURANCE COMPANY          ELLIOTT K ARNOLD
   OF NEW YORK                               11 GRACE AVENUE
100 QUENTIN ROOSEVELT BLVD PO BOX 519        SUITE 402
GARDEN CITY, NEW YORK   11530                GREAT NECK NY 11021
                                             PREPARED ON:  10/05/95

|                              | GUARANTEED VALUES | PROJECTED VALUES |
|------------------------------|-------------------|------------------|
| FLEXIBLE PREMIUM ADJUSTABLE LIFE |               |                  |
| 10 YEAR SURRENDER COST       | 11.977            | 7.907            |
| 10 NET PAYMENT               | 13.960            | 13.960           |
| 20 YEAR SURRENDER COST       | .000              | 6.676            |
| 20 YEAR NET PAYMENT          | .000              | 13.960           |

AN EXPLANATION OF THE INTENDED USE OF THE INDICES IS PROVIDED IN THE LIFE
INSURANCE BUYER'S GUIDE.

William Penn Life Insurance Company of New York    070-14261    Policy Number

PART I

1. a. Proposed Insured's Name: JON Fieldman

First    Middle    Last

Maiden and/or Prior Name _____

b. ☑ Male   ☐ Female

c. ☐ Single ☑ Married ☐ Divorced ☐ Widowed ☐ Separated

d. Date of Birth  9 / 29 / 48   e. Age ____

Mo.   Day   Yr.   (nearest birthday)

f. Place of Birth  NY    USA

State    Country

g. Social Security or Tax I.D. No.  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

h. Driver's License No. _____

2. b. Are you a citizen of the U.S.? ☑ Yes ☐ No

If No, state country and type of visa.

3. Send all mail to Owner at address in ☐ 4a  ☐ 4b  ☐ 5

4. a. Residence Address:

No. & Street  2 Country Club DR

City/State/Zip  White Plains  NY  10607

Telephone Number  (914) 592 8250

Questions 4b & c apply to proposed insured if age 15 or over; to owner or payor if proposed insured under age 15.

b. Business Address:

Name of Employer  Viss Cuesos Inc

No. & Street  210 W 44th St

City/State/Zip  NY  NY

Telephone Number  (212) 398-0360

Number of years employed  10 yrs

c. Occupation(s)  OwneR

Duties (describe) _____

5. Owner (if other than proposed insured)

a. Name  John Viscuso

b. Relationship to proposed insured  Business Partner

c. Address: ☐ Residence ☑ Business

No. & Street  (Viss Cuesos Inc.) 210 W 44th St

City/State/Zip  New York  NY

Telephone No.  (212) 398-0360

d. Social Security or Tax I.D. No. _____

6. Send Premium Notices to:

☐ Proposed Insured ☑ Owner ☐ Other

(Give name, address and telephone number if Other)

Name  See #5

No. & Street _____

City/State/Zip _____

Telephone No. ( ) _____

7. a. Plan  Penn Option FLEX

b. If Last Survivor plan, indicate joint equal age: ____

c. Amount $  350,000

d. Premiums Payable  ☑ Annual  ☐ Semi-annual
☐ Pre-Authorized Check ☐ Quarterly ☐ Other ____

e. List Bill ☐ Yes ☐ No
Special Billing Number if previously assigned _____

f. Automatic Premium Loan, if available ☐ Yes ☐ No

g. Other Riders/Benefits:

☐ Primary Insured Rider $_____

☐ Waiver of Monthly Deduction Rider (UL)

☐ Spouse Rider (UL) $_____

☐ Other Insured Rider $_____

$_____   $_____

$_____   $_____

☐ Children's Insurance Rider--Units/Face:_____

☐ Family Insurance Rider -- Units:_____

☐ Accidental Death Benefit $_____

☐ Cost of Living Rider

☐ Waiver of Premium Benefit Rider

☐ Annual Renewable & Convertible Term Rider (for Universal Life only)

☐ Annual Renewable Term (ART) Rider to Age 70/90

☐ Guaranteed Re-Entry Option (GRO) Rider

☐ Other _____

☐ Other _____

8. ☐ Alternate Policy    ☐ Additional Policy

Plan _____   Amount $_____

☐ Additional Benefits: ☐W.P. ☐ADB ☐Other:____

9. Complete for Universal Life only:

a. Proceeds Option:

☑ Option 1: The Specified Amount includes the Policy Account Value

☐ Option 2: The Specified Amount is in addition to the Policy Account Value.

b. Billing Instructions:

Total First Year Annual Premium Planned $ 4886.00

Remainder of First Year Premium to be billed as follows:

Planned Future Premiums for Second Year and thereafter:
☑ Annual $ 4886.   ☐ Semi-Annual $_____ (x2)
☐ Quarterly $_____ (x4) ☐ Other (See Item c)____

c. Special Planned Premium Arrangements (Attach Illustration): If you wish the policy summary to reflect planned future premiums which vary over the duration of the policy, please indicate here (Example: $1,000 per year for the first 5 years; $2,000 per year for the next 10 years, etc.)._____

10. Amount paid with this application: $_____
Please read Conditional Receipt.    ☑ NONE

AP-L-H/94.    2968

PART I (continued)

11. Other Proposed Insured(s):

| Name | Sex | Relationship to Proposed Insured | Date of Birth (Mo-Day-Yr) | State/Country of Birth | Driver's License # | Social Security or Tax I.D.# |
|------|-----|----------------------------------|---------------------------|------------------------|--------------------|------------------------------|
|      |     |                                  |                           |                        |                    |                              |
|      |     |                                  |                           |                        |                    |                              |
|      |     |                                  |                           |                        |                    |                              |
|      |     |                                  |                           |                        |                    |                              |

12. For other proposed insured(s) age 18 or older listed in #11 above provide: Name, address and telephone number of employer, occupation & duties, years employed there and current annual income.

_____

_____

_____

_____

_____

13. Life insurance in force on all persons proposed for insurance.

| Name of Proposed Insured | Company | Issue Year | Face Amount | ADB | Purpose (pers/bus.) |
|--------------------------|---------|------------|-------------|-----|---------------------|
| NONE                     |         |            |             |     |                     |
|                          |         |            |             |     |                     |
|                          |         |            |             |     |                     |
|                          |         |            |             |     |                     |

For any Yes answer to Questions 14 a - i, give full details in Remarks section and complete any special form(s) required.

14. HAS ANY PERSON PROPOSED FOR INSURANCE:

|  | Yes | No |
|--|-----|-----|
| a. smoked cigarettes or used tobacco in any other form in the past twelve (12) months? | ☑ | ☐ |
| b. engaged or intend to engage in hang gliding, racing, mountain climbing, skin, scuba or sky diving? (If Yes, complete Hazardous Activities Questionnaire.) | ☐ | ☑ |
| c. had driver's license restricted, revoked or suspended? | ☐ | ☑ |
| d. been convicted of a felony or misdemeanor within the past 10 years? | ☐ | ☑ |
| e. other life or health insurance applications pending? | ☐ | ☑ |
| f. ever had life or health insurance declined, modified or rated? | ☐ | ☑ |
| g. any intention of traveling or residing outside the country? | ☐ | ☑ |
| h. any intention of replacing or changing any life insurance or annuity policy in force in this or any other company? | ☐ | ☑ |
| i. taken within five years or intend to take flights other than as a fare-paying passenger on a regularly scheduled airline? (If Yes, complete Aviation Questionnaire.) | ☐ | ☑ |

15. Complete for Indeterminate Premium Life Policy Only:

I understand that: (a) the premium for the policy applied for may change after the initial guarantee period; (b) the premium then charged is not guaranteed; and (c) the Company may charge the full maximum guaranteed premium. ☑ Yes ☐ No

PART I (continued)

16. **Complete only if a medical examination is to be taken:**
    Has any person proposed for insurance consulted a physician within the last five years? If answer is "Yes," give dates, names, addresses and reasons for consultations.     ☐ Yes    ☐ No

_____
_____
_____
_____

17. Beneficiary Designation

| Primary Beneficiary and Address (If Trust, give name and date of Trust) | Relationship to Proposed Insured |
|---|---|
| Kimbal Viscuso | Business Partners (Wife) |
| 6 Shadow Lane | |
| Holmdel   NJ   07735 - 2366 | |

If living, otherwise to: Contingent Beneficiary and Address:

18. REMARKS

| Question No. | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

19. Home Office Corrections (not for use with policies issued for delivery in PA): _____

PART I (continued)
-4-
IN CONNECTION WITH THIS APPLICATION FOR INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:

The statements contained here and in Part II of this application and any supplements thereto, copies of which shall be attached to and made a part of any policy to be issued, are true to the best of my (our) knowledge and belief and are made to induce the Company to issue an insurance policy.

No agent or other person has power to make, modify, or discharge any contract of insurance or to bind the Company by making promises respecting benefits upon any policy to be issued. No information as to any matter made a subject of inquiry here and in Part II of this application and any supplements thereto, copies of which shall be attached to and made part of any policy to be issued, shall be considered known by the Company unless set out in writing on this application.

Except as may be provided in a duly issued Conditional Receipt bearing the same number as this application, no insurance shall take effect unless and until the policy has been physically delivered and the first full premium paid during the lifetime of the insured(s) and then only if the person(s) to be insured is (are) actually in the state of health and insurability represented in Parts I and II of this application and any supplements thereto, copies of which shall be attached to and made part of any policy to be issued.

Changes or corrections made by the Company and noted in Part I, Question 19 above are ratified by the Owner upon acceptance of a contract containing this application with the noted changes or corrections. In those states where written consent is required by statute or State Insurance Department regulation for amendments as to plan, amount, classification, age at issue, or benefits, such changes will be made only with the Owner's written consent.

## DECLARATION

I (We) have carefully read the receipt and understand and agree to the terms thereof including the conditions under which a limited amount of insurance may become effective prior to policy delivery. I (We) understand that all premium checks are to be made payable to William Penn Life Insurance Company of New York; checks are not to be made payable to the agent or the payee left blank. I (We) have received the MIB Disclosure and Fair Credit Reporting Act/Abbreviated Notice of Insurance Practices.

City _New York_ State of _N.Y_

Date _7/31/95_

_____
Signature of Witness (Licensed Resident Agent where required by statute or regulation)

_____
Agent Name (if required)-Please Print  State/Lic.# (if required)

_____
Signature of Owner, if other than Proposed Insured

_____
Signature of Proposed Insured, or parent or legal guardian if Proposed Insured is a minor

_____
Signature of Spouse or Other Proposed Insured

_____
Signature of Other Proposed Insured

_____
Signature of Other Proposed Insured

AUTHORIZATION. A photocopy of this authorization shall be as valid as the original, which shall be valid for 30 months from the date below. I (We) hereby authorize any physician, medical practitioner, hospital, clinic or medical or medically related facility, insurance company, employer, consumer reporting agency, the Medical Information Bureau or any other organization, institution or person having any information (including diagnosis, treatment or prognosis) about my (our) physical or mental condition or any other information about me (us) or my (our) health, to give to William Penn Life Insurance Company of New York, its authorized representatives or its reinsurers any such information. This includes data related to drugs or alcoholism. It also includes data obtained in connection with the preparation of any investigative consumer report as defined under the Fair Credit Reporting Act(s) and referred to elsewhere in this application. To expedite the collection of data, I (we) authorize all such sources, except the Medical Information Bureau, to give the data to any agency employed by William Penn Life Insurance to collect and transmit such data. I (We) further authorize William Penn Life Insurance to prepare or obtain an investigative consumer report in connection with this application. If an investigative consumer report is prepared, I (we) elect to be interviewed: ☐ Yes  ☐ No.

I (We) am (are) aware that I (we) am (are) entitled to receive a copy of this authorization form.   No. 11188

Date _7/31/95_

_____
Signature of Proposed Insured, or parent or legal guardian if Proposed Insured is a minor

_____
Signature of Other Proposed Insured

_____
Signature of Other Proposed Insured

# BENEFICIARY CHANGE FORM

Mail completed form to:
William Penn Life Insurance Company of New York
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
1-800-548-4773

**William Penn**
Life Insurance Company of New York
A Partnership for Life

Insured: Jon Fieldman                    Policy Number: 07000 14261

I.     The proceeds of this life insurance policy will be paid to the beneficiary as shown below.  The rights of the beneficiary will be subject to the rights of any assignee of record.

**PRIMARY BENEFICIARY** (If additional space is needed, please attach a separate page.)

| Name (First, MI, Last) | Address (street, city, state, zip) | SSN | Relationship | Percent |
|---|---|---|---|---|
| Charles M. Birns | 17 Hadden Road. Scarsdale, NY 10583 | 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 | Son of POA | 50% |
| Beth S. Martin-Birns | 17 Hadden Road. Scarsdale NY 10583 | 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 | Wife of Son | 50% |
| | | | | |
| | | | | |

☐ I have more than 5 Primary Beneficiaries.                    Totals MUST add to 100%    100%

**CONTINGENT BENEFICIARY** (If additional space is needed, please attach a separate page.)
(A contingent beneficiary is a person or persons named to receive the benefits only if the primary beneficiary dies before the insured.)

| Name (First, MI, Last) | Address (street, city, state, zip) | SSN | Relationship | Percent |
|---|---|---|---|---|
| Michael Birns | 17 Hadden Road. Scarsdale NY 10583 | 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 | POA | 100% |
| | | | | |
| | | | | |
| | | | | |

☐ I have more than 5 Contingent Beneficiaries.                    Totals MUST add to 100%    100%

All prior designations, if any, of beneficiaries and contingent beneficiaries are hereby revoked.

II.    Required Signatures:

X _____ - POA          917-969-9882 - 800-842-5440        914-472-7857
Policy Owner Name                Telephone Number
17 Hadden Road                    MBirns @ Aol. com.
Address                           Email Address

Address _____

Address _____

Scarsdale    NY    10583         _____ Power of Attorney    10/13/06
City         State  Zip           Signature of Policy Owner (Required)    Date

Marietta Sacramone 10/13/06                 _____                    X _____
Witness Signature (Required)    Date         Additional Signature (if necessary)    Date

**The following states require a spousal signature if you are currently married or were married at the time of purchase: AZ, CA, ID, LA, NV, NM, TX, WA, WI and Puerto Rico. If the spouse is deceased, please enclose a copy of the death certificate. If divorced, please enclose a copy of the divorce decree.

III.    To process your request without delay, please make sure the following have been completed:

☑ Did the Policy Owner(s) sign and date the form?
☐ Do the percentage totals equal 100%?
☐ Did you include the spousal signature if applicable?
☑ Did the witness sign and date the form and an additional signature if applicable?
☑ Did you enclose the title page and signature page of the trust if listed as a beneficiary?
☐ If you designated more than 5 primary or contingent beneficiaries, did you attach an additional page?

LP159WP (9/06)

11/02/2006   15:47

GREENSANDGREEN

*The Ticket Box*
*212 S Center Ave*
*Suite 504*
*Fort Lee NJ 07024*

201461-4806



# DURABLE POWER OF ATTORN

When Recorded, Mail to:

Ronald G. Wilson, Esq.
3300 North Central Avenue
Suite 1800
Phoenix, Arizona 85012

**EFFECTIVE DATE:** Immediately

I, **JON FIELDMAN**, the Principal and a resident of Maricopa County, State of Arizona, have designated, constituted and appointed, and by these presents do hereby designate, constitute and appoint **MICHAEL BIRNS**, a resident of the State of New York, my Attorney-in-Fact and Agent (hereinafter called "Agent"), in my name and for my benefit as follows:

1.     **Advisory Notice to Agent.**  There have been recent changes to Arizona Revised Statute Section 14-5506, a statute which governs the exercise of Powers of Attorney. Under that new statute an agent cannot receive any benefits from Principal unless those benefits are specifically identified in detail within this instrument or within a written contract. Otherwise, the agent could be subject to criminal prosecution, or subject to the penalty provisions of Arizona Revised Statute Section 46-456, which authorizes the loss of the agent's right to inherit from principal as well as payment of treble damages and attorney fees. An agent should carefully review these statutes or consult with a knowledgeable attorney prior to exercising the authority granted by this Power of Attorney;

2.     **General Grant of Power.**  To exercise or perform any act, power, duty, right or obligation whatsoever that I now have or may hereafter acquire, relating to any person, matter, transaction or property, real or personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the following specifically enumerated powers.  I grant to my Agent full power and authority to do everything necessary in exercising any of the powers herein granted, as fully as I might, or could do, if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my Agent shall lawfully do, or cause to be done, by virtue of this Power of Attorney and the powers herein granted;

3.     **Powers of Collection and Payment.**  To forgive, request, demand, sue for, recover, collect, receive, hold all such sums of money, debts, dues, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devises, notes, interests, stock certificates, bonds, dividends, certificates of deposit, annuities, pension, profit sharing, retirement, social security, insurance, and other contractual benefits and proceeds, all documents of title, all property, real or personal, intangible and tangible property and property rights, and demands whatsoever, liquidated or unliquidated, now or hereafter

owned by, or due, owing, payable or belonging to me, or in which I have or may thereafter acquire an interest; to have, use, and take all lawful means and equitable and legal remedies and proceedings in my name for the collection and recovery thereof, and to adjust, sell, compromise, and agree for the same, and to execute and deliver for me, on my behalf, and in my name, all endorsements, releases, receipts, or other sufficient discharges for the same;

4.    **Power to Acquire and Sell.**  To acquire, lease, purchase, exchange, grant options to sell, and sell and convey real or personal property, mortgage real property, tangible or intangible, or interests therein, on such terms and conditions as my Agent shall deem proper; to foreclose on mortgages and deeds of trust, to take title to property in my name if he or she thinks proper, and to execute, acknowledge and deliver deeds to real property, mortgages, releases, satisfactions and other instruments relating to real estate which he or she considers appropriate.  My Agent may accept the conveyance of real property in my name as a joint tenant with the right of survivorship with my spouse, including property wherein my said Agent is one of the joint tenants of my spouse, as the case may be;

5.    **Management Powers.**  To maintain, repair, improve, invest, manage, insure, rent, lease, encumber, and in any manner deal with any real or personal property, tangible or intangible, or any interest therein, that I now own or may hereafter acquire, in my name and for my benefit, upon such terms and conditions as my Agent shall deem proper;

6.    **Banking Powers.**  To make, receive and endorse checks and drafts, deposit and withdraw funds, acquire and redeem certificates of deposit, in banks, savings and loan associations and other institutions, execute or release such deeds of trust or other security agreements, as may be necessary or proper in the exercise of the rights and power herein granted, to use any credit card held in my name and to make such purchases and sign such charge slips as may be necessary to use such credit cards;

7.    **Motor Vehicles.**  To apply for a Certificate of Title upon, and endorse and transfer title thereto, for any automobile, truck, pickup, van, motor cycle or other motor vehicle, and to represent in such transfer assignment that the title to said motor vehicle is free and clear of all liens and encumbrances, except those specifically set forth in such transfer assignment;

8.    **Business Interests.**  To conduct or participate in any lawful business of whatever nature for me and in my name; execute partnership agreements and sell, liquidate or dissolve any business; elect or employ officers, directors and agents; carry out the provisions of any agreement for the sale of any business interest or the stock therein; and exercise voting rights with respect to stock, either in person or by proxy, and exercise stock options;

9.    **Principal's Support.**  To do all acts necessary for maintaining Principal's customary standard of living, to provide for living quarters by purchase, lease, or other arrangement, or by the payment of the operating costs of Principal's existing quarters,

2

371336-1

41-01-2006 01:06 PM    ROBBINSANDGREEN                        NO.7000 P. 0

including interest, amortization payments, repairs, and taxes, to provide normal domestic help for the operation of Principal's household, and provide clothing, transportation, medical, food and incidentals for Principal;

10.    **Medicaid Or Other Governmental Benefits**. To utilize all lawful means and methods to recover such assets and rights, qualify Principal for and claim benefits provided by any governmental agency or body, to include Medicaid, Medicare, supplemental Social Security, and Social Security Disability Insurance. This authority includes converting my assets into assets that do not disqualify me from receiving such benefits and to make gifts in accordance with the gifting authority granted elsewhere in this instrument, and to consider all rules, regulations, and statutes regarding disqualification or other adverse actions that may result from such gifting;

P.I.

W.I.

11.    **Gifts**. To make gifts, to include the forgiveness of indebtedness, to my spouse, my children and descendants (if applicable) which may include my Agent, in whatever amounts and for whatever purposes as Agent deems appropriate. To make gifts to any tax-exempt charitable organization recognized under Internal Revenue Code ("IRC") Sections 170(c) or 501(c)(3) and to those persons named as beneficiaries in the Principal's most recent Will or Trust, life insurance policy, retirement benefits or payable upon death designation. As to any donee, these amounts shall not exceed the largest amount which then qualifies for the annual exclusion allowed for Federal Gift Tax Purposes as set forth in Section 2503 of the IRC. The authority to make gifts is non-cumulative and shall lapse at the end of each calendar year. All gifts may be made outright, in trust or to any guardian, conservator, or custodian of an eligible donee and gifts are not required to be in equal amounts and are not required to be made to all eligible donees. Agent shall take into consideration past history of gifts by me and shall not make any gifts if it is not in my best interest as determined by agent. The Agent is also specifically given power and authority to make gifts or transfers of Principal's interest in real or personal property in accordance with this paragraph to avoid estate recovery against such real or personal property under the Medicaid (AHCCCS/ALTCS) programs, including the power and authority to disclaim the Principal's community property interest in real and/or personal property unto the spouse;

Such gifts may include gifts or transfers to a trust, revocable or irrevocable, whether in existence or created by the Agent under this power of attorney for any purpose as set forth herein;

Gifts made for the purpose of qualifying the Principal for Medicaid (AHCCCS/ALTCS) benefits may result in a period of disqualification from such benefits;

3

This Durable Power of Attorney is not intended to create a general power of appointment under IRS Code Section 2041 and any gifts to the Agent must be made in compliance with the terms of this paragraph;

P.I.

W.I.

12.     **Tax Powers**.  To prepare, sign and file joint or separate income tax returns or declarations of estimated tax for any year, or years; to prepare, sign and file gift tax returns with respect to gifts made by me for any year, or years; to consent to any gift and to utilize any gift-splitting provision or other tax election; and to prepare, sign and file any claims for refund of any tax; to represent me in any proceedings now pending or hereafter arising between me and the Treasury Department of the United States Government, or any other federal, state, or foreign governmental authorities, relative to my income, gift, estate, or other tax liability for all years, granting unto my said attorney full power in my name and on my behalf to appear before proper officials of the Treasury Department, or any other federal, state or foreign government officials; to adjust, settle, compromise or otherwise dispose of all questions, relative to any of the said tax liabilities; to receive copies of my tax returns and any papers, letters or other communications concerning any or all of said tax liabilities; to sign any waivers of the statute of limitations or any other waivers; to sign closing agreements for final determination of tax liability, to receive, to endorse and collect, checks and settlement of any refund; to execute and file petitions to the Tax Court of the United States, and all other papers in connection with such proceeding; to substitute in the place and stead of said attorney, any other attorney or attorneys, and to appoint association attorneys, and to deem this instrument to be the equivalent of the Internal Revenue Service Form 2848, or other similar form used by State and local taxing authorities;

13.     **Safe Deposit Boxes**.  To have access at any time, or times, to any safe deposit box rented by me, wheresoever located, and to remove all, or any part of the contents thereof, and to surrender or relinquish said safe deposit box, and any institution in which any such safe deposit box may be located shall not incur any liability to me or my estate, as a result of permitting my Agent to exercise this power;

14.     **Retirement Assets and Insurance Contracts**.  To manage any interest which I may have in any retirement asset or insurance contract, which shall include any interest which I may have in any qualified retirement plan, annuity, or account, such as any pension, annuity or other plan, or account governed by ERISA, CSRS, or FERS, any IRA, SEP IRA, or SIMPLE IRA, any tax-sheltered annuity, any deferred compensation plan, any modified endowment contract, or any MSA. The authority to manage any such interest shall include making any elections or undertaking other acts which are required under applicable laws to create, maintain or enhance any tax-advantage status of my interest, including authorizing the timing and amount of any distributions from the retirement assets or insurance contracts, or payment for premiums, or authorizing payment for premiums for

4

271326 1

any insurance contract, but shall not include the authority to change the name of any beneficiary in any retirement asset or insurance contract;

P.I.
W.I.

15. **Power to Sue Third Parties.** If any third-party (including stock transfer agents, title insurance company, banks, credit unions, and savings and loan associations) with whom my Agent seeks to transact, refuses to recognize my Agent's authority to act on my behalf pursuant to this Power of Attorney, I authorize my Agent to sue and recover from such third-party all resulting damages, costs, expenses and attorney fees that are incurred because of such failure to act. The cost, expenses, and attorney fees incurred in bringing such action shall be charged against my general assets, to the extent that they are not received from said third-party;

16. **Benefits Received by Agent.** It is my intention that my Agent be reasonably compensated for the services rendered on my behalf and be reimbursed for any expenses paid by the Agent which were incurred on my behalf. Reasonable compensation shall not exceed the hourly wage or salary equivalent which the Agent customarily receives in his or her regular employment. Reimbursement shall include, but is not limited to, monies paid for medications, medical co-payments, fees for medical, nursing and care-giver services, household or personal incidentals, automobile maintenance and repair, lawn services or landscaping, fees for professional services, reasonable travel or lodging costs in performance of the duties created by this Power of Attorney, maintenance and repair of my residence and care of my pets. Benefits authorized to be received by my Agent shall include any imputed rent deemed to exist due to any arrangement, agreement or understanding between my Agent and I which allows my Agent to live rent-free in my residence or other property owned by me. Specifically, I grant to my Agent the ability to inherit from me, if I specifically name them in my Will or Trust;

P.I.
W.I.

17. **Interpretation and Governing Law.** This instrument is to be construed and interpreted as a general durable power of attorney. The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my Agent. This instrument is executed and delivered in the State of Arizona, and the laws of the State of Arizona shall govern all questions as to the validity of this power and the construction of its provisions;

18. **Third-Party Reliance.** Third parties may rely upon the representations of my Agent, as to all matters relating to any power granted to my Agent, and no person who may act in reliance upon the representations of my Agent, or the

5

271139-1

APR 19 2006 3:11PM    ROBBINSANDGREEN

authority granted to my Agent shall incur any liability to me or my estate as a result of permitting my Agent to exercise any power;

19.    **Incapacity or Disability of Principal.**    This General Power of Attorney shall not be affected by my incapacity or disability and shall remain in full force and effect until revoked. This General Power of Attorney may be revoked by the Principal giving actual written notice to anyone dealing with the Attorney-in-Fact, or by recording a Revocation of Power of Attorney with the County Recorder of Maricopa County, Arizona. If this General Power of Attorney is not revoked within six (6) months from its effective date by recording a Revocation, it shall be considered to be renewed and effective for an additional six (6) months period until either the recording of the Revocation of Power of Attorney, or by actual notice to anyone dealing with the Attorney-in-Fact. Anyone dealing with the Attorney-in-Fact, shall be relieved from knowledge as to its revocation, until actual receipt of a recorded Revocation of said Power of Attorney. The failure of the Principal to record any Revocation shall be construed as a renewal of the Power of Attorney. My physician's declaration in writing of my incapacity or disability shall be determinative hereunder;

20.    **Transfer of Assets.**    To transfer any assets of mine, whether real or personal property, to the Trustee of any Revocable Trust established by me or for me, which provides benefits for me during my lifetime, and to establish such Revocable Trust for me, provided that the distribution after my death from any such Trust should conform to any estate plan that I have previously established by Will or otherwise with respect to the assets transferred;

21.    **Power to Create and Fund Trusts.**    To convey and transfer any of my property to a trustee who shall hold the same for my benefit, my spouse's benefit, and/or the benefit of my children and other members of my immediate family upon such trust terms and conditions as my Agent shall deem desirable and to establish a revocable trust for me, or trust pursuant to 42 U.S.C. Section 1396p(d)(4), provided that the distribution after my death from any such trust should conform to any estate plan that I have previously established by Will or otherwise with respect to assets transferred;

P.I.

W.I.

22.    **Tangible Personal Property.**    To distribute during my lifetime any bequests of tangible personal property which I have made by Will or dispositions of such property held in Trust or contained in a Memorandum referred to in a valid Will or Trust instrument when, in my agent's good faith determination, I am incapacitated to the point where I am unable to make decisions with regard to such property and I am unlikely to recover to the point where I can make such decisions in the future, provided that neither

6

such property nor the proceeds from the sale of such property is necessary for my health, support, or comfort;

P.I.

W.I.

    23.   **Disclaimer of Beneficial Interest.**  To renounce and disclaim any property or interest in property or powers to which for any reason and by any means I may become entitled, whether by gift or testamentary disposition; to release or abandon any property or interest in property or powers which I may now or hereafter own, including interest in or rights over trust assets (including the right to alter, amend, revoke or terminate to effect the disclaimer) and to exercise any right to claim an elective share in any estate or under any Will, and in exercising such discretion, my Agent may take into account such matters as shall include, but shall not be limited to, any reduction in estate or inheritance taxes on my estate, and the effect of such renunciation or disclaimer upon persons interested in my estate and persons who would receive the renounced or disclaimed property;

P.I.

W.I.

    IN WITNESS WHEREOF, I, the Principal, execute this document intending it to be effective on the date that it is signed. I understand that (a) this document gives my Agent serious powers over me and my assets, (b) the powers to continue after I become incapacitated, or disabled and (c) I can revoke and cancel this document at any time and for any reason, or no reason. Further, I, the Principal sign my name to this Power of Attorney on the date indicated below and being first duly sworn , declare to the undersigned authority that I sign and execute this instrument as my Power of Attorney and that I sign it willingly, or willingly direct another to sign for me, or sign by an X which shall be witnessed, and that I execute it as my free and voluntary act for the purposes expressed in the Power of Attorney and that I am eighteen (18) years of age or older, of sound mind, and under no constraint or undue influence. Further, I direct that photographic copies of this Power be made, which will have the same force and effect as the original.

271328-1

11/02/2006    15:47                                    NO.332    P08

DATED at _____Phoenix_____ _____Arizona_____, on _____January 31st_____
_____, 2005.

_____

**JON FIELDMAN**
8270 E. Wood Drive
Scottsdale, Arizona 85260

I, _____Roberta M. Carlson_____, the Witness, sign my name to the
foregoing Power of Attorney, being first duly sworn and do declare to the undersigned
authority that the Principal signs and executes this instrument as his/her Power of Attorney
and that he/she signed it willingly, or willingly directs another to sign for him/her, and that
I, in the presence and hearing of the Principal, sign this Power of Attorney as Witness to the
Principal signing and that to the best of my knowledge, the Principal is eighteen (18) years
of age or older, of sound mind and under no constraint or undue influence.

_____Roberta M. Carlson_____
Witness
(Witness must not be agent, agent's spouse or agent's child)

_____January 31, 2005_____
Date

STATE OF ARIZONA        )
                        ) ss.
County of Maricopa      )

        Subscribed, sworn to and acknowledged before me by **JON FIELDMAN**, the
Principal, and subscribed and sworn to before me by _____Roberta M. Carlson_____
_____, the witness, this _____31st_____ day of _____January_____, 2005.

_____
Notary Public

My Commission Expires:

_____9-16-2006_____

PI=Principal's Initials
WI=Witness' Initials

OFFICIAL SEAL
RONALD G. WILSON
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Expires Sept. 16, 2006

8

271320-1



**William Penn**
Life Insurance Company of New York
100 Quentin Roosevelt Boulevard P.O. Box 519
Garden City, New York 11530

November 13, 2006

JON FIELDMAN
8270 E WOOD DRIVE
SCOTTSDALE, AZ 85260

Policy Number: 0700014261
Insured:        JON FIELDMAN
Subject:        Beneficiary Change Form

Dear Policyowner:

Pursuant to your instructions your recent request to change your beneficiary (s) has been completed. The new designation is as follows:

Primary Beneficiary:    CHARLES BIANS
                        BETH BIRNS

Contingent Beneficiary:  MICHAEL BIRNS

This confirmation is a valuable document and should be kept with your contract. We are glad to have had this opportunity to be of service. Should you have any questions or need additional information, please do not hesitate to contact our Administrative Services Department at CustomerService_williampenn@lgamerica.com or 1-800-346-4773.

CC: G630000
    EKA PLANNING SERVICES INC

NMR0

TELEPHONE DEATH REPORT

EXAMINER: _Patty_ 4/17/07
DATE:

INFORMANT'S NAME: _Michael Burns - Trustee_ BIRNS
RELATIONSHIP: _friend_
TELEPHONE NUMBER: _917 969 9802_

BENEFICIARY:
BENEFICIARY SOCIAL SECURITY NUMBER:
BENEFICIARY ADDRESS:


BENEFICIARY TELEPHONE NUMBER:

POLICY NUMBER: _0100014261_
NAME OF DECEASED (INSURED/OWNER): _Jon Fieldman_
SOCIAL SECURITY NUMBER: _127368989_
STATE WHERE DEATH OCCURED: _AZ_
DATE OF DEATH: _April 4, 2007_
CAUSE OF DEATH: _natural_

CORRESPOND WITH:

_file imaged_

REMARKS: _W/ M. Burns_
_17 Hadden Rd_
_Scarsdale, NY_
_10583_

Michael Birns
17 Hadden Road
Scarsdale, New York 10583

WM. PENN LIFE INS. CO. OF N.Y.
RECEIVED
JUL 11 2007
CLAIMS DEPT

July 9, 2007

Bryan R. Newcombe, Esq.
Vice President, Secretary and General Counsel
William Penn Life Insurance Company of New York
100 Quentin Roosevelt Boulevard
P.O. Box 519
Garden City, New York 11530

    Re: Jon Fieldman, Deceased
       Universal Life Insurance Policy Number: 0700014261
       Claim Number: LC 04584

Dear Mr. Newcombe:

  I am writing concerning a letter I received from Barbara Fox, a claims examiner for William Penn Life Insurance Company of New York. The letter, dated April 18, 2007 (copy enclosed), concerned a claim I submitted on behalf of Charles Birns and Beth S. Martin-Birns in connection with the policy, and states that another individual is "the current beneficiary of record." This contradicts the November 13, 2006 notice that William Penn sent to Mr. Fieldman (copy enclosed), which confirmed that the policy was changed to make Charles Bians [sic] and Beth Birns the primary beneficiaries.

  A timeline of events may help to explain the situation more clearly. I was a close friend of Jon Fieldman's and was the attorney-in-fact for him under a Durable Power of Attorney that Jon signed on January 31, 2005. In October 2006, Jon's bookkeeper forwarded to me a copy of William Penn's "Annual Statement as of 10/13/2006" concerning the policy. I telephoned the office of the agent whose name appears on the statement and learned that, because the account balance had fallen below the amount of the annual premium due, the policy would lapse if the premium were unpaid. Knowing that Jon no longer had any business or personal reason for maintaining the policy for the benefit of the originally-named beneficiary, I advised the agent that, if I could authorize a change of the policy beneficiary to my son and my wife, I would pay the premium to maintain the policy. I was told to send a check for the premium directly to William Penn's Customer Service Department (which I did by Federal Express on November 8, 2006), and to complete a Beneficiary Change Form and return it to the agent with a copy of the Durable Power of Attorney. After doing so, the agent advised me that the change was being made, which William Penn then confirmed by the November 13, 2006 notice.

Jon passed away on April 4, 2007. I notified William Penn of his death and requested payment on behalf of the beneficiaries. As you can imagine, Ms. Fox's response took me completely by surprise. Had William Penn refused my premium payment in November and advised me then that any additional authority from Jon were needed in order for the beneficiary change to be made, I would have taken the steps necessary to obtain that authority. But, with William Penn having accepted my premium payment and having issued the confirmation notice, I assumed, and had every reason to assume, that all was in order.

I would like to rectify this situation as soon as possible and would appreciate your help in doing so. I look forward to hearing from you and thank you in advance for your assistance.

Sincerely yours,

Michael Birns

cc:    Barbara Fox
       Claims Examiner

100 Quentin Roosevelt Boulevard
P.O. Box 519
Garden City, New York 11530
(516) 794-3700

WM. PENN LIFE INS. CO. OF N.Y.
RECEIVED

AUG  6 2007

CLAIMS DEPT

Re: Jon Fieldman Deceased                    August 4, 2007
    Policy # 0700014261
    Claim # LC 04584

Dear Ms Fox,

I am responding to your letter dated July 30, 2007, to Mr. Michael Birns and  our
Discussions. I understand that I am the named beneficiary of the above referenced
Policy.

Please  be advised that I am not prepared to issue a General Release.  It is my
Present intention to claim the death benefit under the policy.

If you have any questions or require additional information please contact me.

Thank you,

*Kim Viscuso*

Kimbal Viscuso

DEC 26 2007

# CONNELL FOLEY LLP
## ATTORNEYS AT LAW

85 LIVINGSTON AVENUE
ROSELAND, N.J. 07068-3702
(973) 535-0500
FAX: (973) 535-9217

JERSEY CITY OFFICE
HARBORSIDE FINANCIAL CENTER
2510 PLAZA FIVE
JERSEY CITY, N.J. 07311-4029
(201) 521-1000
FAX: (201) 521-0100

NEW YORK OFFICE
888 SEVENTH AVENUE
NEW YORK, N.Y. 10106
(212) 262-2390
FAX: (212) 262-0050

PHILADELPHIA OFFICE
1500 MARKET STREET
PHILADELPHIA, PA 19102
(215) 246-3403
FAX: (215) 665-5727

JOHN A. PINDAR (1969)
GEORGE W. CONNELL (2005)
ADRIAN M. FOLEY, JR.
GEORGE J. KENNY*
KENNETH F. KUNZMAN
SAMUEL D. LORD
RICHARD D. CATENACCI
RICHARD J. BADOLATO*
PETER D. MANAHAN
JOHN B. MURRAY
MARK L. FLEDER
KEVIN J. COAKLEY
WILLIAM H. GRAHAM†
THOMAS S. COSMA
KATHLEEN S. MURPHY
PATRICK J. MCAULEY
PETER J. PIZZI*†
KEVIN R. GARDNER
ROBERT E. RYAN
MICHAEL X. MCBRIDE*
JEFFREY W. MORYAN
JOHN K. BENNETT
PETER J. SMITH*
BRIAN G. STELLER
PHILIP F. McGOVERN, JR.
KAREN PAINTER RANDALL
LIZA M. WALSH
JOHN P. LACEY
TIMOTHY E. CORRISTON†
ERNEST W. SCHOELLKOPFF†
PATRICK J. HUGHES†*
JAMES C. McCANN*

JOHN D. CROMIE
ANGELA A. IUSO*
GLENN T. DYER
CLARENCE SMITH, JR.--
WILLIAM T. MCGLOIN*
BRENDAN JUDGE
DAREN S. McNALLY*
STEPHEN V. FALANGA*
JEFFREY L. O'HARA
TRICIA O'REILLY*
ANTHONY J. VITTIELLO*
MARC D. HAEFNER
JONATHAN P. McHENRY
JAMES P. RHATICAN*†
MATTHEW W. BAUER*
JOSEPH C. DEBLASIO
BRAD D. SHALIT*

COUNSEL
JOHN W. BISSELL
JOHN B. LA VECCHIA
VIRGINIA M. EDWARDS†
FRANCIS E. SCHILLER*
EUGENE P. SQUEO*
BERNARD M. HARTNETT, JR.*
NOEL D. HUMPHREYS*
ANTHONY ROMANO II*
CHARLES J. HARRINGTON III†
STEVE BARNETT*
KARIN L. SPALDING*
JODI ANNE HUDSON*
CORNELIUS J. O'REILLY*
RICHARD A. JAGEN
NANCY A. SKIDMORE*
THOMAS J. SCUDERI

ELIZABETH M. TRANTINA*
M. TREVOR LYONS*
CRAIG S. DEMARESKI*
ELIZABETH W. EATON
JOSEPH M. MURPHY
W. NEVINS McCANN*
JASON E. MARX*
THOMAS J. O'LEARY*
MITCHELL W. TARASCHI
MICHAEL A. SHADIACK
OWEN C. McCARTHY
PATRICIA A. LEE†
DOUGLAS J. SHORT*
ANTONIO CELII*
JAMES M. MERENDINO
MICHELE T. TANTALLA*
AGNES ANTONIAN*
BRYAN P. COUCH*
GREGORY E. PETERSON
HECTOR D. RUIZ*
NEIL V. MODY*
ROBERT A. VERDIBELLO*
MICHAEL J. ACKERMAN*
MELISSA A. ZAWADZKI*
MEGHAN C. GOODWIN*
MATTHEW S. SCHULTZ*
JENNIFER C. CRITCHLEY*
PATRICK S. BRANNIGAN*

MATTHEW I. GENNARO
DANIELA R. D'AMICO*
DANIA M. BILLINGS*
RONAK R. CHOKSHI*
CHRISTINE I. GANNON*
JOSE VILARINO
PHILIP W. ALLOGRAMENTO, III*
CATHERINE G. BRYAN†
JAMES C. HAYNIE*
LAURIE B. KACHONICK*
MEGAN M. ROBERTS*
ANDREW C. SAYLES*
SARAH B. BLUMBERG†
STEPHEN D. KESSLER
ADAM M. LUSTBERG*
CHRISTOPHER ABATEMARCO*
AARON M. BENDER
WILLIAM D. DEVEAU*
ILONA KORZHA*
CONOR F. MURPHY
MEGHAN B. BARRETT*
MELISSA ASTUDILLO*
AMY TODD*
NICOLE B. DORY*
PATRICK E. DURING
CHRISTIAN J. JENSEN
JOSEPH A. VILLANI, JR.
LEE B. WILSON

*ALSO ADMITTED IN NEW YORK
†ALSO ADMITTED IN PENNSYLVANIA
--ONLY ADMITTED IN NEW YORK

WRITER'S DIRECT DIAL

PLEASE REPLY TO ROSELAND, N.J.

December 19, 2007

_**Via Certified Mail and Regular Mail**_
WILLIAM PENN
Life Insurance Company of New York
100 Quentin Roosevelt Boulevard
P.O. Box 519
Garden City, NY 11530

Attention: Joseph Sullivan, President

Re:   **Kimbal Viscuso v. William Penn Life Insurance Company of New York**
       **Superior Court of New Jersey Docket No.: L-5721-07**
       **Your Policy No.: 0700014261**
       **Policyholder: Jon Fieldman, Deceased**
       **Our File No. 11141/075322**

Dear Mr. Sullivan:

I enclose herewith an original Complaint with respect to the above-referenced lawsuit, filed December 4, 2007 in the Superior Court of New Jersey, Law Division, Monmouth County. Also enclosed is a Summons which directs your attention to time within which a responsive pleading must be filed with the Superior Court of New Jersey. These documents are being forwarded to you simultaneously via Certified Mail/Return Receipt Requested and First Class Mail.

Please provide a copy of these documents to your corporate counsel so that the appropriate action, including, but not limited to, the filing of an Answer within thirty five (35) days of your receipt of these materials, can be taken on behalf of William Penn Life Insurance Company of New York.

1902393-01

WILLIAM PENN
Life Insurance Company of New York
Re: Kimbal Viscuso v. William Penn
  Life Insurance Company of New York

Page 2
December 19, 2007

If you have any questions with regard to this case, please feel free to contact me at (973) 535-0500.  Your immediate attention to this matter is greatly appreciated.

Very truly yours,

RICHARD D. CATENACCI

RDC:jd
Enclosures

1902393-01

Connell Foley LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500
Attorneys for Plaintiff, Kimbal Viscuso

| | |
|---|---|
| KIMBAL VISCUSO,<br><br>     Plaintiff,<br><br>vs.<br><br>WILLIAM PENN LIFE INSURANCE<br>COMPANY OF NEW YORK,<br><br>     Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br><br>DOCKET NO.: L-5721-07<br><br>Civil Action<br><br>***SUMMONS*** |

*From The State of New Jersey*
*To The Defendant(s) Named Above:*

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 for Law Division and $135.00 for Chancery Division and completed Case Information Statement) if you want the court to hear your defense.

     If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

/s/ Theodore J. Fetter
THEODORE J. FETTER, Acting Clerk

Dated:  December 19, 2007.

**Name of Defendant to be served:**
WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK

**Address for Service:**
Attention: Joseph Sullivan, President
100 Quentin Roosevelt Boulevard
P.O. Box 519
Garden City, NY 11530
(516) 794-3700

2

1902333-01
11141/075322

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court Civil Division, Direct Filing
1201 Bacharach Boulevard
Atlantic City, New Jersey 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section
Room 119
Justice Ctr, 10 Main Street
Hackensack, NJ -7601-7698
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
1st Floor, Courts Facility
49 Rancocas Road
Mount Holly, New Jersey 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth Street
Camden, New Jersey 08103
LAWYER REFERRAL
(609) 964-4520
LEGAL SERVICES
(609) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
9 N. Main St.
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts. P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(609) 452-5291
LEGAL SERVICES
(609) 451-0003/935-8024

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court Hall of Records,
Room 237
465 Dr. Martin Luther King Blvd.
Newark, New Jersey 07102-1681
LAWYER REFERRAL
(973) 533-1779
LEGAL SERVICES
(973) 624-5360

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Ofc.
Attn: Intake
Court House
1 North Broad St., P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(609) 848-4589
LEGAL SERVICES
(609) 848-5360
1902333-01
11141/075322

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Civil Records Dept.
Brennan Court House - 1st Floor
583 Newark Avenue
Jersey City, New Jersey 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(609) 788-6112
LEGAL SERVICES
(609) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad St., P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 989-8880
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Bldg
Third Floor
1 Kennedy Square, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
71 Monument Park
P.O. Box 1262
Court House, West Wing
Freehold, NJ 07728-1262
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 747-7400

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division - Hall of Records
P.O. Box 910
Morristown, New Jersey 07963-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Rm 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division - Courthouse
77 Hamilton Street
Paterson, New Jersey 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(609) 678-8363
LEGAL SERVICES
(609) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Floor, Courthouse
2 Broad Street
Elizabeth, New Jersey 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 345-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 475-2010

MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1269
FREEHOLD                    NJ 07728

COURT TELEPHONE NO. (732) 677-4240                    TRACK ASSIGNMENT NOTICE

COURT HOURS

                              DATE:     DECEMBER 04, 2007
                              RE:       VISCUSO V WILLIAM PENN LIFE INSURANCE CO OF NY
                              DOCKET:   MON L -005721 07

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 2.

DISCOVERY IS  300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS:  HON JAMIE S. PERRI

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     001
AT:  (732) 677-4256 EXT# 4256.

IF YOU BELIEVE THAT THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.

                              ATTENTION:
                                        ATT: RICHARD D. CATENACCI
                                        CONNELL FOLEY LLP
                                        85 LIVINGSTON AVENUE
                                        ROSELAND          NJ 07068-3702

JUNDOBE0

CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500
Attorneys for Plaintiff, Kimbal Viscuso



| KIMBAL VISCUSO, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: MONMOUTH COUNTY |
| Plaintiff, | |
| | DOCKET NO.: L-5721-07 |
| vs. | |
| | Civil Action |
| WILLIAM PENN LIFE INSURANCE | |
| COMPANY OF NEW YORK, | *COMPLAINT* |
| | |
| Defendant. | |

Plaintiff, KIMBAL VISCUSO by way of Complaint against Defendant, WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, says:

### FIRST COUNT

1. The Plaintiff, Kimbal Viscuso, resides at 300 Spring Street, Red Bank, New Jersey.

2. The Defendant, William Penn Life Insurance Company of New York (hereinafter "William Penn"), has corresponded with Plaintiff utilizing the address 100 Quentin Roosevelt Boulevard, P.O. Box 519, Garden City, New York 11530.

3. Defendant, William Penn has acknowledged that Plaintiff is the sole beneficiary of a $300,000.00 (Three Hundred Thousand Dollar) life insurance policy of the life of Jon Fieldman, Deceased, Policy Number 0700014261.

4. Defendant, William Penn has also acknowledged that it made a mistake in honoring a request to change beneficiaries to others under a Durable Power of Attorney because the Durable Power of Attorney expressly

excluded the right to change beneficiaries, i.e., "shall <u>not</u> include authority to change the name of any beneficiary in any retirement or insurance contract."

5.    Because of its "mistake," Defendant, William Penn has withheld payment of the policy proceeds from the Plaintiff, Kimbal Viscuso.

6.    Plaintiff, Kimbal Viscuso is entitled to immediate payment of the entire policy proceeds, plus interest, attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment of:

1.    The entire policy proceeds;

2.    Interest of the proceeds for the period of delayed payment;

3.    Attorney's fees and costs.


                              CONNELL FOLEY LLP
                              Attorneys for Plaintiff



                              RICHARD D. CATENACCI

DATED: December 3, 2007.

## CERTIFICATION

Pursuant to <u>R</u>. 4:5-1, plaintiff hereby certifies that to the best of plaintiff's knowledge, there are no other Court actions or Arbitration proceedings pending.

CONNELL FOLEY LLP
Attorneys for Plaintiff

RICHARD D. CATENACCI

DATED: December 3, 2007.

## Appendix XII-B

### CIVIL CASE INFORMATION STATEMENT
#### (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c), if
information above the black bar is not completed or if
attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
| --- |
| PAYMENT TYPE:    CK    CG    CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| 1. ATTORNEY/PRO SE NAME<br>RICHARD D. CATENACCI, ESQ. | 2. TELEPHONE NUMBER<br>(973) 535-0500 | 3. COUNTY OF VENUE<br>MONMOUTH COUNTY |
| --- | --- | --- |
| 4. FIRM NAME (If applicable)<br>CONNELL FOLEY LLP | | 5. DOCKET NUMBER (When available) |
| 6. OFFICE ADDRESS<br>85 Livingston Avenue<br>Roseland, New Jersey 07068 | | 7. DOCUMENT TYPE<br>COMPLAINT<br>8. JURY DEMAND   ☐ YES   ☑ NO |

| 9. NAME OF PARTY (e.g. John Doe, Plaintiff)<br>KIMBAL VISCUSO, Plaintiff | 10. CAPTION<br>Kimbal Viscuso v. William Penn Life Insurance Company of New York |
| --- | --- |
| 11. CASE TYPE NUMBER<br>(See reverse side for listing)<br>*599 - Contract* | 12. IS THIS A PROFESSIONAL MALPRACTICE CASE?   ☐ YES   ☑ NO<br>IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| 13. RELATED CASES PENDING?   ☐ YES   ☑ NO | 14. IF YES, LIST DOCKET NUMBERS |
| 15. DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?   ☐ YES   ☑ NO | 16. NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>☐ NONE   ☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| 17. A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?   ☐ YES   ☑ NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE<br>☐ FAMILIAL | ☐ FRIEND/NEIGHBOR<br>☐ BUSINESS | OTHER (explain _____ |
| --- | --- | --- | --- | --- |

18. B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?            ☐ YES   ☑ NO

19. USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| ♿ | 20. DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?   ☐ YES   ☑ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____ |
| --- | --- | --- |

21. WILL AN INTERPRETER BE NEEDED?            ☐ YES   ☑ NO            IF YES, FOR WHAT LANGUAGE: _____

22. ATTORNEY SIGNATURE

*RICHARD D. CATENACCI*

Revised effective 9/06

**SIDE 2**   CIVIL CASE INFORMATION STATEMENT
(CIS )
Use for initial pleadings (not motions) under Rule 4:5-1.

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

Track 1 - 150 days' discovery

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (Briefly describe nature of action) |

Track II -- 300 days' discovery

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603 | AUTO NEGLIGENCE - PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 699 | TORT - OTHER |

Track III -- 450 days' discovery

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

Track IV -- Active Case Management by Individual Judge / 450 days' discovery

| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

Mass Tort (Track IV)

| | | | |
|---|---|---|---|
| 240 | REDUX/PHEN-FEN (formerly "DIET DRUG") | 268 | MANUFACTURED GAS PLANT (MGP) |
| 241 | TOBACCO | 271 | ACCUTANE |
| 248 | CIBA GEIGY | 272 | BEXTRA/CELEBREX |
| 264 | PPA | 601 | ASBESTOS |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category:

☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

Revised effective 9/06

MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1269
FREEHOLD                    NJ 07728

COURT HOURS
COURT TELEPHONE NO. (732) 677-4240

                                TRACK ASSIGNMENT NOTICE

                    DATE:    DECEMBER 04, 2007
                    RE:      VISCUSO V WILLIAM PENN LIFE INSURANCE CO OF NY
                    DOCKET:  MON L -005721 07

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 2.

DISCOVERY IS  300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS: HON JAMIE S. PERRI

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT: (732) 677-4256 EXT 4256.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

                    ATTENTION:
                                ATT: RICHARD D. CATENACCI
                                CONNELL FOLEY LLP
                                85 LIVINGSTON AVENUE
                                ROSELAND
                                NJ 07068-3702

JUNDOE0

# BLEAKLEY PLATT

NEW YORK    CONNECTICUT

'BLEAKLEY PLATT & SCHMIDT, LLP

ROBERT D. MEADE
914.287.6112
rmeade@bpslaw.com

ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NEW YORK 10601
914.949.2700
Fax: 914.683.6956
BPSLAW.COM

January 15, 2008

**By UPS Next Day Air**

Richard D. Catenacci, Esq.
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068-3702

Re: *Kimbal Viscuso v. William Penn Life Insurance Company of New York*

Dear Mr. Catenacci:

We are the attorneys for the William Penn Life Insurance Company of New York. A copy of the summons and complaint filed by your client in the Superior Court has been sent to me for review. Prior to the time of William Penn's receipt of these papers, an action was commenced by William Penn against Ms. Viscuso and the other claimants in the Supreme Court, Nassau County. A copy is enclosed for your review. As a result of the issues discussed in the next paragraph, service of the summons and complaint has not been made on any defendant.

Section 1006(g) of the New York CPLR (copy enclosed) permits the payment of the proceeds of a debt into court to supply the basis for the court to determine the rights of a non-resident claimant to the fund. William Penn has submitted an application for an order pursuant to the statute. A copy is also enclosed. I was informed yesterday that the court has directed that any such application be made on notice to the defendants.

Before submitting such a motion, I would like to discuss the issues with you. The jurisdictional basis for your client's suit against William Penn is not apparent since William Penn does not do business in New Jersey. Most importantly from my perspective, there is no basis for jurisdiction over the other claimants in a New Jersey state or federal court.

If you have any concerns about litigating in a New York state court, a federal statutory interpleader action in New York, where jurisdiction over all claimants would exist, is an option.

Richard D. Catenacci, Esq.
January 15, 2008
Page 2

It appears from your letter that William Penn's answer in New Jersey is due on or about January 25. An adjournment of that time is requested pending our discussion.

Thank you.

Very truly yours,

ROBERT D. MEADE

RDM:sam
Encls.

PARTIES GENERALLY                                      § 1006

[§ 1005.  Repealed.  L.1975, c. 207, § 2, eff. Sept. 1, 1975]

§ 1006.  Interpleader

(a) Stakeholder; claimant; action of interpleader.  A stakehold-
er is a person who is or may be exposed to multiple liability as the
result of adverse claims.  A claimant is a person who has made or may
be expected to make such a claim.  A stakeholder may commence an
action of interpleader against two or more claimants.

(b) Defensive interpleader.  A defendant stakeholder may bring in
a claimant who is not a party by filing a summons and interpleader
complaint.  Service of process upon such a claimant shall be by
serving upon such claimant a summons and interpleader complaint and
all prior pleadings served in the action.

(c) Effect of pendency of another action against stakeholder.  If
a stakeholder seeks to bring in a claimant pursuant to subdivision (b)
and there is pending in a court of the state an action between the
claimant and the stakeholder based upon the same claim, the appropri-
ate court, on motion, upon such terms as may be just, may dismiss the
interpleader complaint and order consolidation or joint trial of the
actions, or may make the claimant a party and stay the pending action
until final disposition of the action in which interpleader is so granted,
and may make such further order as may be just.

(d) Abolition of former grounds for objection.  It is not ground
for objection to interpleader that the claims of the several claimants or
the titles on which their claims depend do not have a common origin or
are not identical but are adverse to and independent of one another, or
that the stakeholder avers that he is not liable in whole or in part to
any or all of the claimants.

(e) Issue of independent liability.  Where the issue of an indepen-
dent liability of the stakeholder to a claimant is raised by the pleadings
or upon motion, the court may dismiss the claim of the appropriate
claimant, order severance or separate trials, or require the issue to be
tried in the action.

(f) Discharge of stakeholder.  After the time for all parties to
plead has expired, the stakeholder may move for an order discharging
him from liability in whole or in part to any party.  The stakeholder
shall submit proof by affidavit or otherwise of the allegations in his
pleading.  The court may grant the motion and require payment into
court, delivery to a person designated by the court or retention to the
credit of the action, of the subject matter of the action to be disposed
of in accordance with further order or the judgment.  An order under
subdivision (g) shall not discharge the stakeholder from liability to any
claimant until an order granted under this subdivision is complied
with.  The court shall impose such terms relating to payment of
expenses, costs and disbursements as may be just and which may be
charged against the subject matter of the action.  If the court shall
determine that a party is entitled to interest, in the absence of an

89

§ 1006    CIVIL PRACTICE LAW AND RULES

agreement by the stakeholder as to the rate of interest, he shall be liable to such party for interest to the date of discharge at a rate no greater than the lowest discount rate of the Federal Reserve Bank of New York for discounts for, and advances to, member banks in effect from time to time during the period for which, as found by the court, interest should be paid.

(g) **Deposit of money as basis for jurisdiction.** Where a stakeholder is otherwise entitled to proceed under this section for the determination of a right to, interest in or lien upon a sum of money, whether or not liquidated in amount, payable in the state pursuant to a contract or claimed as damages for unlawful retention of specific real or personal property in the state, he may move, either before or after an action has been commenced against him, for an order permitting him to pay the sum of money or part of it into court or to a designated person or to retain it to the credit of the action. Upon compliance with a court order permitting such deposit or retention, the sum of money shall be deemed specific property within the state within the meaning of paragraph two of section 314.

(L.1962, c. 308; amended L.1994, c. 563, § 2.)

### Cross References

Action to recover deposits in,
  Bank or trust company, see Banking Law § 134.
  Foreign banking corporation, see Banking Law § 202–h.
  Private bank, see Banking Law § 171.
  Savings bank, see Banking Law § 239.
Answer to third-party complaint and interpleader complaint,
  District court actions, see UDCA § 907.
  New York City Civil Court actions, see NY City Civ. Ct. Act § 907.
Dividends, actions against superintendent of banks to recover, see Banking Law
    § 629.
Jurisdiction of action of interpleader and defensive interpleader,
  District court, see UDCA § 205.
  New York City Civil Court, see NY City Civ. Ct. Act § 205.
Service of summons upon a claimant whom a defendant stakeholder seeks to bring
    into action,
  District court, outside county, see UDCA § 408.
  New York City Civil Court, outside city, see NY City Civ. Ct. Act § 408.
Special proceedings, interpleader in, see CPLR 401.

### United States Code Annotated

Interpleader,
  Generally, see Fed.Rules Civ.Proc. Rule 22, 28 USCA.
  Process and procedure, see 28 USCA § 2361.

### § 1007. When third-party practice allowed

After the service of his answer, a defendant may proceed against a person not a party who is or may be liable to that defendant for all or part of the plaintiff's claim against that defendant, by filing pursuant to section three hundred four of this chapter a third-party summons and complaint with the clerk of the court in the county in which the

90

RECEIVED
1-28-08

# CONNELL FOLEY LLP
## ATTORNEYS AT LAW

85 LIVINGSTON AVENUE
ROSELAND, N.J. 07068-3702
(973) 535-0500
FAX: (973) 535-9217

JOHN A. PINDAR (1969)
GEORGE W. CONNELL (2005)
ADRIAN M. FOLEY, JR.
GEORGE J. KENNY*
KENNETH F. KUNZMAN
SAMUEL D. LORD
RICHARD D. CATENACCI
RICHARD J. BADOLATO*
PETER D. MANAHAN
JOHN B. MURRAY
MARK L. FLEDER
KEVIN J. COAKLEY
WILLIAM H. GRAHAM†
THOMAS S. COSMA
KATHLEEN S. MURPHY
PATRICK J. MCAULEY
PETER J. PIZZI*†
KEVIN R. GARDNER
ROBERT E. RYAN
MICHAEL X. MCBRIDE*
JEFFREY W. MORYAN
JOHN K. BENNETT
PETER J. SMITH*
BRIAN G. STELLER
PHILIP F. MCGOVERN, JR.
KAREN PAINTER RANDALL
LIZA M. WALSH
JOHN P. LACEY
TIMOTHY E. CORRISTON*
ERNEST W. SCHOELLKOPFF†
PATRICK J. HUGHES†*
JAMES C. MCCANN*

JOHN D. CROMIE
ANGELA A. IUSO*
GLENN T. DYER
CLARENCE SMITH, JR.*
WILLIAM T. MCGLOIN*
BRENDAN JUDGE
DAREN S. MCNALLY*
STEPHEN V. FALANGA*
JEFFREY L. O'HARA
TRICIA O'REILLY*
ANTHONY F. VITIELLO*
MARC D. HAEFNER
JONATHAN P. MCHENRY
JAMES P. RHATICAN*†
MATTHEW W. BAUER*
JOSEPH C. DEBLASIO
BRAD D. SHALIT*

COUNSEL
JOHN W. BISSELL
JOHN B. LA VECCHIA
VIRGINIA M. EDWARDS*
FRANCIS E. SCHILLER*
EUGENE P. SQUEO*
BERNARD M. HARTNETT, JR.*
NOEL D. HUMPHREYS*
ANTHONY ROMANO II*
CHARLES J. HARRINGTON III†
STEVE BARNETT*
KARIN L. SPALDING*
JODI ANNE HUDSON*
CORNELIUS J. O'REILLY*
RICHARD A. JAGEN
NANCY A. SKIDMORE*
THOMAS M. SCUDERI*

ELIZABETH M. TRANTINA*
M. TREVOR LYONS*
CRAIG S. DEMARESKI*
ELIZABETH W. EATON
JOSEPH M. MURPHY
W. NEVINS MCCANN*
JASON E. MARX*
THOMAS J. O'LEARY*
MITCHELL W. TARASCHI
MICHAEL A. SHADIACK
OWEN C. MCCARTHY
PATRICIA A. LEE†
DOUGLAS J. SHORT*
ANTONIO CELII*
JAMES M. MERENDINO
MICHELE T. TANTALLA*
AGNES ANTONIAN*
BRYAN P. COUCH*
GREGORY E. PETERSON
HECTOR D. RUIZ*
NEIL V. MODY*
ROBERT A. VERDIBELLO*
MICHAEL J. ACKERMAN*
MELISSA A. ZAWADZKI*
MEGHAN C. GOODWIN*
MATTHEW S. SCHULTZ*
JENNIFER C. CRITCHLEY*
PATRICK S. BRANNIGAN*

MATTHEW I. GENNARO
DANIELA R. D'AMICO*
DANIA M. BILLINGS*
RONAI R. CHOKSHI*
CHRISTINE I. GANNON*
JOSE VILARINO
PHILIP W. ALLOGRAMENTO, III*
CATHERINE G. BRYAN†
JAMES C. HAYNIE*
LAURIB B. KACHONICK*
MEGAN M. ROBERTS*
ANDREW C. SAYLES*
SARAH B. BLUMBERG†
STEPHEN D. KESSLER
ADAM M. LUSTBERG*
CHRISTOPHER ABATEMARCO*
AARON M. BENDER
WILLIAM D. DEVEAU*
ILONA KORZHA*
CONOR F. MURPHY
MEGHAN B. BARRETT*
MELISSA ASTUDILLO*
AMY TODD*
NICOLE B. DORY*
PATRICK E. DURING
CHRISTIAN J. JENSEN
JOSEPH A. VILLANI, JR.
LEE B. WILSON

*ALSO ADMITTED IN NEW YORK
†ALSO ADMITTED IN PENNSYLVANIA
–ONLY ADMITTED IN NEW YORK

JERSEY CITY OFFICE
HARBORSIDE FINANCIAL CENTER
2510 PLAZA FIVE
JERSEY CITY, N.J. 07311-4029
(201) 521-1000
FAX: (201) 521-0100

NEW YORK OFFICE
888 SEVENTH AVENUE
NEW YORK, N.Y. 10106
(212) 262-2390
FAX: (212) 262-0050

PHILADELPHIA OFFICE
1500 MARKET STREET
PHILADELPHIA, PA 19102
(215) 246-3403
FAX: (215) 665-5727

WRITER'S DIRECT DIAL

PLEASE REPLY TO ROSELAND, N.J.

January 22, 2008

Robert D. Meade, Esq.
Bleakley Platt & Schmidt, LLP
One North Lexington Avenue
White Plains, NY 10601

Re:     **Kimbal Viscuso v. William Penn Life Insurance Company of New York**
         **Our Client/Matter No.: 11141/075322**

Dear Mr. Meade:

As you are aware, this firm represents the interests of the Plaintiff, Kimbal Viscuso, in the above lawsuit. The Complaint in this matter was filed in the Superior Court of New Jersey, Law Division, Monmouth County, on December 4, 2007, and was served upon William Penn Life Insurance Company of New York by Certified Mail Return Receipt Requested and First Class mail simultaneously on or about December 26, 2007 (see copy of certified green card attached hereto as Exhibit A). Therefore, Defendant's Answer is due no later than January 30, 2008.

If an Answer on behalf of Defendant William Penn Life Insurance Company of New York is not filed within the time prescribed by the New Jersey Court Rules, plaintiffs will have no alternative but to file a Request to Enter Default and Certification.

Because payment of the proceeds of your policy to the only beneficiary under the policy is long overdue, which failure of payment has brought serous economic consequences on my client, we are willing to discuss settlement of this matter directly with you but are not willing to discuss or to consent to any requests for an adjournment of the New Jersey action.

1910493-02

Robert D. Meade, Esq.
January 22, 2008
Page 2

     We have not sued any parties other than William Penn Life Insurance Company of New York and have not filed an interpleader action, nor is it our intention to voluntarily participate in an interpleader action in any Court. We believe the New Jersey Courts have jurisdiction over William Penn pursuant to Rule 4:4-4(b)(1) (Longarm Statute), which is consistent with due process requirements. We have advised Barry Saretsky, Esq., counsel for Charles M. Birns, Beth S. Martin-Birns, and Michael Birns that we do not intend to join them in the New Jersey action.

     Please be guided accordingly.

                 Very truly yours,

                 RICHARD D. CATENACCI

RDC:jd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE WILLIAM PENN LIFE INSURANCE COMPANY
OF NEW YORK,

                                        Plaintiff,

                  - against -

KIMBAL VISCUSO, CHARLES M. BIRNS and BETH
S. MARTIN-BIRNS,

                                        Defendants.
-------------------------------------------------------------------X

**ANSWER TO
PLAINTIFF'S
COMPLAINT FOR
INTERPLEADER**

08 CIV 1141 (WCC)

Defendants CHARLES M. BIRNS and BETH S. MARTIN-BIRNS, by their attorneys, SARETSKY KATZ DRANOFF & GLASS, L.L.P., answering plaintiff's Complaint For Interpleader, hereby respond as follows:

1.    Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "1", and refer all questions of law to the Court at the time of trial.

2.    Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "2", and refer all questions of law to the Court at the time of trial.

3.    Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "3".

4.    Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "4".

5.    Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "5".

6.    Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "6", and refer all questions of law to the Court at the time of trial.

7.    Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "7", and refer all questions of law to the Court at the time of trial.

8.    Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "8", and refer all questions of law to the Court at the time of trial.

9.    Deny the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "9" except to admit that in 1995 plaintiff WILLIAM PENN issued life insurance policy number 0700014261 ("the Policy") insuring the life of Jon Fieldman ("Fieldman").

10.    Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "10".

11.    Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "11".

12.    Deny the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "12" and respectfully refer to the Policy and its Endorsements for their terms and content.

13.    Deny the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "13" except to admit that Michael Birns ("Birns") completed a "Beneficiary Change Form" and forwarded said "Beneficiary Change Form" to plaintiff

along with the Durable Power of Attorney appointing Birns as the Attorney-in-Fact for Fieldman.

14.   Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "14".

15.   Deny the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "15" and respectfully refer to the November 13, 2006 letter for its terms and content, except to admit that Birns received a letter and endorsement dated November 6, 2006 ("the November 6th Endorsement") and a letter dated November 13, 2006 ("the November 13th letter") confirming that the beneficiaries of the Policy had been changed as requested in the "Beneficiary Change Form" signed by Birns.

16.   Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "16".

17.   Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "17".

18.   Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "18".

19.   Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "19".

20.   Admit the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "20".

21.   Deny the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "21".

3

22.     Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "22" except to admit that the whole amount of the proceeds is claimed by these answering defendants.

23.     Deny knowledge or information sufficient to form a belief as to the allegations of the paragraph of plaintiff's Complaint For Interpleader designated "23".

### AS AND FOR A FIRST CLAIM FOR INTERPLEADER FUNDS AND A FIRST COUNTERCLAIM AGAINST THE WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK

24.     These answering defendants repeat, reiterate and reallege each and every foregoing paragraph of this Answer with the same force and effect as if set forth fully herein.

25.     Defendants CHARLES M. BIRNS and BETH S. MARTIN-BIRNS are the named beneficiaries of the Policy.

26.     Proof of Fieldman's death has been furnished to plaintiff.

27.     Due demand has been made by these answering defendants for payment of the proceeds of the Policy.

28.     Plaintiff has failed to issue the proceeds of the Policy to these answering defendants.

29.     CHARLES M. BIRNS and BETH S. MARTIN-BIRNS, as the named beneficiaries of the Policy, are entitled to the interpleader funds.

4

Case 7:08-cv-01141-WCC    Document 6    Filed 04/07/2008    Page 5 of 12

30.    Based on plaintiff's issuance of the endorsement naming CHARLES M. BIRNS and BETH S. MARTIN-BIRNS as the Policy beneficiaries, should the interpleader funds be awarded to co-defendant KIMBAL VISCUSO, plaintiff will be liable to these answering defendants in the amount of $350,000.00 plus interest from the date of Fieldman's death.

## AS AND FOR A SECOND CLAIM FOR INTERPLEADER FUNDS AND A SECOND COUNTERCLAIM AGAINST THE WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK

31.    These answering defendants repeat, reiterate and reallege each and every foregoing paragraph of this Answer with the same force and effect as if set forth fully herein.

32.    On or about January 31, 2005, Fieldman signed a "Durable Power of Attorney" designating Birns as his Attorney-in-Fact and Agent.

33.    On or about October 13, 2006, Birns, acting on behalf of Fieldman, completed a "Beneficiary Change Form" changing the beneficiary of the Policy to defendants CHARLES M. BIRNS and BETH S. MARTIN-BIRNS.

34.    The "Beneficiary Change Form", along with a copy of the "Durable Power of Attorney", was delivered to plaintiff.

35.    In response to the "Beneficiary Change Form" and the "Durable Power of Attorney" that was annexed, plaintiff, by the November 6th Endorsement, acknowledged the change of beneficiary as requested and provided an endorsement reflecting CHARLES M. BIRNS and BETH BIRNS as the beneficiaries of the Policy.

5

36.    Plaintiff's issuance of the November 6, 2006 Endorsement conveyed, and was intended to convey, the impression that the change in beneficiary requested by Birns was valid and had been accepted by plaintiff.

37.    Plaintiff intended that the issuance of the November 6th Endorsement would be relied upon by Birns.

38.    In the November 13th letter plaintiff stated that:

"Pursuant to your instructions your recent request to change your beneficiary(s) has been completed.  The new designation is as follows:

**Primary Beneficiary:**    Charles Bians [sic]
Beth Birns

**Contingent Beneficiary:**  Michael Birns".

39.    Plaintiff's issuance of the November 13th letter conveyed, and was intended to convey, the impression that the change in beneficiary requested by Birns was valid and had been accepted by plaintiff.

40.    Plaintiff intended that the issuance of the November 13th letter would be relied on by Birns.

41.    In reliance upon plaintiff's conduct, including its representations that the beneficiaries were changed as requested, Birns paid plaintiff the annual Policy premium of $4,886.00 by check dated November 8, 2006.

42.    Plaintiff accepted the Policy premium paid by Birns.

43.    Plaintiff's acceptance of the Policy premium paid by Birns on behalf of Fieldman conveyed, and was intended to convey, the impression that the change in beneficiary requested by Birns was valid and had been accepted by plaintiff.

6

44.    Plaintiff was aware of the terms of the "Durable Power of Attorney" at the time that it issued the November 6th Endorsement, issued the November 13th letter and accepted Birns's Policy premium payment.

45.    Prior to Fieldman's death (April 4, 2007) plaintiff never notified Birns that plaintiff considered the "Beneficiary Change Form" to be invalid.

46.    Birns believed that the change of beneficiary was valid and relied on the terms of the November 6th Endorsement, the November 13th letter and plaintiff's acceptance and retention of the Policy premium.

47.    Following Fieldman's death, plaintiff wrote a letter dated April 18, 2007, stating, "The Durable Power of Attorney does not include authority to change the name of any beneficiary in any retirement asset or insurance contract. Therefore, Kimbal Viscuso is the current beneficiary of record."

48.    Had plaintiff advised Birns, prior to Fieldman's death, that there were any alleged irregularities associated with the "Beneficiary Change Form", Birns would have taken the appropriate steps to correct such alleged irregularities and ensure that these answering defendants were named as the beneficiaries of the Policy.

49.    Birns detrimentally relied on plaintiff's silence, together with plaintiff's issuance of the November 6th Endorsement, the November 13th letter and plaintiff's acceptance and retention of the Policy premium paid by Birns, as evidence that the "Beneficiary Change Form" had been accepted and was valid.

50.    As a result of the aforementioned detrimental reliance, between the time of the issuance of the November 6th Endorsement and the November 13th letter and the acceptance and retention of the Policy premiums paid by Birns, and the time of

Fieldman's death, Birns took no further action with regard to the change of beneficiaries on the Policy.

51.    By issuing the November 6th Endorsement and the November 13th letter, and accepting and retaining Birns's payment of the Policy premium, despite being aware of the terms of the "Durable Power of Attorney", plaintiff voluntarily, knowingly and intentionally waived the right to rescind its acceptance of the "Beneficiary Change Form".

52.    By issuing the November 6th Endorsement and November 13th letter and accepting and retaining Birns's payment of the Policy premium, despite being aware of the terms of the "Durable Power of Attorney", plaintiff is estopped from rescinding its acceptance of the "Beneficiary Change Form".

53.    Based on the foregoing, plaintiff is equitably estopped from disputing the validity of the "Beneficiary Change Form".

54.    Based on the foregoing, plaintiff is equitably estopped from disputing Birns's authority to change Fieldman's beneficiaries.

55.    By virtue of the above-referenced waiver and estoppel, these answering defendants are entitled to the proceeds of the Policy.

56.    By virtue of the above-referenced waiver and estoppel, these answering defendants are entitled to the interpleader funds.

57.    Due demand has been made by these answering defendants for payment of the proceeds of the Policy.

58.    Plaintiff has failed to issue the proceeds of the Policy to these answering defendants.

59.    CHARLES M. BIRNS and BETH S. MARTIN-BIRNS are entitled to the interpleader funds.

60.    Based on plaintiff's waiver and estoppel as set forth above, should the interpleader funds be awarded to co-defendant KIMBAL VISCUSO, plaintiff will be liable to these answering defendants in the amount of $350,000.00 plus interest from the date of Fieldman's death.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

61.    Based on the doctrine of waiver plaintiff is precluded from paying to defendant KIMBAL VISCUSO, and defendant KIMBAL VISCUSO is precluded from claiming, the interpleader funds.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

62.    Based on the doctrine of laches plaintiff is precluded from paying to defendant KIMBAL VISCUSO, and defendant KIMBAL VISCUSO is precluded from claiming, the interpleader funds.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

63.    Based on the doctrine of estoppel plaintiff is precluded from paying to defendant KIMBAL VISCUSO, and defendant KIMBAL VISCUSO is precluded from claiming, the interpleader funds.

9

Case 7:08-cv-01141-WCC    Document 6    Filed 04/07/2008    Page 10 of 12

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

64.    Based on the doctrine of collateral estoppel plaintiff is precluded from paying to defendant KIMBAL VISCUSO, and defendant KIMBAL VISCUSO is precluded from claiming, the interpleader funds.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

65.    Based on the doctrine of res judicata plaintiff is precluded from paying to defendant KIMBAL VISCUSO, and defendant KIMBAL VISCUSO is precluded from claiming, the interpleader funds.

WHEREFORE, defendants CHARLES M. BIRNS and BETH S. MARTIN-BIRNS demand judgment:

(i)    declaring that these answering defendants are entitled to the proceeds of the Policy and awarding the interpleader funds to these answering defendants or; alternatively

(ii)    awarding these answering defendants judgment on their counterclaims in the amount of $350,000 plus interest from the date of Fieldman's death; and

10

(iii) awarding these answering defendants the costs, disbursements, expenses and attorneys' fees incurred in this matter together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
        April 7, 2008

Yours, etc.,

SARETSKY KATZ DRANOFF & GLASS, L.L.P.
Attorneys for Defendants
CHARLES M. BIRNS and
BETH S. MARTIN-BIRNS
475 Park Avenue South, 26th Floor
New York, New York 10016
(212) 973-9797

By: _____
                    ALAN G. KATZ

TO:   BLEAKLEY PLATT & SCHMIDT, LLP
      Attorneys for Plaintiff
      One North Lexington Avenue
      P.O. Box 5056
      White Plains, New York 10602-5056
      (914) 949-2700

      KIMBAL VISCUSO
      Defendant
      300 Spring Street
      Red Bank, New Jersey 07701

      **_COURTESY COPY TO:_**
      CONNELL FOLEY LLP
      85 Livingston Avenue
      Roseland, New Jersey 07068-3702
      (973) 535-0500

11

Case 7:08-cv-01141-WCC    Document 6    Filed 04/07/2008    Page 12 of 12

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    } SS.:
COUNTY OF NEW YORK }

Ellie Brinson being duly sworn deposes and says that deponent is not a party to the

action, is over 18 years of age and resides in Hudson County, New Jersey; that on

April 7, 2008 deponent, on behalf of defendants CHARLES M. BIRNS and BETH S.

MARTIN-BIRNS, served one copy of the within: **ANSWER TO PLAINTIFF'S**

**COMPLAINT FOR INTERPLEADER,** upon:

Bleakley Platt & Schmidt, LLP
Attorneys for Plaintiff
THE WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
One North Lexington Avenue
P.O. Box 5056
White Plains, New York  10602-5056

KIMBAL VISCUSO
Defendant
300 Spring Street
Red Bank, New Jersey  07701

(courtesy copy to:)   Connell Foley LLP
85 Livingston Avenue
Roseland, New Jersey  07068-3702

at the addresses designated for that purpose depositing true copies of same enclosed

in postpaid properly addressed wrappers in an official depository under the exclusive

care of the United States Post Office in the State of New York.

_____
                                                            Ellie Brinson

Sworn to before me this April 7, 2008

*Wanda Croskey*
Notary Public

WANDA CROSKEY
Notary Public, State of New York
No. 01CR6047125
Qualified in Bronx County
Commission Expires August 28, 20 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

----------------------------------------------------------------X

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

                        Plaintiff,

   -against-

KIMBAL VISCUSO, CHARLES M. BIRNS,
BETH S. MARTIN-BIRNS, and MICHAEL
BIRNS,

                  Defendants.

----------------------------------------------------------------X

Index No.: 022866 / 07
Date Purchased: 12 / 21 / 07

Plaintiff designates Nassau
County as the place of trial

The basis of the venue is the location
of principal office of Plaintiff

**SUMMONS**

Plaintiff resides at:
100 Quentin Roosevelt Blvd.
Garden City, New York 11530

County of Nassau

*To the above named Defendants*

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a

copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive

of the day of service (or within 30 days after the service is complete if this summons is not

personally delivered to you within the State of New York); and in case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: White Plains, New York
       December 20, 2007

                    BLEAKLEY PLATT & SCHMIDT, LLP

                    BY: _____
                       ROBERT D. MEADE
                     *Attorneys for Plaintiff*
                    ONE NORTH LEXINGTON AVENUE
                    P.O. BOX 5056
                    WHITE PLAINS, NY 10602-5056
                    (914) 949-2700

Defendants' Addresses:

Kimbal Viscuso
300 Spring Street
Red Bank, NJ 07701

Charles M. Birns
17 Hadden Road
Scarsdale, NY 10583

Beth S. Martin-Birns
17 Hadden Road
Scarsdale, NY 10583

Michael Birns
17 Hadden Road
Scarsdale, NY 10583

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------X

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,                                    **COMPLAINT**

                Plaintiff,                      Index No.:

   -against-

KIMBAL VISCUSO, CHARLES M. BIRNS,
BETH S. MARTIN-BIRNS, and MICHAEL
BIRNS,

               Defendants.

-----------------------------------------------------------------X

Plaintiff, The William Penn Life Insurance Company of New York ("William Penn"),

complaining of defendants, by its attorneys Bleakley Platt & Schmidt, LLP, alleges:

### JURISDICTION AND VENUE

1.    Plaintiff is a corporation organized and existing pursuant to the laws of the State of

New York having its office and principal place of business in the County of Nassau, State of New

York.

2.    At all times hereinafter mentioned, plaintiff was authorized by the New York State

Insurance Department to engage in the business of the issuance of policies of life insurance.

3.    Upon information and belief, defendant Kimbal Viscuso is a resident of the State of

New Jersey.

4.    Jurisdiction over defendant Kimbal Viscuso in this action is claimed based upon the

deposit by plaintiff of the proceeds of the amount in dispute between the parties with the Court,

pursuant to the order of this Court, in accordance with § 1006(g) of the CPLR.

5.    Upon information and belief, defendant Charles M. Birns is a resident of the County

of Westchester, State of New York.

6.    Upon information and belief, defendant Beth S. Martin-Birns is a resident of the County of Westchester, State of New York.

7.    Upon information and belief, defendant Michael Birns is a resident of the County of Westchester, State of New York.

8.    On or about November 8, 1995, William Penn issued life insurance policy 070014261 insuring the life of Jon Fieldman.

9.    The policy was in the face amount of $350,000.

10.    The owner of the policy was Jon Fieldman.

11.    The designated beneficiary of the policy was Kimbal Viscuso.

12.    On or about November 13, 2006, William Penn received a "Beneficiary Change Form" signed by Michael Birns, acting pursuant to a "Durable Power of Attorney" executed by Jon Fieldman dated January 31, 2005.

13.    The Primary Beneficiaries indicated on the form were Charles M. Birns and Beth S. Martin-Birns.  The Contingent Beneficiary was Michael Birns.

14.    On or about November 13, 2006, William Penn sent a written notification of the purported change of beneficiary to Jon Fieldman.

15.    Upon information and belief, Jon Fieldman died on April 4, 2007.

16.    Subsequent to the death of Jon Fieldman, Michael Birns notified William Penn that the proceeds of the subject policy were claimed on behalf of Charles Birns and Beth S. Martin-Birns.

17.    Kimbal Viscuso has notified William Penn that she is claiming the proceeds of the subject policy as the "named beneficiary."

18.    Under the terms of the policy, there is now due the sum of $350,000 with interest from April 4, 2007 at the rate determined by New York Insurance Law § 3214.

19.    There is no dispute as to the amount payable under the policy.

2

20.    William Penn is indifferent and disinterested as to which of the defendants is entitled to the proceeds of the policy or to the division of the proceeds between them. William Penn is unable to determine to whom the amount due under the policy is payable and is unable to safely determine which of the defendants is entitled to that amount. As a result of these adverse claims, William Penn is or may be exposed to double liability.

21.    The whole amount of the proceeds or a part thereof is claimed adversely by the defendants, without any collusion on the part of William Penn.

WHEREFORE, plaintiff demands judgment:

(1)    Requiring defendants to interplead together concerning their claims to the proceeds;

(2)    Permitting William Penn to pay the proceeds into court and upon such payment into court, discharging William Penn from any further liability to any other party to this action; and

(3)    For such other and further relief as the Court deems just and proper, together with expenses, costs and disbursements of this action payable from the proceeds of the subject policy.

Dated: White Plains, New York
           December 21, 2007

BLEAKLEY PLATT & SCHMIDT, LLP

BY: _____
           ROBERT D. MEADE
           *Attorneys for Plaintiff*
           ONE NORTH LEXINGTON AVENUE
           P.O. BOX 5056
           WHITE PLAINS, NY 10602-5056
           (914) 949-2700

3

**MEMO**
**SUPREME COURT**
**NASSAU COUNTY**

Dated <u>1-10-08</u> INDEX # <u>22866/07</u>

<u>William Penn Life Ins.</u> vs <u>Viscuso</u>

Your papers are defective for the following reason(s):

application must be made on notice to all.

Settle order on notice for future date.

**PLEASE RETURN THIS MEMO WHEN RESUBMITTING YOUR PAPERS TO:**

SUPREME COURT STATE OF NEW YORK, COUNTY OF NASSAU
100 SUPREME COURT DRIVE
MINEOLA, NY 11501
**ATTN: CLERK'S OFFICE - ROOM 152**
(516) 571-3252

At an IAS TERM of the Supreme
Court of the State of New York, County
of Nassau, held at the Courthouse, 100
Supreme Court Drive, Mineola, New
York, on          , 2008

P R E S E N T: HON. JOSEPH P. SPINOLA    , Justice

----------------------------------------------------------------X

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

              Plaintiff,

   -against-

KIMBAL VISCUSO, CHARLES M. BIRNS,
BETH S. MARTIN-BIRNS, and MICHAEL
BIRNS,

              Defendants.

----------------------------------------------------------------X

**ORDER DIRECTING DEPOSIT
OF MONEY TO CREATE
JURISDICTION**

Index No.: 022866/07

     An action has been commenced by The William Penn Life Insurance Company of New York,

the plaintiff against Kimbal Viscuso, Charles M. Birns, Beth S. Martin-Birns, and Michael Birns,

defendants.  It appears that this action is brought for the determination of a right to a sum of money

liquidated in amount payable in the State of New York under an express contract.  A motion has

been made to this Court by The William Penn Life Insurance Company of New York, the plaintiff,

for an order permitting it to pay into court or to a person designated by the Court, the sum of money

to be disposed of in accordance with further order or final judgment.  In support of the motion, The

William Penn Life Insurance Company of New York has submitted the affidavit of Robert D.

Meade, sworn to December 21, 2007 and the affidavit of Victor Fonseca, sworn to December 21,

2007, with attached exhibits,

Upon the foregoing papers, and on motion of Bleakley Platt & Schmidt, LLP, attorneys for

plaintiff, it is ordered that:

1.  The motion is granted.

2.  Plaintiff is hereby authorized and permitted to pay the sum of $

into this court by payment thereof to the County Treasurer of the County of Nassau.

3.  Upon compliance with this Order by the plaintiff, the sum of money shall be deemed

to be property within the State for the purposes of CPLR 1006(g), 314 and 315.

E N T E R :

HON. JOSEPH P. SPINOLA  J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,                          **NOTICE OF DISCONTINUANCE**

                              Plaintiff,       Index No.:  22866/07

        -against-

KIMBAL VISCUSO, CHARLES M. BIRNS,
BETH S. MARTIN-BIRNS, and MICHAEL            **PAID**
BIRNS,

                              Defendants.      FEB 0 8 2008

-------------------------------------------------------------------X         NASSAU COUNTY
                                                                              COUNTY

        PLEASE TAKE NOTICE that plaintiff hereby voluntarily discontinues this action without

prejudice pursuant to CPLR 3217.  The action was commenced by filing the Summons and

Complaint with the Nassau County Clerk on December 21, 2007.  Service has not been made on any

defendant.

Dated: White Plains, New York
        February 4, 2008

                              BLEAKLEY PLATT & SCHMIDT, LLP

                              BY: _Robert D. Meade_____
                                   ROBERT D. MEADE
                                   *Attorneys for Plaintiff*
                                   ONE NORTH LEXINGTON AVENUE
                                   P.O. BOX 5056
                                   WHITE PLAINS, NY 10602-5056
                                   (914) 949-2700

TO:    NASSAU COUNTY CLERK
       240 OLD COUNTRY ROAD
       MINEOLA, NY 11501

       KIMBAL VISCUSO
       300 SPRING STREET
       RED BANK, NJ 07701

CHARLES M. BIRNS
17 HADDEN ROAD
SCARSDALE, NY 10583

BETH S. MARTIN-BIRNS
17 HADDEN ROAD
SCARSDALE, NY 10583

MICHAEL BIRNS
17 HADDEN ROAD
SCARSDALE, NY 10583

STATE OF NEW YORK        )
                         } SS:    <u>AFFIDAVIT</u> <u>OF</u> <u>SERVICE</u>
COUNTY OF WESTCHESTER)

**STEPHANIE MONDELLO**, a being duly sworn deposes and says:

I am not a party to this action, and am over the age of 18 years and reside in Mahopac, New York.

On February 4, 2008, I served a true copy of the annexed **NOTICE OF DISCONTINUANCE**, in the following manner:

☐    by transmitting the same to the attorney by electronic means to the telephone number or other station or other limitation designated by the attorney for that purpose. In doing so I received a signal from the equipment of the attorney indicating that the transmission was received:

☐    by delivering the same personally to the person(s) and at the address indicated below a true copy of the annexed upon:

☐    by depositing the same in a sealed envelope with an overnight, next day delivery service in a wrapper properly addressed. Said delivery was made prior to the latest time designated by said service. The address and delivery service are designated below:

☒    by mailing a true copy thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State addressed to each of the following persons at the last known address set forth after each name:

KIMBAL VISCUSO                    CHARLES M. BIRNS
300 SPRING STREET                 17 HADDEN ROAD
RED BANK, NJ 07701                SCARSDALE, NY 10583

BETH S. MARTIN-BIRNS              MICHAEL BIRNS
17 HADDEN ROAD                    17 HADDEN ROAD
SCARSDALE, NY 10583               SCARSDALE, NY 10583

_____
STEPHANIE MONDELLO

Sworn to before me this
4th of February, 2008

_____
NOTARY PUBLIC

SUSAN LAU
Notary Public, State of New York
No. 01LA6067358
Qualified in Westchester County
Commission Expires Dec. 10, 2009