### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Plaintiff,<br><br>-against-<br><br>KIMBAL VISCUSO,  CHARLES M. BIRNS and BETH S. MARTIN-BIRNS<br><br>Defendants. | Civil Action No. 08 Civ. 1141 (WCC)<br><br><br>NOTICE OF MOTION |

**PLEASE TAKE NOTICE** that upon the accompany Brief and Certification of Counsel with exhibits, dated April 8, 2008, interpleader-defendant Kimbal Viscuso will move before the Honorable William C. Connor, United States District Judge, 300 Quarropas St., Room 630, White Plains, NY 10601, for the entry of an Order in the form submitted herewith, dismissing this action pursuant to Fed. R. Civ. P. 12(b)(1) or (6), or in the alternative dismissing the matter under the Court's inherent discretionary right to abstain from hearing an action in equity, including interpleader, or in the alternative for summary judgment awarding defendant Viscuso the full policy proceeds;

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Rules of this Court, opposing papers, if any, are required to be filed as directed by the Court at the pre-motion confernece; and

**PLEASE TAKE FURTHER NOTICE** that defendant requests oral argument on its motion in the event that opposition papers are filed.

CONNELL FOLEY LLP
Attorneys for Interpleader-Defendant
Kimbal Viscuso

By:    s/ M. Trevor Lyons
M. TREVOR LYONS

888 7th Avenue, Suite 3401
New York, NY 10106
(212) 262-2390

DATED: April 24, 2008

ON NOTICE TO:       Robert D. Meade
Bleakley Platt & Schmidt, LLP
One North Lexington Avenue
P.O. Box 5056
White Plains, NY 10602-5056

Allan G. Katz, Esq.
Saretsky Katz Dranoff & Glass, LLP
475 Park Avenue, South, 26th Floor
New York, NY 10016

1935666-01

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

          Plaintiff,

  -against-

KIMBAL VISCUSO, CHARLES M. BIRNS
and BETH S. MARTIN-BIRNS

          Defendants.

**Civil Action No. 08 Civ. 1141 (WCC)**

---

## DEFENDANT KIMBAL VISCUSO'S MOTION TO DISMISS THE WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK'S ACTION IN INTERPLEADER

---

Connell Foley LLP
Attorneys for Defendant Kimbal Viscuso
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

*Of Counsel:*
    M. Trevor Lyons

*On the Brief:*

    M. Trevor Lyons

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .......................................................................................3

LEGAL ARGUMENT .............................................................................................4

POINT I .................................................................................................................4

    PLAINTIFF WILLIAM PENN LACKS THE CLEAN HANDS
    NECESSARY TO FILE THE PRESENT ACTION AS IT BROUGHT
    ABOUT OR CAUSED THE DISPUTE THAT IT WOULD NOW HAVE
    RESOLVED BY INTERPLEADER. .................................................................4

    EVEN IF PLAINTIFF WILLIAM PENN COULD MAINTAIN AN
    ACTION IN INTERPLEADER, THIS COURT SHOULD EXERCISE
    DISCRETION AND ABSTAIN FOR ALLOWING THIS MATTER TO
    GO FORWARD BECAUSE THE PARTIES HAVE AN ADEQUATE
    REMEDY AT LAW. ......................................................................................8

    IF THIS COURT RETAINS JURISDICTION, DEFENDANT VISCUSO IS ENTITLED
    TO THE FULL POLICY PROCEEDS AS A MATTER OF LAW AND REGARDLESS
    OF THE OTHER DEFENDANTS *EX DELICTO* CLAIMS                           11

CONCLUSION ....................................................................................................14

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Cases*

<u>American Airlines, Inc. v. Block,</u> 905 F.2d
12 (2nd Cir. 1990)........................................................................................7

<u>American-Hawaiian Steamship Co. v.</u>
<u>Bowring & Co.,</u>150 F.Supp. 449 (S.D.
N.Y. 1957).........................................................................................3, 4, 6

<u>Austin v. Texas-Ohio Gas Company,</u> 218
F.2d 739 (5th Cir. 1955).................................................................3

<u>Bell v Nutmeg Airways Corp.</u>, 66 FRD 1
(D.C. Conn. 1975).......................................................................3

<u>Brinson v. Brinson,</u> 334 F.2d 155 (4th Cir.
1964).........................................................................................3

<u>Burchfield v. Bevans,</u> 242 F.2d 239 (10th
Cir. 1957)...................................................................................3

<u>Coopers & Lybrand, L.L.P. v. Michaels,</u> No.
94-CV-5643, 1995 WL 860760 (E.D.N.Y.
Oct. 31, 1995)............................................................................5

<u>Farmers Irrigating Ditch & Reservoir Co. v.</u>
<u>Kane,</u> 845 F.2d 229 (10th Cir. 1988)...........................................4

<u>Great Am. Ins. Co. v. Bank of Bellevue,</u> 366
F.2d 289 (8th Cir. 1966).............................................................3

<u>In re Posey,</u> 89 N.J.Super. 293 (Cty.Ct.
1965).........................................................................................5

<u>Irving Trust Co. v. Nationwide Leisure</u>
<u>Corp.,</u> 93 F.R.D. 102 (S.D.N.Y. 1981)........................................3

<u>John Hancock Mut. Life Ins. Co.,</u> 107 N.J.
Super. 570 (App. Div. 1969)......................................................5

<u>Koehring Company v. Hyde Construction</u>
<u>Company,</u> 424 F.2d 1200 (7th Cir. 1970)....................................8

**TABLE OF AUTHORITIES** (Continued)

Mallory S.S. Co. v. Thalheim, 277 F. 196
(2d Cir. 1921) ...................................................................4

Metropolitan Life Ins. Co. v. Dinzik, 141
N.J.Eq. 336 (Ch.1948)......................................................5

Metropolitan Life Ins. Co. v. Scott, 587
F.Supp. 451,  (D.C.Pa. 1984) ...........................................8

National Union Fire Ins. Co. of Pittsburgh,
Pa. v. Karp, 108 F.3d 1 (2nd Cir. 1997) .............................7

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.
v. Ambassador Group, Inc., 691 F.Supp.
618 (E.D.N.Y.1988) ..........................................................5

Pan American Fire & Casualty Co. v
Revere, 188 F Supp 474 (E.D. La. 1960) ........................3, 4

Poland v. Atlantis CreditCorp., 179 F.Supp.
863 (S.D.N.Y.1960).............................................................5

Quackenbush v. Allstate Ins. Co., 517 U.S.
706, ----, 116 S.Ct. 1712, 1722, 135
L.Ed.2d 1 (1996).................................................................7

Truck-A-Tune, Inc. v. Re
23 F.3d 60 (2d Cir 1994) ................................................3, 7

U.S. v. Major Oil Corp., 583 F.2d 1152 (10th
Cir. 1978)............................................................................4

U.S.--First Nat. Bank of Ft. Worth v. U.S.,
633 F.2d 1168 (5th Cir. 1981) .............................................3

*Statutes*

28 U.S.C. 1335 ..................................................................3

*Other Authorities*

3A Moore, Federal Practice, par. 22.16(1),
at 3138 (2d Ed. 1967) ........................................................8

TABLE OF AUTHORITIES (Continued)

Page

*Rules*

Fed Rule of P. 12(b)(1) and (6) ...................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff The William Penn Life Insurance Company Of New York ("William Penn") has brought an action for statutory interpleader pursuant 28 U.S.C. §1335(a) seeking to extinguish a pending state law lawsuit which seeks the payment of life insurance proceeds to interpleader-defendant Kimbal Viscuso ("Viscuco"), and to be "discharged from all further liability on the policy or for the proceeds payable on it." (Certification of M. Trevor Lyons, Paragraph 3, Exhibit A [Complaint, *ad damnum* clause, paragraphs 1 and 3]("Lyons Cert., ¶3, Exh. A [Complaint, *ad damnum* clause, paragraphs 1 and 3]")). Interpleader, however, while statutorily sanctioned, is fundamentally an equity proceeding. Therefore, defendant Viscuso now moves pursuant to Fed Rule of P. 12(b)(1) and (6) to dismiss William Penn's action in interpleader because: (a) plaintiff William Penn is not a disinterested stake holder, and therefore lacks the clean hands necessary to maintain an action in equity; and (b) because abstention is appropriate because William Penn has an adequate remedy at law that will in fact more equitably and completely resolve this matter.

In the alternative, if this Court decides to retain this matter, summary adjudication should be granted to defendant Visco. Specifically, it is undisputed that William Penn mistakenly accepted a change of beneficiary form that was invalid because the power of attorney by which the change form was executed did not "include the authority to change the name of any beneficiary in any retirement asset or insurance contract" (Lyons Cert., ¶5-6, Exh. C. and Exh. D). Therefore, pursuant to applicable law, the transaction by which the beneficiary was changed was void *ab initio,* and as result under the express terms of the policy the only proper beneficiary was Viscuso.

While perhaps William Penn's conduct created a reasonable expectation of benefits in the party that sought to change the beneficiary, defendants Charles M. Birns And Beth S. Martin-Birns, which could serve as a claim by them for *ex delicto* damages, that fact is irrelevant to

defendant Viscuso's primary right  claim to the policy benefits under applicable law. Therefore, Viscuso is, as a matter of law, based upon the undisputed documents referenced in the parties' original pleadings, entitled to a judgment award her the full policy proceeds.

## STATEMENT OF FACTS

There are only few facts, readily apparent on the face of plaintiff William Penn's Complaint, or which the Court make take judicial notice of, necessary to decide this Motion in defendant Viscuo's favor:

- On or about November 8, 1995, William Penn issued life insurance policy 070014261 insuring the life of Jon Fieldman (Complaint, ¶9). The policy was in the face amount of $350,000. (Complaint, ¶10). The owner of the policy was Jon Fieldman. (Complaint, ¶11) The designated beneficiary of the policy was Kimbal Viscuso, (Complaint, ¶12);

- Plaintiff William Penn pleads that:

   "On or about November 13, 2006, William Penn received a "Beneficiary Change Form" signed by Michael Birns, acting pursuant to a "Durable Power of Attorney" executed by Jon Fieldman dated January 31, 2005." (Complaint, ¶13). The Primary Beneficiaries indicated on the form submitted by Michael Birns were Charles M. Birns and Beth S. Martin-Birns. (Complaint, ¶14). On or about November 13, 2006, William Penn sent a written notification of the purported change of beneficiary to Jon Fieldman. (Complaint, ¶15). Upon information and belief, Jon Fieldman died on April 4, 2007. (Complaint, ¶16)

   Importantly, while not pled, William Penn has also acknowledged that it made a mistake in honoring a request to change beneficiaries to others under a Durable Power of Attorney because the Durable Power of Attorney expressly excluded the right to change beneficiaries, i.e., "shall not include authority to change the name of any beneficiary in any retirement or insurance contract." (Lyons Cert., ¶4, Exh. B).

- Subsequent to the death of Jon Fieldman, Michael Birns notified William Penn that the proceeds of the subject policy were claimed on behalf of Charles Birns and Beth S. Martin-Birns. (Complaint ¶17).

- Kimbal Viscuso has notified William Penn that she is claiming the proceeds of the subject policy as the "named beneficiary." (Complaint ¶18). In fact, defendant Kimbal has initiated a civil action in the Superior Court of New Jersey, Monmouth Vicinage, entitled "Kimbal Viscuso vs. William Penn Life Insurance Company Of New York" which was docketed "Mon-L-5721-07." (Lyons Cert., ¶4, Exh. B). That action seeks payment of the entire proceeds from the relevant life insurance policy to defendant Kimbal Viscuso, and further alleges negligence by plaintiff William Penn in honoring a request to change beneficiaries to other than defendant Viscuso under a Durable Power of Attorney because the Durable Power of Attorney expressly excluded the right to change beneficiaries, i.e., "shall not include authority to change the name of any beneficiary in any retirement or insurance contract." Id.

3

## LEGAL ARGUMENT

## POINT I

### PLAINTIFF WILLIAM PENN LACKS THE CLEAN HANDS NECESSARY TO FILE THE PRESENT ACTION AS IT BROUGHT ABOUT OR CAUSED THE DISPUTE THAT IT WOULD NOW HAVE RESOLVED BY INTERPLEADER.

Interpleader, while statutorily sanctioned at 28 U.S.C. 1335, is nonetheless fundamentally an equity proceeding. Irving Trust Co. v. Nationwide Leisure Corp., 93 F.R.D. 102, 110 (S.D.N.Y. 1981)(Statutory "[i]nterpleader is an equitable device…"); Truck-A-Tune, Inc. v. Re 23 F.3d 60, (2d Cir 1994)(same);   U.S.--First Nat. Bank of Ft. Worth v. U.S., 633 F.2d 1168, 1172 (5th Cir. 1981)("… interpleader actions, even involving the IRS, are equitable in nature.).[1] As such, an interpleader is subject to dismissal based upon the doctrine of unclean hands.  Bell v Nutmeg Airways Corp. , 66 FRD 1, 4 (D.C. Conn. 1975)(recognizing that both laches and unclean hands are available defenses that could bar an action in interpleader); Great Am. Ins. Co. v. Bank of Bellevue, 366 F.2d 289, 293 (8th Cir. 1966)("Interpleader is an equitable action controlled by equitable principles); Burchfield v. Bevans, 242 F.2d 239 (10th Cir. 1957); Brinson v. Brinson, 334 F.2d 155 (4th Cir. 1964), and the equitable doctrine that one seeking equitable relief must do equity and come into court with clean hands is applicable. Austin v. Texas-Ohio Gas Company, 218 F.2d 739 (5th Cir. 1955) (citations in original)).

As a result, a party is not entitled to interpleader relief if the hazard which he seeks to avoid has been occasioned by his own act. Pan American Fire & Casualty Co. v Revere, 188 F Supp 474, 481 (E.D. La. 1960)("if the hazard which plaintiff seeks to avoid has been occasioned

---

[1]   See also American-Hawaiian Steamship Co. v. Bowring & Co.,150 F.Supp. 449, 453 (S.D. N.Y.  1957)("The Federal Interpleader Act did not change the equitable nature of interpleader. It merely extended the jurisdiction of the Federal Courts to cover the circumstances which it describes.").

by his own act he is not entitled to the remedy"); <u>U.S. v. Major Oil Corp.</u>, 583 F.2d 1152, 1158 (10th Cir. 1978)("Thus, one is not entitled, under the 'clean hands' doctrine, to the remedy of interpleader (or the protections provided thereby) if the hazard which he seeks to avoid has been occasioned by his own act."). As a result, a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit, interpleader will not be available. <u>Mallory S.S. Co. v. Thalheim</u>, 277 F. 196, 201-202 (2d Cir. 1921)("Where it appears that as to any of the defendants the complainant is a wrongdoer, his bill of interpleader cannot be sustained."); <u>Pan American Fire & Casualty Co.</u>, 188 F Supp. at 481-82 ("One application of the rule is that 'a tortfeasor cannot obtain protection in an action in the nature of interpleader against the consequences of his own wrong"); <u>Farmers Irrigating Ditch & Reservoir Co. v. Kane</u>, 845 F.2d 229 (10th Cir. 1988) ("It is the general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader"). This bar to interpleader can also include the situation in which there independent basis of liability against the stakeholder for the amount of the fund. <u>American-Hawaiian S. S. Co. v. Bowring & Co.</u>, 150 F.Supp. 449, 454-55 (S.D.N.Y.1957)("Nevertheless, the better reasoned view seems to be that a party seeking relief in interpleader must show the non-existence of an independent liability to any of the interpleaded parties apart from the liability represented by the fund on deposit."); <u>Poland v. Atlantis Credit</u>

Corp., 179 F.Supp. 863, 866-67 (S.D.N.Y.1960)(same).[2]

In this case, in a state law action defendant Viscuo has alleged negligence by plaintiff William Penn in honoring a request to change beneficiaries to other than defendant Viscuso under a Durable Power of Attorney because the Durable Power of Attorney expressly excluded the right to change beneficiaries, i.e., "shall not include authority to change the name of any beneficiary in any retirement or insurance contract." (Lyons Cert., ¶5, Exh. D). Thus, the present controversy would not exist if plaintiff William Penn had requested, reviewed and acted in accordance with the relevant Power of Attorney before improperly changing the policy beneficiary. Therefore, because the present dispute between competing claimants to the relevant life insurance proceeds is the result of plaintiff William Penn's own misconduct and/or negligence, it lacks the clean hands necessary to obtain interpleader. Moreover, William Penn simply cannot establish "the non-existence of an independent liability to any of the interpleaded parties apart from the liability represented by the fund on deposit", and therefore should be barred from seeking interpleader on those grounds as well. American-Hawaiian S. S. Co., 150 F.Supp. at 454-55. For example, in Trowbridge v. Prudential Ins. Co. of America, 322 F.Supp. 190, 192 (D.C.N.Y. 1971), based upon facts that are almost identical to the facts of this case, the Court stated:

> In the instant case, the additional defendants claim that Prudential owes them the amount in question as the result of an insurance contract signed in 1936. By contrast, Grace Trowbridge bases her claim on a theory of negligent misrepresentation and/or contract

---

[2] It should also be noted that paragraph 7 of William Penn's Complaint states that it will move for an Order permitting the deposit of the full amount of the disputed proceeds. Nonetheless, the actual deposit of such proceeds is a jurisdictional prerequisite to interpleader relief. Coopers & Lybrand, L.L.P. v. Michaels, No. 94-CV-5643, 1995 WL 860760, at *9 (E.D.N.Y. Oct. 31, 1995) (explaining that "a jurisdictional **prerequisite** to statutory **interpleader** is that the stakeholder **deposit** a bond in the highest amount that the claimants "are claiming or may claim to be entitled") (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc., 691 F.Supp. 618, 621 (E.D.N.Y.1988)) (citing cases therein).

estoppel grounded in acts committed by Prudential in 1968. These are independent causes of action, not adverse to one another, which rely on separate and distinct elements. It is clearly possible that more than a single obligation is owed, and the possibility of a double recovery justified by law is very real. <u>Odum v. Penn Mutual Life Insurance Co., 288 F.2d 744 (5th Cir. 1961)</u>, <u>Phillips v. Continental Assurance Co., 210 Pa.Super. 178, 231 A.2d 422 (1967)</u>, <u>McNevin v. Metropolitan Life Insurance Co., 160 Misc. 468, 290 N.Y.S. 44 (1936)</u>, <u>American Motorists Insurance Co. v. Oakley, 172 Misc. 319, 14 N.Y.S.2d 883 (1939)</u>.

Accordingly, Prudential's motion to interplead the additional defendants with Grace Trowbridge is denied.

In sum, William Penn lacks the necessary clean hands to obtain interpleader, and, because of its potential negligence, it is not a disinterested stakeholder such that it can avail itself of interpleader.

## POINT II

**EVEN IF PLAINTIFF WILLIAM PENN COULD MAINTAIN AN ACTION IN INTERPLEADER, THIS COURT SHOULD EXERCISE DISCRETION AND ABSTAIN FOR ALLOWING THIS MATTER TO GO FORWARD BECAUSE THE PARTIES HAVE AN ADEQUATE REMEDY AT LAW.**

In <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, ----, 116 S.Ct. 1712, 1722, 135 L.Ed.2d 1 (1996), the United States Supreme Court stated "[W]e have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." Therefore, because the relief that plaintiff William Penn seeks by way of interpleader in this case is discretionary, and there is an adequate and in fact more complete remedy at law in a concurrent state court action, this Court should abstain and not allow this matter to proceed further in federal court. <u>American Airlines, Inc. v. Block,</u> 905 F.2d 12, 14 (2nd Cir. 1990) ("Correlatively, it is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable."); <u>Truck-A-Tune, Inc.</u>, 23 F.3d at 63 (same); <u>National Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp,</u> 108 F.3d 1 (2nd Cir. 1997)(Supreme Court's *Wilton* rule, allowing district courts to exercise discretion in determining whether to abstain from deciding insurance coverage issue in declaratory judgment action, was applicable when issue of insurance coverage was raised in declaratory judgment claim inside federal interpleader action). For example, Professor Moore, who is in agreement with this position, has stated:

> ...It should also be within the discretion of the interpleader court, sitting as a court of equity, to decline to exercise jurisdiction when there is an action pending elsewhere wherein the liability of the

8

> stakeholder to all claimants may be fairly and conclusively
> determined. In such a case, the fear of multiple vexation and
> inconsistent liability which serves as the premise for interpleader
> relief may be absent; this, in addition to the prior lodging of
> jurisdiction in another tribunal, may properly convince the
> interpleader court that it is both safe and prudent to stay its hand. If
> these conditions are met, there is no reason to believe that the
> interpleader statute compels the exercise of jurisdiction, thus
> depriving the court of the discretion traditionally exercised to deny
> equitable relief when there is another adequate remedy "at law."
> There is strong support for this proposition in the federal cases.

3A Moore, Federal Practice, par. 22.16(1), at 3138 (2d Ed. 1967); See also Koehring Company

v. Hyde Construction Company, 424 F.2d 1200 (7th Cir. 1970)(citing Professor Moore);

Metropolitan Life Ins. Co. v. Scott, 587 F.Supp. 451, (D.C.Pa. 1984)(When an action already is

pending against the insurance carrier in one forum where interpleader is equally available, either

as an independent action or by way of counterclaim, interpleader should not be tried in another

forum, absent exceptional circumstances.).

In this case, there is pending before the Superior Court of New Jersey, Monmouth

Vicinage, a civil action entitled "Kimbal Viscuso vs. William Penn Life Insurance Company Of

New York" which was docketed "Mon-L-5721-07." (Lyons Cert., ¶4, Exh. B). That action seeks

payment of the entire proceeds from the relevant life insurance policy to defendant Kimbal

Viscuso, but also further alleges negligence by plaintiff William Penn in honoring a request to

change beneficiaries to other than defendant Kimbal Viscuso under a Durable Power of Attorney

because the Durable Power of Attorney expressly excluded the right to change beneficiaries, i.e.,

"shall not include authority to change the name of any beneficiary in any retirement or insurance

contract." Id. Accordingly, there is a pending state law claim that brings all applicable issues

before a court of law.

New Jersey permits interpleader pursuant to Rule 4:31 of its Rule of Court either by way of affirmative claim or counter-claim. Therefore, William Penn has an adequate remedy at law and can either seek an interpleader in state court, or simply defend the pending action and afterwards seek an estoppel as to any future claims to the relevant life insurance proceeds on comity grounds.  Frankly, however, what William Penn should not be permitted to do is seek to have the possibility that it may be required to answer in negligence extinguished by an action in interpleader seeking to be "discharged from all further liability on the policy or for the proceeds payable on it." (Lyons Cert., ¶3, Exh. A [Complaint, *ad damnum* clause, paragraphs 1 and 3]).[3] Therefore, if this Court determines that William Penn's negligence/unclean hands does not bar it from seeking an interpleader, it should nonetheless abstain because there is pending state court action that presents all possible claims, and in which William Penn has an adequate remedy at law.

---

[3]  In this regard, if William Penn's interpleader action is permitted to go forward, its claim that it should be "discharged from all further liability on the policy or for the proceeds payable on it", must be denied, and defendant Viscuso permitted to prosecute a compulsory counterclaim for negligence, or her state claim should not dismissed.

## POINT III

### IF THIS COURT RETAINS JURISDICTION, DEFENDANT VISCUSO IS ENTITLED TO THE FULL POLICY PROCEEDS AS A MATTER OF LAW AND REGARDLESS OF THE OTHER DEFENDANTS *EX DELICTO* CLAIMS.

It is generally held that, where an attempt to change the beneficiary in a life insurance policy or benefit certificate has been unsuccessful, the prior beneficiary is entitled to the proceeds of the policy, his rights being unimpaired by the attempted change. For example, in Trowbridge v. Prudential Ins. Co. of Am., 322 F. Supp. 190, 193-94 (S.D.N.Y. 1971), the deceased had written to the insurer seeking to change the beneficiary to his wife and the insurance company had erroneously endorsed the policies and informed the insured wife that she was now the beneficiary. It turned out that change in beneficiary was in error, and that early beneficiary should still have taken. The wife brought *ex delicto* claims for negligent misrepresentation and contract estoppel. Despite, these claims, the District Court granted them original beneficiaries summary judgment stating:

> The additional defendants base their claim for relief directly on the insurance policy itself. That they are justified in their quest for recovery appears to have been all but admitted by Prudential in its answering papers. There, Prudential admits that it had no right to change beneficiaries in the manner done, and refers to this change as 'the result of an unintentional mistake and inadvertent clerical error.' Indeed, Prudential goes on to state in its answer that-

> 'Defendant desires and requires that each of the aforementioned policies be reformed to remove the endorsements changing the beneficiary under each of said policies to the plaintiff and for the restoration of each of said policies to the status thereof prior to the making of said endorsements.'

> A motion for summary judgment will lie whenever there is no genuine issue as to any material fact. And, while it has been stated many times that summary judgment is a 'blunt instrument' which should be used only in moderation, it must be remembered that cases holding that courts should be slow to grant summary judgment, leaning always to the side of caution and restraint, must be limited to their facts lest Rule 56 of the Federal Rules lose its effectiveness and meaning.

> Rule 56 states in part, 'The judgment sought shall be rendered forthwith if * * * there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law.' Such is the nature of the case now before us. Accordingly, the motion of the additional defendants for summary judgment against the Prudential Life Insurance Company of America for an amount equal to the proceeds of the insurance policies plus interest is granted.

Similarly, in this case William Penn changed the beneficiary on the relevant life insurance policy pursuant to a durable power of attorney that did not "include the authority to change the name of any beneficiary in any retirement asset or insurance contract" (Lyons Cert., ¶ 6, Exh. D). Accordingly, that change was void *ab initio*, and pursuant to well established law defendant Viscuso as the prior beneficiary is entitled to the proceeds of the policy, her rights being unimpaired by the attempted change. State Farm Life Ins. Co. v. Gutterman, 896 F.2d 116 (5th Cir. 1990); Ward v. Stratton, 988 F.2d 65 (8th Cir. 1993); Androvette v. Treadwell, 73 N.Y.2d 746, 536 N.Y.S.2d 43, 532 N.E.2d 1271 (1988);. Campbell v. Metropolitan Life Ins. Co., 812 F. Supp. 1173 (E.D. Okla. 1992); Stavros v. Western & Southern Life Ins. Co., Inc., 486 S.W.2d 712 (Ky. 1972).[4] This is the case regardless of what representation were made to defendants Charles M. Birns And Beth S. Martin-Birns, that would support their *ex delicto* claims for negligent representation and contractual estoppel.

---

[4] At the pre-motion conference, counsel for William Penn indicated that the relevant policy called for the application of Arizona law. After diligent review, as counsel for Viscuso, we cannot find any Arizona choice of law requirement in the relevant policy (Lyons Cert., ¶5, Exh. C. ). Nonetheless, even if Arizona law were to apply, the outcome would be the same. Specifically, Arizona law requires that the method of changing beneficiaries as set out in the insurance contract must be strictly followed. There are, however, three exceptions to this general rule requiring strict compliance with the provisions and they are: (1) if the insurer has waived strict compliance; (2) if it is beyond the power of the insurer to comply literally with the regulations, equity will treat the change as regularly made; and (3) if the insured has done all in his power to effect the change, but before the change is completed he dies, equity will treat the change has having been made. Schlade v. Arizona State Retirement System, 109 Ariz. 396, 510 P.2d 42 (1973). None of these exception, however, would permit modification in this case, and again defendant Viscuso as the prior beneficiary would be entitled to the proceeds of the policy, her rights being unimpaired by the invalid attempted change.

Therefore, if this Court retains jurisdiction of this matter, defendant Viscuso is entitled to a judgment as a matter of law awarding her the entire policy proceeds because she is the original/prior beneficiary whose rights were unimpaired by the attempted, albeit admitted unsuccessful change. These defendants would retain whatever quasi-contractual/ tort/negligence actions they may have against William Penn for it failure to check the durable power of attorney, but their rights in no way impede defendant Viscuso rights to the policy proceeds. Trowbridge, 322 F. Supp. at 193-94.

## <u>CONCLUSION</u>

For the foregoing reasons, William Penn's Complaint In Interpleader should be dismissed pursuant to Rule 12(b) (1) or (6), or in the alternative this Court should grant defendant Viscuso a judgment permitting her withdraw of the entire policy limit or for an amount equal the entire policy as against interpleader plaintiff William Penn.

CONNELL FOLEY LLP
Attorneys for Interpleader-Defendant
Kimbal Viscuso


BY:___\s\ M. Trevor_____
              M. Trevor Lyons

DATED:  April 24, 2008

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

      Plaintiff,

  -against-

KIMBAL VISCUSO, CHARLES M. BIRNS
and BETH S. MARTIN-BIRNS

      Defendants.

Civil Action No. 08 Civ. 1141 (WCC)

**CERTIFICATION OF M. TREVOR LYONS IN SUPPORT OF KIMBAL VISCUSO'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

**M. Trevor Lyons**, being of full age, hereby certifies and states:

    1.     I am an attorney at law of the State of New York and associated with the law firm of Connell Foley LLP, attorneys for interpleader-defendant Kimbal Viscuso ("Viscuso"). I make this Certification in support of defendant Viscuso's Motion to dismiss this matter pursuant to pursuant to Fed. R. Civ. P. 12(b)(1) or (6), or in the alternative dismissing the matter under the Court's inherent discretionary right to abstain from hearing an action in equity, including interpleader, or to grant defendant Viscuso summary judgment for the entire relevant policy proceeds.

    2.     In particular, I make this Certification to place before the Court certain materials necessary for the Court's disposition of defendant Viscuso's Motion.

    3.     On or about February 4, 2008, plaintiff The William Penn Life Insurance Company Of New York ("William Penn") filed a Complaint asserting interpleader jurisdiction pursuant to 28 U.S.C. §1335. Attached hereto as Exhibit A is a true and accurate copy of that Complaint. Importantly, paragraph 7 of that Complaint asserts that after filing the Complaint "plaintiff will move for an order permitting the deposit of the full amount of the disputed proceeds into the registry of this Court" admitting that William Penn has not perfected the steps necessary for interpleader jurisdiction.

4.      On December 4, 2007, defendant Kimbal has initiated a civil action in the Superior Court of New Jersey, Monmouth Vicinage, entitled "Kimbal Viscuso vs. William Penn Life Insurance Company Of New York" which was docketed "Mon-L-5721-07." That action seeks payment of the entire proceeds from the relevant life insurance policy to defendant Kimbal Viscuso, and further alleges negligence by plaintiff William Penn in honoring a request to change beneficiaries to other than defendant Viscuso under a Durable Power of Attorney because the Durable Power of Attorney expressly excluded the right to change beneficiaries, i.e., "shall not include authority to change the name of any beneficiary in any retirement or insurance contract." Attached hereto as Exhibit B is a true and accurate copy of the Complaint filed in that action.

5.      Attached hereto as Exhibit C is a true and accurate specimen copy of the life insurance policy that was provided to defendant Viscuso by plaintiff William Penn during the course of discovery in the New Jersey action.

6.      Attached hereto as Exhibit D is a true and accurate specimen copy of the durable power of attorney that was provided to defendant Viscuso by plaintiff William Penn during the course of discovery in the New Jersey action.

I have prepared and reviewed the foregoing Certification, consisting of six paragraphs paragraphs, and certify that to the best of my knowledge, the statements contained herein are true, and that the exhibits attached hereto are true and correct copies of the originals.

M. Trevor Lyons

Dated:  April 24, 2008

# Exhibit A

03/19/2008 14:51 FAX 9734250181      MCELROY DEUTSCH MULVANEY      Ø005/008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

THE WILLIAM PENN LIFE INSURANCE
COMPANY OF NEW YORK,

                Plaintiff,

     -against-

KIMBAL VISCUSO, CHARLES M. BIRNS
and BETH S. MARTIN-BIRNS,

               Defendants.

------------------------------------------------------X

**COMPLAINT FOR
INTERPLEADER**

(28 U.S.C. § 1335(a))

CIVIL ACTION NO.: 08 *Civ.* 1141(*WCC*)

Plaintiff, The William Penn Life Insurance Company of New York ("William Penn"), complaining of defendants, by its attorneys Bleakley Platt & Schmidt, LLP, alleges:

### JURISDICTION AND VENUE

1.    Plaintiff is a corporation organized and existing pursuant to the laws of the State of New York, with its offices and principal place of business located in the County of Nassau, State of New York.

2.    At all times hereinafter mentioned, plaintiff was authorized by the New York State Insurance Department to engage in the business of the issuance of policies of life insurance.

3.    Upon information and belief, defendant Kimbal Viscuso is an individual who is a citizen of the State of New Jersey.

4.    Upon information and belief, defendant Charles M. Birns is an individual who is a citizen of the State of New York and a resident of the County of Westchester.

5.    Upon information and belief, defendant Beth S. Martin-Birns is an individual who is a citizen of the State of New York and is a resident of the County of Westchester.

03/19/2008 14:51 FAX  9734250161          MCELROY DEUTSCH MULVANEY                    ☒ 006/008

6.      This Court has jurisdiction over this statutory interpleader action pursuant to the provisions of 28 U.S.C. § 1335(a) because there is diversity of citizenship between claimant Kimbal Viscuso and claimants Charles M. Birns, and Beth S. Martin-Birns, and because, as more fully explained below, they are asserting adverse claims to the proceeds of a life insurance policy that is in an amount in excess of $500.

7.      This Court has jurisdiction over this statutory interpleader action pursuant to the provisions of 28 U.S.C. § 1335(2) because after the filing of this complaint the plaintiff will move for an order permitting the deposit of the full amount of the disputed proceeds into the registry of this Court.

8.      This Court is the proper venue for this action under 28 U.S.C. § 1397 because the residence of defendants and claimants Charles M. Birns and Beth S. Martin-Birns is within the judicial district.

## SUMMARY OF ADVERSE CLAIMS

9.      On or about November 8, 1995, William Penn issued life insurance policy 070014261 insuring the life of Jon Fieldman.

10.     The policy was in the face amount of $350,000.

11.     The owner of the policy was Jon Fieldman.

12.     The designated beneficiary of the policy was Kimbal Viscuso.

13.     On or about November 13, 2006, William Penn received a "Beneficiary Change Form" signed by Michael Birns, acting pursuant to a "Durable Power of Attorney" executed by Jon Fieldman dated January 31, 2005.

14.     The Primary Beneficiaries indicated on the form submitted by Michael Birns were Charles M. Birns and Beth S. Martin-Birns.

2

15.    On or about November 13, 2006, William Penn sent a written notification of the purported change of beneficiary to Jon Fieldman.

16.    Upon information and belief, Jon Fieldman died on April 4, 2007.

17.    Subsequent to the death of Jon Fieldman, Michael Birns notified William Penn that the proceeds of the subject policy were claimed on behalf of Charles Birns and Beth S. Martin-Birns.

18.    Kimbal Viscuso has notified William Penn that she is claiming the proceeds of the subject policy as the "named beneficiary."

19.    Under the terms of the policy, there is now due the sum of $350,000 with interest from April 4, 2007 pursuant to New York Insurance Law § 3214.

20.    There is no dispute as to the amount payable under the policy.

21.    William Penn is indifferent and disinterested as to which of the defendants is entitled to the proceeds of the policy or to the division of the proceeds between them. William Penn is unable to determine to whom the amount due under the policy is payable and is unable to safely determine which of the defendants is entitled to that amount. As a result of these adverse claims, William Penn is or may be exposed to double liability.

22.    The whole amount of the proceeds or a part thereof is claimed adversely by the defendants, without any collusion on the part of William Penn.

23.    In pursuing this interpleader action, William Penn has incurred costs and attorney's fees in an amount to be shown at a hearing on the propriety of proceeding with this interpleader action.

WHEREFORE, plaintiff demands judgment:

(1)    That each of the defendants be restrained from instituting or maintaining any action against the plaintiff for the recovery of the proceeds of William Penn life insurance policy 070014261 or any action seeking any part of these proceeds;

3

03/19/2008 14:52 FAX 9734250161          MCELROY DEUTSCH MULVANEY                    ☑008/008

(2)    Requiring defendants to interplead together concerning their claims to the proceeds;

(3)    That plaintiff be discharged from all further liability on the policy or for the proceeds payable on it;

(4)    That plaintiff be awarded its costs and attorney's fees incurred in this action; and

(5)    For such other and further relief as the Court deems just and proper, together with expenses, costs and disbursements of this action payable from the proceeds of the subject policy.

Dated: White Plains, New York
February 4, 2008

BLEAKLEY PLATT & SCHMIDT, LLP

BY: _____
ROBERT D. MEADE (RM8324)
*Attorneys for Plaintiff*
ONE NORTH LEXINGTON AVENUE
P.O. BOX 5056
WHITE PLAINS, NY 10602-5056
(914) 949-2700

# Exhibit B

CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500
Attorneys for Plaintiff, Kimbal Viscuso



FILED
DEC - 4 2007
MONMOUTH VICINAGE
CIVIL DIVISION    020

| | |
|---|---|
| KIMBAL VISCUSO,<br><br>        Plaintiff,<br><br>   vs.<br><br>WILLIAM PENN LIFE INSURANCE<br>COMPANY OF NEW YORK,<br><br>       Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MONMOUTH COUNTY<br><br>DOCKET NO.: L-5721-07<br><br>Civil Action<br><br>*COMPLAINT* |

Plaintiff, KIMBAL VISCUSO by way of Complaint against Defendant, WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, says:

### FIRST COUNT

1.    The Plaintiff, Kimbal Viscuso, resides at 300 Spring Street, Red Bank, New Jersey.

2.    The Defendant, William Penn Life Insurance Company of New York (hereinafter "William Penn"), has corresponded with Plaintiff utilizing the address 100 Quentin Roosevelt Boulevard, P.O. Box 519, Garden City, New York 11530.

3.    Defendant, William Penn has acknowledged that Plaintiff is the sole beneficiary of a $300,000.00 (Three Hundred Thousand Dollar) life insurance policy of the life of Jon Fieldman, Deceased, Policy Number 0700014261.

4.    Defendant, William Penn has also acknowledged that it made a mistake in honoring a request to change beneficiaries to others under a Durable Power of Attorney because the Durable Power of Attorney expressly

excluded the right to change beneficiaries, i.e., "shall <u>not</u> include authority to change the name of any beneficiary in any retirement or insurance contract."

5.    Because of its "mistake," Defendant, William Penn has withheld payment of the policy proceeds from the Plaintiff, Kimbal Viscuso.

6.    Plaintiff, Kimbal Viscuso is entitled to immediate payment of the entire policy proceeds, plus interest, attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment of:

1.    The entire policy proceeds;

2.    Interest of the proceeds for the period of delayed payment;

3.    Attorney's fees and costs.

CONNELL FOLEY LLP
Attorneys for Plaintiff


RICHARD D. CATENACCI

DATED: December 3, 2007.

## CERTIFICATION

Pursuant to R. 4:5-1, plaintiff hereby certifies that to the best of plaintiff's knowledge, there are no other Court actions or Arbitration proceedings pending.

CONNELL FOLEY LLP
Attorneys for Plaintiff

RICHARD D. CATENACCI

DATED: December 3, 2007.

## Appendix XII-B

| CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|

**CIVIL CASE INFORMATION STATEMENT**
**(CIS)**

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

**FOR USE BY CLERK'S OFFICE ONLY**

PAYMENT TYPE:   CK    CG    CA

CHG/CK NO.

AMOUNT:

OVERPAYMENT:

BATCH NUMBER:

| 1. ATTORNEY/PRO SE NAME **RICHARD D. CATENACCI, ESQ.** | 2. TELEPHONE NUMBER **(973) 535-0500** | 3. COUNTY OF VENUE **MONMOUTH COUNTY** |
|---|---|---|
| 4. FIRM NAME (if applicable) **CONNELL FOLEY LLP** | | 5. DOCKET NUMBER (When available) |
| 6. OFFICE ADDRESS **85 Livingston Avenue** **Roseland, New Jersey 07068** | | 7. DOCUMENT TYPE **COMPLAINT** 8. JURY DEMAND ☐ YES ☑ NO |

| 9. NAME OF PARTY (e.g. John Doe, Plaintiff) **KIMBAL VISCUSO, Plaintiff** | 10. CAPTION **Kimbal Viscuso v. William Penn Life Insurance Company of New York** |
|---|---|

| 11. CASE TYPE NUMBER (See reverse side for listing) *599 - Contract* | 12. IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☑ NO IF YOU HAVE CHECKED "YES", SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|
| 13. RELATED CASES PENDING? ☐ YES ☑ NO | 14. IF YES, LIST DOCKET NUMBERS |
| 15. DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ YES ☑ NO | 16. NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN ☐ NONE    ☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| 17. A. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ YES ☑ NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE ☐ FAMILIAL | ☐ FRIEND/NEIGHBOR ☐ BUSINESS | OTHER (explain _____ |
|---|---|---|---|---|

18. B. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ☑ NO

19. USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| 20. DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ YES ☑ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: _____ |
|---|---|
| 21. WILL AN INTERPRETER BE NEEDED? ☐ YES ☑ NO | IF YES, FOR WHAT LANGUAGE: _____ |

22. ATTORNEY SIGNATURE

*[signature]*

RICHARD D. CATENACCI

Revised effective 9/06

| **SIDE 2** |  | # CIVIL CASE INFORMATION STATEMENT (CIS ) Use for initial pleadings (not motions) under Rule 4:5-1. |
|---|---|---|

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track 1 - 150 days' discovery**

| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (SUMMARY ACTION) |
| 999 | OTHER (Briefly describe nature of action) |

**Track II -- 300 days' discovery**

| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603 | AUTO NEGLIGENCE - PERSONAL INJURY |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE - PROPERTY DAMAGE |
| 699 | TORT - OTHER |

**Track III -- 450 days' discovery**

| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER/CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV -- Active Case Management by Individual Judge / 450 days' discovery**

| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Mass Tort (Track IV)**

| | | | |
|---|---|---|---|
| 240 | REDUX/PHEN-FEN (formerly "DIET DRUG") | 268 | MANUFACTURED GAS PLANT (MGP) |
| 241 | TOBACCO | 271 | ACCUTANE |
| 248 | CIBA GEIGY | 272 | BEXTRA/CELEBREX |
| 264 | PPA | 601 | ASBESTOS |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 619 | VIOXX |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category:

☐ Verbal Threshold          ☐ Putative Class Action          ☐ Title 59

Revised effective 9/06

# Exhibit C



# William Penn Life
## INSURANCE COMPANY OF NEW YORK

100 QUENTIN ROOSEVELT BLVD. • PO BOX 519
GARDEN CITY, NY 11530

The Company will pay the Beneficiary the death benefit as set forth in the contract. Payment will be made after due proof of the Insured's death and written claim are received at the Home Office. Such proof must show that the Insured died:

- while this Policy was in force; and
- prior to the Maturity Date.

The Company will pay the Owner any Cash Surrender Value on the Maturity Date if the Insured is living on that date.

Any payment is subject to the provisions on this and the following pages.

The consideration for this Policy is the application and the payment of the initial premium on or before policy delivery. A copy of the application is attached to and made a part of this contract.

This contract has been signed for the Company at its Home Office on the Date of Issue.

*Mark A. Canter*

Secretary

*J. Brunelli*

Registrar

*Joseph M. DeOliveira*

President

**Flexible Premium Adjustable Life Insurance Policy**
**Adjustable Death Benefit Payable Prior to the Maturity Date**
**Flexible Premiums Payable During Insured's Lifetime to Maturity Date**
**Non-Participating - No Dividends**

**Notice Of Twenty-Day Right To Examine Contract**
This is a legal contract between the Owner and William Penn Life. Read the Policy carefully. If the Owner is not satisfied with the contract, return it within 20 days to be cancelled. Return it to the Company at the address shown above, or to the agent who sold the Owner the contract. The Company will then return any payments made, and it will be as if no contract was issued.

L-FPA 5/91

SPECIMEN

## Table of Contents

| Item | Page No. |
|---|---|
| Face Page | 1 |
| Policy Schedule | 3 |
| **General Provisions** | |
| The Contract | 4 |
| Policy Date, Month, Year & Anniversary | 4 |
| Owner and Beneficiary | 4 |
| Change of Owner and Beneficiary | 4 |
| Assignment | 4 |
| Time Limit on Contests (Incontestability) | 4 |
| Suicide | 5 |
| Misstatement of Age or Sex | 5 |
| Payment of Proceeds | 5 |
| Nonparticipating | 5 |
| Annual Report | 5 |
| Projection of Benefits and Values | 5 |
| **Premium Provisions** | |
| General | 6 |
| Flexible Premiums | 6 |
| Planned Premium Payments | 6 |
| Unscheduled Additional Premiums | 6 |
| Premium Limitation | 6 |
| Application of Premiums | 6 |
| Grace Period | 6 |
| Reinstatement | 7 |
| **Insurance Provisions** | |
| Death Benefit | 7 |
| Changes in Specified Amount | 8 |
| Maturity Date | 8 |

| Item | Page No. |
|---|---|
| Guaranteed Values | 8 |
| Policy Account Value | 9 |
| Monthly Deduction | 9 |
| Interest Rate | 9 |
| Cost of Insurance | 9 |
| Cost of Insurance Rate | 9 |
| Basis of Computations | 9 |
| **Non-forfeiture Provisions** | |
| Continuation of Insurance | 10 |
| Paid-Up Insurance on Guaranteed Basis | 10 |
| Surrender | 10 |
| Cash Surrender Value | 10 |
| Surrender Charge | 10 |
| Partial Surrender | 10 |
| Partial Surrender Charge | 11 |
| **Policy Loans** | |
| Loan Value | 11 |
| Available Loan Value | 11 |
| Interest on Policy Loans | 11 |
| Repayment of Policy Loans | 11 |
| **Options for Payment of Proceeds** | |
| Options Available | 12 |
| Death of Payee under Payment Options | 12 |
| Tables for Payment Options | 13 |

SPECIMEN

POLICY SCHEDULE

POLICY NUMBER:  0700014261

SCHEDULE OF BENEFITS

| FORM NUMBER | TYPE OF COVERAGE | AMOUNT | ANNUAL PREMIUM | RATING CLASS |
|---|---|---|---|---|
| L-FPA5/91 | FLEXIBLE PREMIUM ADJUSTABLE LIFE | $350,000.00 | $4,886.00 | M-SMOKER |

NOTE:  IT IS POSSIBLE THAT THE CASH SURRENDER VALUE MAY BE SMALL OR NON-EXISTENT ON
THE MATURITY DATE SHOWN OR THAT COVERAGE WILL EXPIRE PRIOR TO THE MATURITY
DATE, WHERE EITHER PREMIUMS ARE NOT PAID OR INTEREST CREDITED IS INSUFFICIENT.
IF THE CURRENT INTEREST RATE OR COST OF INSURANCE RATES CHANGE, THIS WILL
AFFECT COVERAGE AND CASH SURRENDER VALUE AT THE MATURITY DATE.

MINIMUM CASH SURRENDER VALUES ARE BASED ON THE COMMISSIONERS 1980 STANDARD ORDINARY
MORTALITY TABLE, WITH INTEREST AT 4%.

PLANNED ANNUAL PREMIUM:       $4,886.00       OWNER:  JON FIELDMAN

PREMIUM PAYMENT INTERVAL:       ANNUAL       DATE OF ISSUE:       NOVEMBER  8, 1995

MATURITY DATE:       OCTOBER 13, 2043       POLICY DATE:       OCTOBER 13, 1995

INSURED:  JON       FIELDMAN       POLICY NUMBER:       0700014261

AGE & SEX:       47    MALE       POLICY LOAN INTEREST RATE:
                                                     7.40% PER YEAR IN ADVANCE

BENEFICIARY:       SEE APPLICATION

L-FPA5/91       PAGE 3



POLICY SCHEDULE (CONTINUED)

POLICY NUMBER:  0700014261

INSURANCE COVERAGE INFORMATION:

| | |
|---|---|
| INITIAL SPECIFIED AMOUNT: | $350,000.00 |
| CURRENT SPECIFIED AMOUNT: | $350,000.00 |
| MINIMUM SPECIFIED AMOUNT: | $175,000.00 |
| BENEFIT OPTION: | OPTION        1<br>(SPECIFIED AMOUNT) |

PREMIUM LIMITATION INFORMATION:

| | |
|---|---|
| GUIDELINE LEVEL PREMIUM: | $9,395.05 |
| GUIDELINE SINGLE PREMIUM: | $100,333.09 |

EXPENSE CHARGES:

| | |
|---|---|
| MONTHLY POLICY FEE: | $6.25 |
| ADMINISTRATION FEE FOR PARTIAL SURRENDER: | $25.00 |

INTEREST CREDITING:

THE MINIMUM GUARANTEED INTEREST RATE TO BE CREDITED IS 4%, EFFECTIVE ANNUALLY.  THE
POLICY ACCOUNT VALUE WHICH SECURES LOANS WILL BE CREDITED WITH AN EFFECTIVE ANNUAL
INTEREST RATE EQUAL TO THE POLICY LOAN INTEREST RATE, LESS 2%.

THE CREDITING OF ANY EXCESS INTEREST WILL VARY BY THE AMOUNT BY WHICH THE ACCOUNT
VALUE EXCEEDS POLICY INDEBTEDNESS, AS FOLLOWS:

| POLICY ACCOUNT VALUE<br>IN EXCESS OF LOAN | TOTAL EFFECTIVE CREDITED<br>INTEREST RATE |
|---|---|
| LESS THAN $10,000 | CURRENT ANNUAL BASE RATE |
| $10,000 - $19,999 | CURRENT ANNUAL BASE RATE + .50% |
| $20,000 AND OVER | CURRENT ANNUAL BASE RATE + .75% |

THE CURRENT ANNUAL BASE RATE WILL BE AS DETERMINED BY THE COMPANY AND MAY VARY
DEPENDING UPON CURRENTLY EXPECTED INVESTMENT YIELDS.  HOWEVER, THE CURRENT RATES
ARE GUARANTEED NOT TO CHANGE DURING THE FIRST POLICY YEAR.

L-FPA5/91                    PAGE 3A



POLICY SCHEDULE (CONTINUED)

TABLE OF SURRENDER CHARGES

POLICY NUMBER:  0700014261

| POLICY YEAR | SURRENDER CHARGE |
|---|---|
| 1 | 14,441.00 |
| 2 | 13,409.50 |
| 3 | 12,378.00 |
| 4 | 11,346.50 |
| 5 | 10,315.00 |
| 6 | 9,283.50 |
| 7 | 8,252.00 |
| 8 | 7,220.50 |
| 9 | 6,189.00 |
| 10 | 5,157.50 |
| 11 | 4,126.00 |
| 12 | 3,094.50 |
| 13 | 2,063.00 |
| 14 | 1,031.50 |
| 15 | 0.00 |

L-FPA5/91                        PAGE 3B

SPECIMEN

POLICY SCHEDULE (CONTINUED)
POLICY NUMBER: 0700014261

GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES PER $1,000
RATING CLASSIFICATION:    MALE    SMOKER    STANDARD

| POLICY YEAR | ATTAINED AGE | MAXIMUM RATE | POLICY YEAR | ATTAINED AGE | MAXIMUM RATE |
|---|---|---|---|---|---|
| 1 | 47 | .62251 | 25 | 71 | 5.08855 |
| 2 | 48 | .67630 | 26 | 72 | 5.55642 |
| 3 | 49 | .73685 | 27 | 73 | 6.08662 |
| 4 | 50 | .80082 | 28 | 74 | 6.66862 |
| 5 | 51 | .87496 | 29 | 75 | 7.31730 |
| 6 | 52 | .95760 | 30 | 76 | 7.99178 |
| 7 | 53 | 1.05216 | 31 | 77 | 8.68058 |
| 8 | 54 | 1.15868 | 32 | 78 | 9.37272 |
| 9 | 55 | 1.27212 | 33 | 79 | 10.08913 |
| 10 | 56 | 1.39507 | 34 | 80 | 10.86205 |
| 11 | 57 | 1.52246 | 35 | 81 | 11.71251 |
| 12 | 58 | 1.65858 | 36 | 82 | 12.66752 |
| 13 | 59 | 1.80005 | 37 | 83 | 13.73779 |
| 14 | 60 | 1.95717 | 38 | 84 | 14.88656 |
| 15 | 61 | 2.13432 | 39 | 85 | 16.07811 |
| 16 | 62 | 2.33420 | 40 | 86 | 17.27457 |
| 17 | 63 | 2.56130 | 41 | 87 | 18.45789 |
| 18 | 64 | 2.81241 | 42 | 88 | 19.76999 |
| 19 | 65 | 3.08515 | 43 | 89 | 21.08692 |
| 20 | 66 | 3.37018 | 44 | 90 | 22.42853 |
| 21 | 67 | 3.67025 | 45 | 91 | 23.82284 |
| 22 | 68 | 3.98026 | 46 | 92 | 25.33222 |
| 23 | 69 | 4.31179 | 47 | 93 | 27.31458 |
| 24 | 70 | 4.67927 | 48 | 94 | 29.94249 |

THESE RATES ARE BASED ON THE 1980 CSO MORTALITY TABLE, AGE NEAREST BIRTHDAY.

L-FPA5/91                    PAGE 3C

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261
                                    AGE 47 M SMOKER      TABLE STANDARD
                                    POLICY DATE:10/13/1995

ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:          4886
INITIAL SPECIFIED AMOUNT:        350000          MATURITY DATE:10/13/2043
OTHER COVERAGES:   NONE

| | | BASED ON CURRENT FACTORS | | | BASED ON GUARANTEED FACTORS | | |
|---|---|---|---|---|---|---|---|
| POLICY YEAR | ANNUAL PREMIUM | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT |
| 01 | 4886 | 2778 | 0 | 350000 | 2458 | 0 | 350000 |
| 02 | 4886 | 5573 | 0 | 350000 | 4720 | 0 | 350000 |
| 03 | 4886 | 8376 | 0 | 350000 | 6838 | 0 | 350000 |
| 04 | 4886 | 11354 | 8 | 350000 | 8794 | 0 | 350000 |
| 05 | 4886 | 14475 | 4160 | 350000 | 10540 | 225 | 350000 |
| 06 | 4886 | 17754 | 8471 | 350000 | 12034 | 2751 | 350000 |
| 07 | 4886 | 21257 | 13005 | 350000 | 13218 | 4966 | 350000 |
| 08 | 4886 | 24962 | 17742 | 350000 | 14027 | 6807 | 350000 |
| 09 | 4886 | 28909 | 22720 | 350000 | 14416 | 8227 | 350000 |
| 10 | 4886 | 33139 | 27982 | 350000 | 14323 | 9166 | 350000 |
| 11 | 4886 | 37574 | 33448 | 350000 | 13703 | 9577 | 350000 |
| 12 | 4886 | 42199 | 39105 | 350000 | 12485 | 9391 | 350000 |
| 13 | 4886 | 47146 | 45083 | 350000 | 10607 | 8544 | 350000 |
| 14 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| 15 | 4886 | 57968 | 57968 | 350000 | 4389 | 4389 | 350000 |
| 16 | 4886 | 63768 | 63768 | 350000 | 0 | 0 | 0 |
| 17 | 4886 | 69725 | 69725 | 350000 | 0 | 0 | 0 |
| 18 | 4886 | 75834 | 75834 | 350000 | 0 | 0 | 0 |
| 19 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| 20 | 4886 | 88517 | 88517 | 350000 | 0 | 0 | 0 |
| AGE 60 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| AGE 65 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| AGE 70 | 4886 | 116227 | 116227 | 350000 | 0 | 0 | 0 |

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261
                                   AGE 47 M SMOKER      TABLE STANDARD
                                   POLICY DATE:10/13/1995

ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:          4886
INITIAL SPECIFIED AMOUNT:        350000          MATURITY DATE:10/13/2043
OTHER COVERAGES:   NONE

GUARANTEED VALUES ARE BASED UPON GUARANTEED COST OF INSURANCE AND EXPENSE
CHARGES AND 4% INTEREST.   CURRENT VALUES ARE BASED UPON THE CURRENT
COST OF INSURANCE AND EXPENSE CHARGES AND THE CURRENT INTEREST RATE,
WHICH VARIES BY POLICY ACCOUNT VALUES AS FOLLOWS:

| POLICY ACCOUNT VALUE | CURRENT INTEREST RATE |
|---|---|
| 0 - 9,999 | 6.50% |
| 10,000 - 19,999 | 7.00% |
| 20,000 AND OVER | 7.25% |

THE CURRENT INTEREST RATES ARE GUARANTEED NOT TO CHANGE DURING THE FIRST
POLICY YEAR.

THE PORTION OF POLICY ACCOUNT VALUE WHICH EQUALS THE AMOUNT OF ANY UNPAID
LOAN IS CREDITED WITH 6% INTEREST.  ALL INTEREST RATES SHOWN ARE EFFECTIVE
ANNUAL RATES.  INTEREST IS CREDITED MONTHLY AFTER DEDUCTION OF EXPENSE
AND COST OF INSURANCE CHARGES.

PREMIUMS ARE FLEXIBLE.  PREMIUMS ILLUSTRATED ARE BASED ON INTENDED PREMIUMS
AND, IF PAID OTHER THAN ANNUALLY, POLICY ACCOUNT VALUES AND CASH SURRENDER
VALUES WILL BE LESS THAN IF PREMIUMS WERE PAID ON AN ANNUAL BASIS.

THE POLICY ACCOUNT VALUES, CASH SURRENDER VALUES AND DEATH BENEFIT ILLUSTRATED
ARE END OF THE POLICY YEAR VALUES.

COVERAGE WILL CEASE IN YEAR 16 UNLESS THE PREMIUM IS INCREASED ON THE
GUARANTEED BASIS.

THE POLICY LOAN INTEREST RATE IS 7.4% PAYABLE IN ADVANCE.

A SERVICE CHARGE OF $25.00 WILL BE DEDUCTED FROM THE POLICY ACCOUNT VALUE
EACH TIME A PARTIAL SURRENDER AMOUNT IS PAID.

THE TAX STATUS OF THIS CONTRACT AS IT APPLIES TO THE HOLDER OF THIS POLICY
OR CONTRACT SHOULD BE REVIEWED EACH YEAR.

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261

WILLIAM PENN LIFE INSURANCE COMPANY         EKA PLANNING SERVICES INC
    OF NEW YORK                             11 GRACE AVENUE
100 QUENTIN ROOSEVELT BLVD PO BOX 519       SUITE 402
GARDEN CITY, NEW YORK    11530              GREAT NECK NY 11021
                                           PREPARED ON:  11/08/95

|                          | GUARANTEED VALUES | PROJECTED VALUES |
|--------------------------|-------------------|------------------|
| FLEXIBLE PREMIUM ADJUSTABLE LIFE |           |                  |
| 10 YEAR SURRENDER COST   | 11.977            | 7.907            |
| 10 NET PAYMENT           | 13.960            | 13.960           |
| 20 YEAR SURRENDER COST   | .000              | 6.676            |
| 20 YEAR NET PAYMENT      | .000              | 13.960           |

AN EXPLANATION OF THE INTENDED USE OF THE INDICES IS PROVIDED IN THE LIFE
INSURANCE BUYER'S GUIDE.

SPECIMEN

## General Provisions

**The Contract**
This is a contract between the Owner and William Penn Life Insurance Company of New York (The Company). The entire contract consists of:

- this policy, and any attached riders, amendments and endorsements;
- the original application, a copy of which was attached at issue;
- any supplemental application, which will be made a part of the policy when a change goes into effect.

All statements made in an application are deemed representations and not warranties. No statements will void this Policy or be used in defense of a claim unless it is contained in the original or a supplemental application.

Only an Officer of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**Policy Date, Month, Year and Anniversary**
The policy date is stated in the policy schedule. Each policy month begins on the same day of each month as the policy date. The first day of each policy month is a monthly anniversary. Each policy year begins on the same day and month as the policy date. A policy anniversary occurs on the first day of each policy year after the first year.

**Owner and Beneficiary**
The Owner is named in the Policy Schedule. The beneficiary is as stated in the application. These designations will remain in effect until changed by the Owner.

The Owner has rights as stated in the Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent.

Unless otherwise specified, death proceeds will not be paid to a beneficiary who dies before, at the same time as, or within 30 days after the Insured and before the Company receives due proof of the Insured's death. If no beneficiary survives, payment will be made to the Owner or the Owner's estate or successors.

**Change of Owner and Beneficiary**
The Owner may change the designations of Owner and Beneficiary during the Insured's lifetime. Written notice of change must be filed at the Home Office at the address shown on the cover page in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**Assignment**
The Company is not responsible for the validity or effect of any assignment of this policy. No assignment will bind the company until it is received at the Home Office. Any proceeds payable to the assignee are payable in a single sum, even if a payment option was previously elected for settlement.

**Time Limit on Contests (Incontestability)**
The Company cannot contest this policy after it has been in force two years during the Insured's lifetime from the date of issue or the date of any reinstatement, except for nonpayment of premium. If the policy has been reinstated after the policy is in force two years after the date of issue, only statements in the reinstatement application may be contested. If reinstatement occurs within two years of the date of issue the Company may:

1. contest statements on the original application for two years after the date of issue; and
2. contest statements on the reinstatement application for two years after the date of reinstatement.

Any increase in specified amount, which requires evidence of insurability, will be contestable only after such increase has been in force during the Insured's lifetime for two years following the effective date of such increase.

This provision does not apply to any rider which is included with the Policy. The Incontestability section of the rider will apply.



L-FPA5/91                                    Page 4                                         2730

**Suicide**

If the Insured dies by suicide within two years from the Date of Issue, the death proceeds will be an amount equal to:

- the premiums paid; less
- any loan against this Policy; less
- partial surrender amounts and partial surrender charges.

If the Insured dies by suicide:

- within two years from the effective date of an increase in the Specified Amount; but
- more than two years from the Date of Issue;

the death proceeds with respect to the increase will be an amount equal to the Cost of Insurance for the increase. This amount may be reduced if:

- there is a loan against this Policy; or
- there have been partial surrenders of this Policy.

**Misstatement of Age or Sex**

If the Insured's age or sex is misstated, the proceeds payable will be those purchased by the most recent monthly deduction at the correct attained age and sex.

**Payment of Proceeds**

Proceeds means:

- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy; or
- the amount payable on the Maturity Date.

The proceeds will be paid from the Home Office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum. Payment will be made immediately upon receipt of due proof of death. The Company will pay interest on the proceeds from the date of death to the date the proceeds are paid. The interest rate will not be less than that required by law at the place of delivery of this contract.

**Nonparticipating**

This Policy does not share in any distribution of surplus. No dividends are payable. The Company will not recoup any prior losses nor distribute past gains by means of changes in cost of insurance or in credited interest rates.

**Annual Report**

An Annual report will be sent to the Owner. It will show since the last report:

- the premiums paid;
- the cost of insurance and the cost of riders;
- interest credited;
- the amount of any partial surrenders;
- the amount of any policy loan, with interest for the current year;
- the Policy Account Value; and
- the Cash Surrender Value.

The report will also include other information as required by state law and regulation.

**Projection of Benefits and Values**

The Owner may request a projection of illustrative future death benefits and Cash Surrender Values. The request must be in writing to the Home Office. A fee may be charged for this service, but it will never exceed $25.00.

The illustration will be based on:

- assumptions specified by the Owner as to Specified Amount(s), death benefit option(s), and premium payment(s); and
- other necessary assumptions specified by the Company and/or the Owner.



## Premium Provisions

### General
The first premium is due on the Policy Date. No insurance is effective until the first premium is paid.

All premiums are payable in advance either:

- at our Home Office at the address shown on the cover; or
- to our authorized agent in exchange for a receipt signed by our President or Secretary and countersigned by such agent.

### Flexible Premiums
Premium payments are flexible. The owner may choose the amount and frequency of premium payments. The actual amount and frequency of payment will affect the Policy Account Value and could affect the amount and duration of insurance provided by this policy.

### Planned Premium Payments
The planned premium payment and payment interval are shown on in the Policy Schedule. The owner may change the planned premium payment shown on the premium notices. The notices may be sent at any interval offered by the Company on the date the change is requested.

### Unscheduled Additional Premiums
The owner may pay additional premiums at any time prior to the Maturity Date subject to the Premium Limitation.

### Premium Limitation
Congress has established certain guidelines which determine the qualification of this policy as a life insurance policy. These guidelines establish that the sum of the premiums paid under this policy may not at any time exceed the premium limitation as of such time. Any excess premium paid will be refunded, with interest if appropriate. The premium limitation is the greater of (1) or (2) where:

(1) is the guideline single premium; and

(2) is the sum of the guideline level premiums for the number of years this policy has been in force.

The guideline single premium and the guideline level premium are shown in the policy schedule. These guideline premiums will be adjusted if:

1. the specified amount is changed;
2. there is a change to any benefit riders attached to this policy which Congress has defined as qualified benefits; or
3. there is a change in the benefit option.

The premium limitation will not apply if a premium payment is required under the grace period provision to prevent termination of this policy.

### Application of Premiums
The company will apply any amount received under this contract as a premium unless it is clearly marked otherwise.

### Grace Period
This policy provides for a grace period of 61 days to pay sufficient premiums to prevent policy termination. We will send written notice of the required premium due to the owner's last known address and to any assignee of record at least 30 days prior to the date the policy is to terminate. If the premium due is not paid within the grace period, all coverage under this policy will terminate without value at the end of the grace period. If a death claim occurs during the grace period, overdue monthly deductions will be deducted from the proceeds.

The grace period will begin on either:

1. the monthly anniversary where the policy account value is less than the monthly deduction. In this case, the required premium is equal to the monthly deduction minus the policy account value; or
2. the policy anniversary where;
   (a) the cash surrender value is less than the monthly deduction; and
   (b) the current policy account value is less than the policy account value as of the prior policy anniversary. At the first policy anniversary, this requirement will be fulfilled if the current policy account value is greater than zero.

In this case, the required premium is equal to the policy account value as of the prior anniversary minus the current policy account value.

SPECIMEN

## Reinstatement

This policy may be reinstated, provided:

- the Owner makes his/her request within 5 years of termination;
- it terminated because a grace period ended without sufficient premium being paid;
- satisfactory evidence of insurability is submitted;
- the Owner pays enough premium to keep the policy in force for 2 months; and
- any policy loan is paid or reinstated.

The account value on the effective date of reinstatement will be the account value on the date of entering the grace period plus the premiums paid at reinstatement.

If this policy is reinstated, the surrender charges will be the same as if this policy had been continuously in force from the policy date.

This policy will be approved for reinstatement as of the monthly anniversary on or next following the date we receive satisfactory proof of insurability.

### Insurance Provisions

## Death Benefit

The death benefit depends on the benefit option in effect at the date of death. The death benefit as defined below ensures that this policy qualifies as life insurance under the Internal Revenue Code. The company reserves the right to change the death benefit in order for this policy to comply with any change in federal law.

Option 1. The Specified Amount includes the Policy Account Value. Under this option, the death benefit is the greater of: (a) the Specified Amount and (b) the Policy Account Value at the date of death, times the percentage shown in the Table below for the Insured's attained age.

Option 2. The Specified Amount is in addition to the Policy Account Value. Under this option, the death benefit is the greater of: (a) the Specified Amount plus the Policy Account Value at the date of death and (b) the Policy Account Value at the date of death, times the percentage shown in the Table below for the Insured's attained age.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 55 | 150% | 70 | 115% |
| 41 | 243% | 56 | 146% | 71 | 113% |
| 42 | 236% | 57 | 142% | 72 | 111% |
| 43 | 229% | 58 | 138% | 73 | 109% |
| 44 | 222% | 59 | 134% | 74 | 107% |
| 45 | 215% | 60 | 130% | 75-90 | 105% |
| 46 | 209% | 61 | 128% | 91 | 104% |
| 47 | 203% | 62 | 126% | 92 | 103% |
| 48 | 197% | 63 | 124% | 93 | 102% |
| 49 | 191% | 64 | 122% | 94 | 101% |
| 50 | 185% | 65 | 120% | 95 or more | 100% |
| 51 | 178% | 66 | 119% | | |
| 52 | 171% | 67 | 118% | | |
| 53 | 164% | 68 | 117% | | |
| 54 | 157% | 69 | 116% | | |

The option may be changed subject to the Company's approval. The effective date of change will be the monthly anniversary following the date the request is received by us. If the benefit option in effect is option 1, it may be changed to option 2. In this case, the specified amount will be decreased to equal the death benefit less the policy account value.

If the benefit option in effect is option 2, it may be changed to option 1. In this case, the specified amount will be increased to equal the death benefit on the effective date of the change.

The amount of death benefit will be reduced by the amount of any policy loan. There may also be an adjustment in the amount paid due to:

- a successful contest of this policy;
- misstatement of age or sex;
- death by suicide; and/or
- death during the grace period.

**Changes in Specified Amount**
The Owner may request a change in the Specified Amount at any time after the first year. Written request for change must:
- be filed at the Home Office; and
- be in a form acceptable to the Company.

To increase the Specified Amount, the Owner must:
- submit a supplemental application; and
- provide satisfactory evidence of the insurability of the Insured.

The Company reserves the right to limit decreases in Specified Amount during the first five policy years.  A decrease is applied:
- first, to reduce the amount provided by the most recent increase;
- next, to reduce the next most recent increases successively;
- finally, to reduce the initial Specified Amount.

After the decrease, the Specified Amount cannot be less than the minimum amount shown in the Policy Schedule.  Any increase or decrease in Specified Amount which is approved will become effective as of the next monthly anniversary.

**Maturity Date**
The Maturity Date is shown in the Policy Schedule.

The Maturity Date is the latest date on which the Owner may elect to:
- terminate this policy;
- stop paying premiums; and
- receive any remaining Cash Surrender Value.

It is possible that this policy will end prior to the Maturity Date if:
- premium payments are insufficient;
- changes are made in the Specified Amount or plan as originally issued;
- the current rate of interest applicable on the Date of Issue changes;
- the current cost of insurance rates applicable on the Date of Issue change; or
- a policy loan or partial surrender is made.

**Guaranteed Values**

**Policy Account Value**
On each monthly anniversary, the policy account value will equal (1) plus (2) plus (3) minus (4) minus (5) where:

(1) is the policy account value on the preceding monthly anniversary;
(2) is one month's interest on item (1);
(3) is any premium received since the preceding monthly anniversary, plus interest from the day that premium is received at our Home Office until the end of the policy month in which that premium was received;
(4) is the monthly deduction described below for the policy month following the monthly anniversary; and
(5) is any partial surrender amount, plus any partial surrender charge, made since the preceding monthly anniversary, plus interest from the day that surrender is made until the end of the policy month in which that surrender is made.

On any day other than a monthly anniversary, the policy account value will be calculated on a basis consistent with that prescribed above.

The policy account value on the policy date will be the first premium less the monthly deduction for the month following the policy date.



**Monthly Deduction**
The monthly deduction for a policy month will equal (1) plus (2) plus (3) where:

(1) is the cost of insurance described below;
(2) is the cost for the policy month of additional coverage provided by benefit riders; and
(3) is the monthly policy fee shown in the Policy Schedule.

**Interest Rate**
The guaranteed minimum interest rate used in the calculation of the policy account value is .32737% a month, compounded monthly. This is equivalent to 4% per year, compounded yearly. Interest in excess of the guaranteed rate may be used in the calculation of the policy account value at such increased rate and in such manner as determined by us. The Company will vary any excess interest crediting rate based on policy account value amounts as shown in the policy schedule. Additional amounts of interest will be non-forfeitable from the effective date of crediting. Any amount which equals policy debt will be credited with interest equal to the policy loan interest rate, less two percent, but in no event less than the minimum rate.

**Cost of Insurance**
The cost of insurance is determined on a monthly basis. The cost is (1) multiplied by the result of (2) minus (3) where:

(1) is the monthly cost of insurance rate described below;
(2) is the death benefit at the beginning of the policy month, divided by 1.0032737; and
(3) is the policy account value at the beginning of the policy month, prior to the deduction of item (1) of the monthly deduction provision for the following month.

If the benefit option is Option 1 and if there has been an increase in the specified amount, then the policy account value will first be considered a part of the specified amount when the policy was issued. If the policy account value is greater than the initial specified amount, it will then be considered a part of each increase in order, starting with the first increase. The benefit options and death benefit are described in the Insurance Provisions.

**Cost of Insurance Rate**
The monthly cost of insurance rate is based on the Insured's attained age, sex, and rating classification. The rating classification is shown in the policy schedule.

The cost of insurance rates are based on the Company's expectations as to future mortality, persistency, expenses and investment earnings. Any change in cost of insurance rates will be based on the Company's expectations in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in cost of insurance rates will apply to all insureds with the same attained age, sex and rating classification. The cost of insurance rates will be reviewed at least once every five years and no more frequently than once a year to determine if a change should be made. Any change in cost of insurance rates will be in accordance with procedures and standards on file with the insurance department of the state in which this policy was delivered.

The cost of the insurance rates for the Insured's rating classification will not be greater than the guaranteed maximum rates shown in the policy schedule. The guaranteed maximum rates are based on the 1980 Commissioners' Standard Ordinary Mortality Table, Male or Female, age nearest birthday. For attained ages below 20, the aggregate basis of this table will be used; otherwise, the smoker and nonsmoker basis will be used, as appropriate.

If there is an increase in specified amount, the rating classification for such increase will be shown in the policy schedule. If the rating classification for the increase is different from previous rating classifications, additional policy schedule pages will be issued with the applicable guaranteed maximum cost of insurance rates for that rating classification.

**Basis of Computations**
Minimum cash surrender values are based on 4% interest per year, compounded yearly, and the 1980 Commissioners' Standard Ordinary Mortality Table, Male or Female, age nearest birthday. For attained ages below 20, the aggregate basis for the table will be used; otherwise, the smoker or nonsmoker basis will be used, as appropriate.

A detailed statement of the method of computation of cash surrender values under this policy has been filed with the insurance department of the state in which this policy was delivered. Cash surrender values under this policy are never less than the minimum values required on the policy date by the state in which this policy was delivered.

**Non-Forfeiture Provisions**

**Continuation of Insurance**
If premium payments are not made as planned, and no additional unscheduled premium payments are received, this policy may still continue in force. However, this policy will only remain in force until the earliest of:

1. the monthly anniversary where the policy account value is less than the monthly deduction; or
2. the policy anniversary where:
   (a) the cash surrender value is less than the monthly deduction; and
   (b) the current policy account value is less than the policy account value as of the prior policy anniversary. At the first policy anniversary, this requirement will be fulfilled if the current policy account value is greater than zero.

If either of these two events occur, the terms of the grace period provision will take effect. If the required premium is not received before the end of the grace period, this policy will terminate as provided in the grace period provision.

**Paid-Up Insurance Option On Guaranteed Basis**
If you wish to discontinue premium payments, but retain some coverage on a permanent basis, the Owner may elect the paid-up insurance option. If the option is elected the Company will apply the Cash Surrender Value to provide a reduced amount of paid-up insurance. The Death Benefit will be the amount that the Cash Surrender Value will purchase, based on the guaranteed interest rate and the guaranteed maximum insurance rates shown in this policy. Once the paid-up insurance option has been elected, there will be no further monthly policy fees assessed against the policy.

**Surrender**
The Owner may surrender this policy and receive the cash surrender value during the Insured's lifetime. Surrender terminates this insurance. Surrender will be effective on the next monthly anniversary of this policy. The Company may postpone payment for as long as six months from the effective date of surrender. If payment is deferred for 10 working days or more, interest at the rate shown under the payment options will be added, unless that interest is less than $25.00. The Company reserves the right to require the return of the policy.

**Cash Surrender Value**
The cash surrender value will be (1) minus (2) minus (3) where:

(1) is the policy account value on the date of surrender;
(2) is any policy indebtedness; and
(3) is the surrender charge described below.

If the surrender is requested within 30 days after a policy anniversary, the cash surrender value will not be less than the cash surrender value on such anniversary, less any policy loans or partial surrenders made on or after such anniversary.

The surrender value may be paid in cash or under any of the payment options described in this contract.

**Surrender Charge**
The surrender charge for applicable policy years is shown in the policy schedule.

An additional surrender charge may be payable after any increase in the specified amount. If applicable, the additional charge will be added to any remaining surrender charge to determine the total surrender charge. The Company will send you a new policy schedule showing the total surrender charge for applicable policy years after an increase in specified amount.

**Partial Surrender**
A partial surrender of this policy may be made during the Insured's lifetime and prior to the maturity date. The partial surrender will be effective on the next monthly anniversary of this policy. The owner must send us a written request for a partial surrender. The minimum amount which will be paid as a partial surrender is $500. In addition, the amount paid may not exceed the cash surrender value on the date of partial surrender less $275. The Company reserves the right to limit the number of partial surrenders to six within a policy year.

When a partial surrender is made, the policy account value will be reduced by the amount of the partial surrender. The specified amount for benefit option 1 will be reduced by the same amount. The specified amount remaining in force after a partial surrender will be subject to the minimum amount set forth in the Policy Schedule.

SPECIMEN

The Company may postpone payment of a partial surrender for as long as six months from the effective date of the partial surrender. If payment is deferred for 10 working days or more, interest at the rate shown under the payment options will be added unless that interest is less than $25.00. A partial surrender used to pay a premium on any policy issued by us will not be postponed.

## Partial Surrender Charge

Upon a partial surrender of the policy, the policy account value will be reduced by a partial surrender charge. The specified amount for benefit option 1 will be reduced by the same amount. The amount of the partial surrender charge will be equal to (1) plus (2), where:

(1) is the administration fee shown in the policy schedule.

(2) is the full surrender charge multiplied by the ratio of the partial surrender amount to the cash surrender value of the policy.

Future surrender charges will be reduced by the ratio described in (2) above.

### Policy Loans

While the policy is in force, the owner may obtain all or part of the available loan value by written notice. This policy, assigned to us, is the only security needed. The Company may postpone making a loan for as long as six months from the date the notice is received at our Home Office. If payment is deferred for 10 working days or more, interest at the rate shown under the payment options will be added, unless that interest is less than $25.00. A policy loan used to pay a premium on any policy issued by us will not be postponed.

## Loan Value

The loan value will be (1) minus (2) where:

(1) is the policy account value of this policy; and

(2) is the surrender charge as described in the non-forfeiture provisions.

## Available Loan Value

The available loan value will be the loan value less the sum of:

(1) any existing policy loan;

(2) loan interest in advance to the next policy anniversary; and

(3) any due and unpaid monthly deductions payable prior to the date of the next planned premium payment, based upon the frequency of premium notices that are sent to the owner. Monthly deductions for future policy months will be based upon guaranteed cost of insurance rates and monthly policy fees.

## Interest on Policy Loans

Interest on policy loans will be payable in advance from the date of the loan to the next policy anniversary at the annual interest rate of 7.4%. Interest is payable in advance at the beginning of each subsequent policy year. If interest is not paid when due, it will be added to the policy loan and bear interest at the same rate.

## Repayment of Policy Loans

A policy loan may be repaid in full or in part in minimum amounts of $50.00 at any time while the policy is in force. Failure to pay back the policy loan may cause this policy to terminate. This will occur if the policy indebtedness decreases the cash surrender value to the point that condition 2 of the grace period provision applies; in this event, the policy will terminate unless part of the loan is repaid or the premium required by condition 2 is paid.



## Options For Payment of Proceeds

The proceeds of this contract will be paid in a single sum if no other form of payment is elected. All or part of this sum may be applied under any of the payment options described or in any other manner approved by the Company. These optional forms of settlement are available for payment in the event of the Insured's death or of cash surrender.

The Owner may elect any payment option for payment of death proceeds while the Insured is alive. If no payment option has been chosen when the proceeds become payable, the beneficiary may elect an option within certain time limits. For death proceeds, the election must be made within one year after the Insured dies. For other proceeds, the election must be made within 60 days after the proceeds become payable. The election must be made in writing in a form which clearly identifies the settlement desired.

A payment option can be elected only if the amount to be applied for any one Payee is at least $2,000. The amount for each Payee must also be large enough to provide a periodic payment of at least $25.00.

Under Option 1, the first payment is due one payment period from the date the option goes into effect. Under the other options, the first payment is due on the date the option goes into effect.

The yearly interest rate for money left under any Payment Option will be at least 5 1/2%. The Company may elect to credit interest at a higher rate. Money held by the Company under the Payment Options is held with the general assets, and not in a separate fund.

## Options Available

Option 1: Proceeds Left at Interest – Under this option, the company will hold the proceeds. Interest will be paid either once a month, four times a year, twice a year, or once a year. Proceeds will not be held under this option for more than 30 years.

Option 2: Payments of a Fixed Amount – Under this option, the company will make payments in the amount chosen until the proceeds and earned interest have been paid out in full.

The total amount paid each year must be at least 5% of the original proceeds. The length of the payment period will depend on the amount chosen, the amount of the proceeds applied and the amount of interest earned.

Option 3: Payments For a Fixed Period – Under this option, the Company will make monthly payments for the number of years chosen. Table A shows the monthly payment for each $1,000 of proceeds for payment periods of 1 to 30 years. The payment amounts shown include guaranteed interest.

Option 4: Life Income – Under this option, the Company will make monthly payments for the life of the Payee. We have the right to require satisfactory proof that the Payee is alive. If a guaranteed payment period is elected, the Company will make payments for at least the period elected, whether or not the named Payee is living.

When this option is elected, the amount of each installment will be based on the Payee's age and sex at the birthday nearest the date the option goes into effect. We have the right to require satisfactory proof of the Payee's age. Table B shows the monthly amounts payable at various ages for life with no guarantee, and for 10-year and 20-year guaranteed periods. Where the monthly installments for 2 or more periods are the same, payments will continue for the longer period.

Option 4 is available only if the Payee is a natural person who is the Insured, Owner, or Beneficiary. This option is not available to a Payee who is an assignee, estate, fiduciary, partnership or corporation.

## Death of Payee Under Payment Options

Unless the Owner or the Beneficiary has made other provisions in electing a payment option, amounts remaining at the Payee's death will be paid to the Payee's estate.

Under Option 1, the proceeds on deposit will be paid in a single sum.

Under Option 2, any unpaid proceeds and earned interest will be paid in a single sum.

Under Options 3 and 4, the present value of any unpaid guaranteed payments will be paid in a single sum. The sum to be paid will equal the total of guaranteed payments remaining, discounted at 5 1/2% yearly compound interest.

SPECIMEN

## Tables For Payment Options
### Table A, Option 3 — Monthly Payments For Each $1,000 of Proceeds*

| Number of Years | Monthly Payments | Number of Years | Monthly Payments | Number of Years | Monthly Payments |
|---|---|---|---|---|---|
| 1 | $85.39 | 11 | $10.00 | 21 | $8.59 |
| 2 | 43.84 | 12 | 9.39 | 22 | 6.43 |
| 3 | 30.00 | 13 | 8.88 | 23 | 6.29 |
| 4 | 23.09 | 14 | 8.44 | 24 | 6.15 |
| 5 | 18.95 | 15 | 8.06 | 25 | 6.03 |
| 6 | 16.20 | 16 | 7.74 | 26 | 5.92 |
| 7 | 14.24 | 17 | 7.45 | 27 | 5.82 |
| 8 | 12.78 | 18 | 7.20 | 28 | 5.73 |
| 9 | 11.64 | 19 | 6.97 | 29 | 5.65 |
| 10 | 10.74 | 20 | 6.77 | 30 | 5.57 |

*The final payment will be increased by any remaining unpaid balance.

### Table B, Option 4
#### Monthly Payments For Each $1,000 of Proceeds

| Male | Female | Life | 10 Yrs. Certain and Life | 20 Yrs. Certain and Life | Male | Female | Life | 10 Yrs. Certain and Life | 20 Yrs. Certain and Life |
|---|---|---|---|---|---|---|---|---|---|
| 10 & Under | 15 & Under | $4.65 | $4.64 | $4.64 | 45 | 50 | $5.65 | $5.59 | $5.44 |
| 11 | 16 | 4.66 | 4.65 | 4.64 | 46 | 51 | 5.72 | 5.65 | 5.48 |
| 12 | 17 | 4.67 | 4.66 | 4.65 | 47 | 52 | 5.79 | 5.72 | 5.53 |
| 13 | 18 | 4.68 | 4.67 | 4.66 | 48 | 53 | 5.86 | 5.78 | 5.57 |
| 14 | 19 | 4.69 | 4.68 | 4.67 | 49 | 54 | 5.94 | 5.85 | 5.62 |
| 15 | 20 | 4.70 | 4.69 | 4.69 | 50 | 55 | 6.02 | 5.92 | 5.67 |
| 16 | 21 | 4.71 | 4.71 | 4.70 | 51 | 56 | 6.11 | 5.99 | 5.72 |
| 17 | 22 | 4.72 | 4.72 | 4.71 | 52 | 57 | 6.20 | 6.07 | 5.77 |
| 18 | 23 | 4.74 | 4.73 | 4.72 | 53 | 58 | 6.29 | 6.15 | 5.82 |
| 19 | 24 | 4.75 | 4.75 | 4.74 | 54 | 59 | 6.39 | 6.23 | 5.87 |
| 20 | 25 | 4.77 | 4.76 | 4.75 | 55 | 60 | 6.49 | 6.32 | 5.92 |
| 21 | 26 | 4.78 | 4.78 | 4.77 | 56 | 61 | 6.60 | 6.41 | 5.97 |
| 22 | 27 | 4.80 | 4.80 | 4.78 | 57 | 62 | 6.72 | 6.51 | 6.03 |
| 23 | 28 | 4.82 | 4.81 | 4.80 | 58 | 63 | 6.84 | 6.61 | 6.08 |
| 24 | 29 | 4.84 | 4.83 | 4.82 | 59 | 64 | 6.97 | 6.71 | 6.13 |
| 25 | 30 | 4.86 | 4.85 | 4.83 | 60 | 65 | 7.11 | 6.82 | 6.19 |
| 26 | 31 | 4.88 | 4.87 | 4.85 | 61 | 66 | 7.26 | 6.94 | 6.24 |
| 27 | 32 | 4.90 | 4.90 | 4.87 | 62 | 67 | 7.42 | 7.06 | 6.29 |
| 28 | 33 | 4.93 | 4.92 | 4.90 | 63 | 68 | 7.59 | 7.18 | 6.34 |
| 29 | 34 | 4.95 | 4.94 | 4.92 | 64 | 69 | 7.77 | 7.32 | 6.39 |
| 30 | 35 | 4.98 | 4.97 | 4.94 | 65 | 70 | 7.97 | 7.45 | 6.44 |
| 31 | 36 | 5.01 | 5.00 | 4.97 | 66 | 71 | 8.18 | 7.60 | 6.48 |
| 32 | 37 | 5.04 | 5.03 | 4.99 | 67 | 72 | 8.40 | 7.75 | 6.52 |
| 33 | 38 | 5.07 | 5.06 | 5.02 | 68 | 73 | 8.65 | 7.90 | 6.56 |
| 34 | 39 | 5.11 | 5.09 | 5.05 | 69 | 74 | 8.91 | 8.06 | 6.60 |
| 35 | 40 | 5.14 | 5.13 | 5.08 | 70 | 75 | 9.19 | 8.23 | 6.63 |
| 36 | 41 | 5.18 | 5.16 | 5.11 | 71 | 76 | 9.50 | 8.39 | 6.66 |
| 37 | 42 | 5.22 | 5.20 | 5.14 | 72 | 77 | 9.83 | 8.56 | 6.69 |
| 38 | 43 | 5.26 | 5.24 | 5.17 | 73 | 78 | 10.18 | 8.73 | 6.71 |
| 39 | 44 | 5.31 | 5.29 | 5.21 | 74 | 79 | 10.57 | 8.90 | 6.72 |
| 40 | 45 | 5.36 | 5.33 | 5.24 | 75 | 80 | 10.98 | 9.08 | 6.74 |
| 41 | 46 | 5.41 | 5.38 | 5.28 | 76 | 81 | 11.43 | 9.25 | 6.75 |
| 42 | 47 | 5.46 | 5.43 | 5.32 | 77 | 82 | 11.92 | 9.41 | 6.76 |
| 43 | 48 | 5.52 | 5.48 | 5.36 | 78 | 83 | 12.45 | 9.57 | 6.76 |
| 44 | 49 | 5.58 | 5.54 | 5.40 | 79 | 84 | 13.02 | 9.73 | 6.77 |
| | | | | | 80 & Over | 85 & Over | 13.64 | 9.88 | 6.77 |

SPECIMEN

2754

## WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK

100 QUENTIN ROOSEVELT BLVD • PO BOX 519 • GARDEN CITY NY 11530

### AMENDMENT OF APPLICATION

I, _____ Jon Fieldman _____, hereby amend my application to

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK under date of _____ Aug. 23, 1995 ____

as follows:   Part I Question 5 Owner shall read:   Insured

I agree that these changes shall be an amendment to and form a part of the original application and of the policy issued as a result, if any; I also agree that they shall be binding on any person who shall have or claim any interest under the policy.

I have signed the copy of this amendment form which remains attached to the Policy as well as the copy for the Home Office.

Date _____ 11/9/95 _____

Policy No. _____ 070-14261 _____

I have witnessed the signature(s) on the copy of this amendment form which remains attached to the Policy, as well as on the copy for the Home Office.

Witness _____

Proposed Insured _____

Applicant-Owner _____
                (If Applicant is a Firm or Corp., insert name of Company)

By _____
   (Signature & Title of Officer Authorized to Sign for Firm or Corp.)

By _____
   (Additional Signature)

AP-L-A/93

2042

PLEASE DETACH AT PERFORATION AND RETURN THIS COPY TO THE HOME OFFICE

SPECIMEN

**William Penn Life Insurance Company of New York**  070-142611  Policy Number

**PART I**

1. a. Proposed Insured's Name: __Jon__ __Fieldman__
   First                    Middle                    Last
   Maiden and/or Prior Name _____
   b. ☒ Male  ☐ Female
   c. ☐ Single  ☒ Married  ☐ Divorced  ☐ Widowed  ☐ Separated
   d. Date of Birth __9__ / __29__ / __48__  e. Age _____
      Mo.   Day   Yr.   (nearest birthday)
   f. Place of Birth __NY__    __USA__
      State        Country
   g. Social Security or Tax I.D. No. __127-36 8789__
   h. Driver's License No. _____

2. b. Are you a citizen of the U.S.? ☒ Yes  ☐ No
   If No, state country and type of visa_____

3. Send all mail to Owner at address in ☐ 4a  ☐ 4b  ☐ 5

4. a. Residence Address:
   No. & Street __2 Country Club Dr__
   City/State/Zip __White Plains NY 10607__
   Telephone Number __(914) 592 8250__

   Questions 4b & c apply to proposed insured if age 15 or over;
   to owner or payor if proposed insured under age 15.

   b. Business Address:
   Name of Employer __Viss Cueso's Inc__
   No. & Street __210 W 44th St__
   City/State/Zip __NY  NY__
   Telephone Number __(212) 398-0360__
   Number of years employed __10 yrs__

   c. Occupation(s) __Owner__
   Duties (describe) _____

5. Owner (if other than proposed insured)
   a. Name __John Viscuso__
   b. Relationship to proposed insured __Business Partner__
   c. Address: ☐ Residence  ☒ Business
   No. & Street __(Viss Cuesds Inc) 210 W 44th St__
   City/State/Zip __New York  NY__
   Telephone No. __(212) 398-0360__
   d. Social Security or Tax I.D. No. _____

6. Send Premium Notices to:
   ☐ Proposed Insured  ☒ Owner  ☐ Other
   (Give name, address and telephone number if Other)
   Name __See # 5__
   No. & Street _____
   City/State/Zip _____
   Telephone No. ( )_____

7. a. Plan __Penn Option Flex__
   b. If Last Survivor plan, indicate joint equal age:_____
   c. Amount $ __350,000__
   d. Premiums Payable ☒ Annual  ☐ Semi-annual
      ☐ Pre-Authorized Check  ☐ Quarterly  ☐ Other_____
   e. List Bill ☐ Yes  ☐ No
      Special Billing Number if previously assigned_____
   f. Automatic Premium Loan, if available ☐ Yes  ☐ No
   g. Other Riders/Benefits:
      ☐ Primary Insured Rider $_____
      ☐ Waiver of Monthly Deduction Rider (UL)
      ☐ Spouse Rider (UL) $_____
      ☐ Other Insured Rider $_____
         $_____    $_____
         $_____    $_____
      ☐ Children's Insurance Rider--Units/Face:_____
      ☐ Family Insurance Rider -- Units:_____
      ☐ Accidental Death Benefit $_____
      ☐ Cost of Living Rider
      ☐ Waiver of Premium Benefit Rider
      ☐ Annual Renewable & Convertible Term Rider (for
         Universal Life only) $_____
      ☐ Annual Renewable Term (ART) Rider to Age 70/90
      ☐ Guaranteed Re-Entry Option (GRO) Rider
      ☐ Other _____
      ☐ Other _____

8. ☐ Alternate Policy  ☐ Additional Policy
   Plan_____  Amount $_____
   ☐ Additional Benefits: ☐W.P.  ☐ADB  ☐Other:_____

9. Complete for Universal Life only:
   a. Proceeds Option:
      ☒ Option 1: The Specified Amount includes the Policy
         Account Value
      ☐ Option 2: The Specified Amount is in addition to the
         Policy Account Value.
   b. Billing Instructions:
      Total First Year Annual Premium Planned $ __4886.00__
      Remainder of First Year Premium to be billed as follows:
      _____
      Planned Future Premiums for Second Year and thereafter:
      ☒ Annual $ __4886.__  ☐ Semi-Annual $_____ (x2)
      ☐ Quarterly $_____ (x4)  ☐ Other (See Item c)_____
   c. Special Planned Premium Arrangements (Attach Illustration):
      If you wish the policy summary to reflect planned future
      premiums which vary over the duration of the policy, please
      indicate here (Example: $1,000 per year for the first 5
      years; $2,000 per year for the next 10 years, etc.).
      _____

10. Amount paid with this application: $_____
    Please read Conditional Receipt.  ☒ NONE

AP-L-H/94                                                   2968

-2-

PART I (continued)

11. Other Proposed Insured(s):

| Name | Sex | Relationship to Proposed Insured | Date of Birth (Mo-Day-Yr) | State/Country of Birth | Driver's License # | Social Security or Tax I.D.# |
|------|-----|----------------------------------|---------------------------|------------------------|--------------------|------------------------------|
|      |     |                                  |                           |                        |                    |                              |
|      |     |                                  |                           |                        |                    |                              |
|      |     |                                  |                           |                        |                    |                              |
|      |     |                                  |                           |                        |                    |                              |

12. For other proposed insured(s) age 18 or older listed in #11 above provide: Name, address and telephone number of employer, occupation & duties, years employed there and current annual income.

_____

_____

_____

_____

_____

13. Life insurance in force on all persons proposed for insurance.

| Name of Proposed Insured | Company | Issue Year | Face Amount | ADB | Purpose (pers/bus.) |
|--------------------------|---------|------------|-------------|-----|---------------------|
| NONE                     |         |            |             |     |                     |
|                          |         |            |             |     |                     |
|                          |         |            |             |     |                     |
|                          |         |            |             |     |                     |

For any Yes answer to Questions 14 a - i, give full details in Remarks section and complete any special form(s) required.

14. HAS ANY PERSON PROPOSED FOR INSURANCE:

|  | Yes | No |
|--|-----|-----|
| a. smoked cigarettes or used tobacco in any other form in the past twelve (12) months? | ☑ | ☐ |
| b. engaged or intend to engage in hang gliding, racing, mountain climbing, skin, scuba or sky diving? (If Yes, complete Hazardous Activities Questionnaire.) | ☐ | ☑ |
| c. had driver's license restricted, revoked or suspended? | ☐ | ☑ |
| d. been convicted of a felony or misdemeanor within the past 10 years? | ☐ | ☑ |
| e. other life or health insurance applications pending? | ☐ | ☑ |
| f. ever had life or health insurance declined, modified or rated? | ☐ | ☑ |
| g. any intention of traveling or residing outside the country? | ☐ | ☑ |
| h. any intention of replacing or changing any life insurance or annuity policy in force in this or any other company? | ☐ | ☑ |
| i. taken within five years or intend to take flights other than as a fare-paying passenger on a regularly scheduled airline? (If Yes, complete Aviation Questionnaire.) | ☐ | ☑ |

15. Complete for Indeterminate Premium Life Policy Only:

I understand that: (a) the premium for the policy applied for may change after the initial guarantee period; (b) the premium then charged is not guaranteed; and (c) the Company may charge the full maximum guaranteed premium.    ☑ Yes    ☐ No

SPECIMEN

PART I (continued)

16. **Complete only if a medical examination is to be taken:**
    Has any person proposed for insurance consulted a physician within the last five years? If answer is "Yes," give dates, names, addresses and reasons for consultations.                                    ☐ Yes   ☐ No

_____
_____
_____
_____

17. **Beneficiary Designation**

| Primary Beneficiary and Address (If Trust, give name and date of Trust) | Relationship to Proposed Insured |
|---|---|
| Kimbal Viscuso | Business Partner (Wife) |
| 6 Shadow Lane | |
| Holmdel  NJ  07235 - 2366 | |

If living, otherwise to: Contingent Beneficiary and Address:

| | |
|---|---|
| | |
| | |

18. **REMARKS**

| Question No. | Details |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

19. Home Office Corrections (not for use with policies issued for delivery in PA): _____

_____
_____

SPECIMEN

PART I (continued)            -4-

## IN CONNECTION WITH THIS APPLICATION FOR INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:

The statements contained here and in Part II of this application and any supplements thereto, copies of which shall be attached to and made a part of any policy to be issued, are true to the best of my (our) knowledge and belief and are made to induce the Company to issue an insurance policy.

No agent or other person has power to make, modify, or discharge any contract of insurance or to bind the Company by making promises respecting benefits upon any policy to be issued. No information as to any matter made a subject of inquiry here and in Part II of this application and any supplements thereto, copies of which shall be attached to and made part of any policy to be issued, shall be considered known by the Company unless set out in writing on this application.

Except as may be provided in a duly issued Conditional Receipt bearing the same number as this application, no insurance shall take effect unless and until the policy has been physically delivered and the first full premium paid during the lifetime of the insured(s) and then only if the person(s) to be insured is (are) actually in the state of health and insurability represented in Parts I and II of this application and any supplements thereto, copies of which shall be attached to and made part of any policy to be issued.

Changes or corrections made by the Company and noted in Part I, Question 19 above are ratified by the Owner upon acceptance of a contract containing this application with the noted changes or corrections. In those states where written consent is required by statute or State Insurance Department regulation for amendments as to plan, amount, classification, age at issue, or benefits, such changes will be made only with the Owner's written consent.

### DECLARATION

I (We) have carefully read the receipt and understand and agree to the terms thereof including the conditions under which a limited amount of insurance may become effective prior to policy delivery. I (We) understand that all premium checks are to be made payable to William Penn Life Insurance Company of New York; checks are not to be made payable to the agent or the payee left blank. I (We) have received the MIB Disclosure and Fair Credit Reporting Act/Abbreviated Notice of Insurance Practices.

City _New York_ State of _N.Y_

Date _7/31/95_

_____
Signature of Witness (Licensed Resident Agent where required by statute or regulation)

_____
Agent Name (if required)-Please Print State/Lic.# (if required)

_____
Signature of Owner, if other than Proposed Insured

_____
Signature of Proposed Insured, or parent or legal guardian if Proposed Insured is a minor

_____
Signature of Spouse or Other Proposed Insured

_____
Signature of Other Proposed Insured

_____
Signature of Other Proposed Insured

AUTHORIZATION. A photocopy of this authorization shall be as valid as the original, which shall be valid for 30 months from the date below. I (We) hereby authorize any physician, medical practitioner, hospital, clinic or medical or medically related facility, insurance company, employer, consumer reporting agency, the Medical Information Bureau or any other organization, institution or person having any information (including diagnosis, treatment or prognosis) about my (our) physical or mental condition or any other information about me (us) or my (our) health, to give to William Penn Life Insurance Company of New York, its authorized representatives or its reinsurers any such information. This includes data related to drugs or alcoholism. It also includes data obtained in connection with the preparation of any investigative consumer report as defined under the Fair Credit Reporting Act(s) and referred to elsewhere in this application. To expedite the collection of data, I (We) authorize all such sources, except the Medical Information Bureau, to give the data to any agency employed by William Penn Life Insurance to collect and transmit such data. I (We) further authorize William Penn Life Insurance to prepare or obtain an investigative consumer report in connection with this application. If an investigative consumer report is prepared, I (we) elect to be interviewed: ☐ Yes    ☐ No.

I (We) am (are) aware that I (we) am (are) entitled to receive a copy of this authorization form.    No. 11188

Date _7/31/95_

_____
Signature of Proposed Insured, or parent or legal guardian if Proposed Insured is a minor

_____
Signature of Other Proposed Insured

_____
Signature of Other Proposed Insured

-8-

## William Penn Life Insurance Company of New York

### PERSONAL INFORMATION STATEMENT

COMPLETE ON ALL BUSINESS CASES AND IF REQUIRED ON NON-BUSINESS CASES
(REFER TO CURRENT UNDERWRITING REQUIREMENTS CHART)

1.  a.  Personal Finances for each person proposed for insurance:

| Name of Proposed Insured | Total Assets | Total Liabilities | Net Worth | Earned Income | Unearned Income |
|---|---|---|---|---|---|
| Jon Fieldman | 750,000 + | — | 750,000 + | 50,000 + | — |
| | | | | | |
| | | | | | |
| | | | | | |

    b.  Has any person proposed for insurance ever filed for bankruptcy?  ☐ Yes  ☒ No
       If "Yes," provide details below.

2.  What is the purpose of this insurance? (i.e., Keyman, Stock Redemption, (Buy and Sell) Creditor, Estate Liquidity, Other):
    Buy /Sell

3.  How was the face amount determined?  Stock holders + acct.

4.  Business Finances (Complete only if this is business insurance):
    a.  Total Assets $ 1,000,000 +  b.  Total Liabilities $ —  c.  Net Worth $ 1,000,000
    d.  Net Profit After Taxes for Past Two Years: Last Year $ _____  Previous Year $ _____
    e.  Is the business a (Corporation) Partnership, or Proprietorship? (circle one)  S Corp -
    f.  How long has the business been established?  10 YRS
    g.  What is the nature of the business?  Restaurant
    h.  What is the percentage ownership of this firm?  50
    i.  Is there business insurance applied for or in force on other key members of this firm?  ☒ Yes  ☐ No
       If "Yes," provide details below.
    j.  Has the proposed insured's company ever filed for bankruptcy?  ☐ Yes  ☒ No
       If "Yes," provide details below.

5.  Are there any special considerations or circumstances relevant to this case? _____

6.  Details:  NO PROFIT DUE TO S Corp STATUS - all income passes thru.

The statements contained in this PERSONAL INFORMATION STATEMENT, a copy of which shall be attached to and made part of any policy to be issued, are true to the best of my knowledge and belief and are made to induce the company to issue an insurance policy.

| | |
|---|---|
| _Signature of Witness_ | _Signature of Proposed Insured_ |
| 7/31/95 | |
| _Date_ | _Signature of Other Proposed Insured_ |
| _Signature of Other Proposed Insured_ | _Signature of Other Proposed Insured_ |

SPECIMEN

PART II OF APPLICATION TO WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
EXAMINATION TO BE MADE IN PRIVATE. PLEASE READ ALL QUESTIONS TO APPLICANT.
ANSWERS TO BE RECORDED BY THE MEDICAL EXAMINER IN HIS OWN HANDWRITING.

| 1. PROPOSED INSURED'S NAME | A. DATE OF BIRTH | B. HEIGHT | C. WEIGHT | D. Change in weight in past 12 months? (Give reason) Bs. Loss ☐ Gain ☐ |
|---|---|---|---|---|
| Jon M Fieldman | month 8 day 24 yr 45 | 5'10 | 180 | |

E. Name of Personal Physician: Dr Genaro Locurcio
Physician's Address: 112 Lexington Ave NYC NY 10016
Physician's Phone No: (212) 696-2680

Date and reason last consulted - if none, so state: 7/05 - Check up - LAB, EKG - (WNL)

Give full details if answer to Questions 2 through 11 is Yes.
Details, Dates, Doctors' Names & Addresses

| | | YES | NO | |
|---|---|---|---|---|
| 2. | Do you have any physical defect? | ☐ | ☑ | (4a) 10 cigarettes per Day - (20 yrs) |
| 3. | Have you applied for or received disability benefits from any source? | ☐ | ☑ | |
| 4. | HAVE YOU: | | | |
| a. | smoked cigarettes in the past 12 months? | ☑ | ☐ | (7F) 1985 Dr Pitts - NYC NY E 65th St PASSED Kidney STONE |
| b. | used tobacco in any other form in the past 12 months? | ☐ | ☑ | Hosp. in Connecticut Does not recall NAME |
| 5. | HAVE YOU: | | | 1992 - passed Kidney |
| a. | used barbiturates, heroin, cocaine, marijuana, or any other illegal, restricted, or controlled substance except as prescribed by a physician? If Yes, when, how often? | ☐ | ☑ | STONE - AT Home - Dr Pitts (See Above) |
| b. | been advised to seek, or received treatment for drug use, or been arrested for drug use or distribution? | ☐ | ☑ | |
| 6. | HAVE YOU: | | | (7L) Dr Schwartz - NYC NY |
| a. | ever used alcoholic beverages? If Yes, how often and how many ounces? | ☐ | ☑ | 55 E 86 St St Physical EXAM 1993 |
| b. | been advised to limit or cease the use of alcoholic beverages? | ☐ | ☑ | LAB, Chest X-Ray EKG (WNL) |
| c. | been counseled, sought help or treatment, or been advised to undergo counseling or treatment for alcohol problems? | ☐ | ☑ | |
| d. | attended or joined any organization for alcohol or related problems? | ☐ | ☑ | |
| 7. | HAVE YOU EVER HAD: | | | |
| a. | convulsions, paralysis, neuritis, nervous breakdown, dizziness, fainting spells, migraine headaches, nervous or mental disorders? | ☐ | ☑ | |
| b. | High blood pressure, chest pain, palpitation, heart attack, disorder of heart or blood vessels? | ☐ | ☑ | |
| c. | hemorrhage, asthma, tuberculosis, emphysema, disorder of respiratory system? | ☐ | ☑ | |
| d. | shortness of breath, chronic hoarseness or cough, blood spitting? (past 10 years) | ☐ | ☑ | |
| e. | chronic indigestion, ulcer, hernia, colitis, intestinal bleeding, disorder of stomach, gall bladder, liver, digestive or abdominal organs? | ☐ | ☑ | |
| f. | kidney stone, diabetes, sugar, albumin, pus, or blood in urine, disorder of kidneys, bladder, genito-urinary organs? | ☑ | ☐ | |
| g. | rheumatic fever, arthritis, gout, disorder of muscles, bones, joints or spine? | ☐ | ☑ | |
| h. | impairment of vision or hearing or disease of eyes, ears, nose or throat? | ☐ | ☑ | |
| i. | tumor, cancer, venereal disease, disorder of blood, skin, thyroid or other glands? | ☐ | ☑ | |
| j. | treatment or observation in any hospital or institution? (past 5 years) | ☐ | ☑ | |
| k. | x-rays, electrocardiograms, blood studies or other diagnostic tests other than an HIV or HTLV-III test (past 5 years). Give details. | ☐ | ☑ | |
| l. | treatment or consultations with any physicians or practitioners, other than as stated above (past 5 years). Give details. | ☑ | ☐ | |
| 8. | Have you been diagnosed by or received treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☑ | |
| 9. | Have you in the past 5 years been advised to have or do you contemplate a surgical operation? | ☐ | ☑ | |
| 10. | Are you now pregnant? (If so, how many months) | ☐ | ☑ | |

| 11. Provide family history | Age, if Living | Age at Death | Cause of Death |
|---|---|---|---|
| Mother | 83 | | |
| Father | | 83 | NATURAL |
| ① Brothers and Sisters | 49 | | |

The statements and answers are true to the best of my knowledge and belief and are made for the purpose of inducing the company to issue insurance on my life.

AUTHORIZATION - A photo copy of this authorization shall be as valid as the original, which shall be valid for 30 months. I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or my health, to give William Penn Life Insurance Company of New York or its reinsurers any such information. This includes data related to drugs, alcoholism or mental illness. To expedite the collection of data, I authorize all such sources, except the Medical Information Bureau, to give the data to any agency employed by William Penn Life Insurance to collect and transmit such data. I am aware that I am entitled to receive a copy of this authorization form.

Signed at NYC (City) NY (State)    Proposed Insured _Carole Santaella_

Date 8-28-96    Witness _Carole Santaella_ Examiner

MP-1000/86 NY    2540

SPECIMEN

## PART III MEDICAL EXAMINER'S REPORT
### WHERE INDICATED, GIVE FULL DETAILS UNDER NUMBER 9 OR IN A SEPARATE LETTER TO THE MEDICAL DIRECTOR.

1. How long have you known applicant? _____ Yrs.

2. Is general appearance as to health and habits good? ☑Yes ☐No
If "No" give details under No. 9)

3. a. Height in shoes __5__ ft. __10__ in.   Weight (clothed) __180__ lbs.
   Did you measure? ☑Yes ☐No
   Did you weigh? ☑Yes ☐No
   b. Any change in weight in past year? Gain __0__ lbs. Loss __0__ lbs.
   c. Reason for any change? _____
   Present weight maintained how long? __34 RS__
   d. Chest: Inspiration __10½__ ins. Expiration __37½__ ins. Abdomen __33__ ins.

4. Cardiovascular Examination:
   a. Blood Pressure: Systolic __120__ Diastolic __88__
   If pressure is above 140 systolic or 90 diastolic, take two additional readings at least five minutes apart.

| | Before Exercise | Immediately After | 3 Minutes After |
|---|---|---|---|
| b. Pulse Rate | 72 | | |
| Irregularities | 0 | | |

c. Any dyspnea, pain or discomfort after exercise? ☐Yes ☐No
d. Any sclerosis of peripheral vessels, clubbing, or cyanosis? ☐Yes ☐No
e. Is the heart enlarged? ☐Yes ☐No
(Locate apex by [X] on diagram)
f. Is there a murmur? ☐Yes ☐No
(Examine heart in erect and recumbent positions.)

TIMING:   Systolic ☐   Presystolic ☐   Diastolic ☐
INTENSITY:   Faint ☐   Moderate ☐   Loud ☐
GRADING:   ☐1 ☐2 ☐3 ☐4 ☐5 ☐6

PLEASE COMMENT on the presence or absence of thrills, or any undue accentuation of heart sounds, and on the affects of exercise, change of position, or phase of respiration.

ON DIAGRAM, LOCATE: Apex by  X    Area of murmur by ⟨⟩
Point of maximum intensity by ◯   Transmission by →

g. Based on the history and findings, what is your impression of the cardiac status?
....................................................
....................................................
....................................................
....................................................
....................................................
....................................................

| PLEASE CHECK (✓) APPROPRIATE COLUMN | YES | NO |
|---|---|---|
| 5. Do you find any evidence of past or present disease of: | | |
| a. Brain or nervous system? (Test patellar and pupillary reflexes and observe gait.) | ☐ | ☐ |
| b. Lungs or respiratory organs? | ☐ | ☐ |
| c. Abdomen? (Describe scars, tenderness or masses. If a hernia is present, give size and reducibility.) | ☐ | ☐ |
| d. Genito urinary system? (Examine prostate if indicated by history.) | ☐ | ☐ |
| e. Eyes, ears, nose or throat? | ☐ | ☐ |
| f. Bones, lymph glands, thyroid or skin? | ☐ | ☐ |
| g. Any other part of the body? | ☐ | ☐ |
| 6. a. Any varicosities, edema, amputation or deformity? | ☐ | ☐ |
| b. Artificial limb, brace or crutch used? | | ☑ |

7. Amount of insurance applied for: $ __350,000__

8. Urinalysis — Repeat if Specific Gravity is below 1.012.
SEND A SPECIMEN TO THE HOME OFFICE IF:
a. Amount in Question 7 above is:
   $100,000 and Over — Ages 0 - 80
   Any Amount — Over Age 60

| | YES | NO |
|---|---|---|
| b. History of urinary disease or abnormal findings: | ☐ | ☑ |
| c. History or finding of hypertension: | ☐ | ☑ |
| Specific Gravity _____ Albumin | ☐ | ☑ |
| Sugar | ☐ | ☑ |
| Are you sending a specimen to the Home Office? | ☑ | ☐ |

9. DETAILS AND ADDITIONAL REMARKS:

---

**TO THE MEDICAL EXAMINER:** Any erasures or alterations in this report should be initialed by you. Send this report, or any information which you prefer not to embody in this report, direct to the Medical Department of the Company.

**IMPORTANT:** If the Examiner has any information which may adversely affect the risk, please indicate such information under item 9.

➤➤ Mail when completed to: Medical Director - William Penn Life Insurance Company of New York
100 Quentin Roosevelt Blvd • PO Box 519 • Garden City NY 11530



Flexible Premium Adjustable Life Insurance Policy
Adjustable Death Benefit Payable Prior to the Maturity Date
Flexible Premiums Payable During Insured's Lifetime to Maturity Date
Non-Participating - No Dividends

SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261
                                    AGE 47 M SMOKER      TABLE STANDARD
                                    POLICY DATE:10/03/1995

ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:          4886
INITIAL SPECIFIED AMOUNT:        350000          MATURITY DATE:10/03/2043
OTHER COVERAGES:   NONE

| | | BASED ON CURRENT FACTORS | | | BASED ON GUARANTEED FACTORS | | |
| POLICY YEAR | ANNUAL PREMIUM | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT | POLICY ACCOUNT VALUE | CASH SURRENDER VALUE | DEATH BENEFIT |
|---|---|---|---|---|---|---|---|
| 01 | 4886 | 2778 | 0 | 350000 | 2458 | 0 | 350000 |
| 02 | 4886 | 5573 | 0 | 350000 | 4720 | 0 | 350000 |
| 03 | 4886 | 8376 | 0 | 350000 | 6838 | 0 | 350000 |
| 04 | 4886 | 11354 | 8 | 350000 | 8794 | 0 | 350000 |
| 05 | 4886 | 14475 | 4160 | 350000 | 10540 | 225 | 350000 |
| 06 | 4886 | 17754 | 8471 | 350000 | 12034 | 2751 | 350000 |
| 07 | 4886 | 21257 | 13005 | 350000 | 13218 | 4966 | 350000 |
| 08 | 4886 | 24962 | 17742 | 350000 | 14027 | 6807 | 350000 |
| 09 | 4886 | 28909 | 22720 | 350000 | 14416 | 8227 | 350000 |
| 10 | 4886 | 33139 | 27982 | 350000 | 14323 | 9166 | 350000 |
| 11 | 4886 | 37574 | 33448 | 350000 | 13703 | 9577 | 350000 |
| 12 | 4886 | 42199 | 39105 | 350000 | 12485 | 9391 | 350000 |
| 13 | 4886 | 47146 | 45083 | 350000 | 10607 | 8544 | 350000 |
| 14 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| 15 | 4886 | 57968 | 57968 | 350000 | 4389 | 4389 | 350000 |
| 16 | 4886 | 63768 | 63768 | 350000 | 0 | 0 | 0 |
| 17 | 4886 | 69725 | 69725 | 350000 | 0 | 0 | 0 |
| 18 | 4886 | 75834 | 75834 | 350000 | 0 | 0 | 0 |
| 19 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| 20 | 4886 | 88517 | 88517 | 350000 | 0 | 0 | 0 |
| AGE 60 | 4886 | 52394 | 51363 | 350000 | 7957 | 6926 | 350000 |
| AGE 65 | 4886 | 82092 | 82092 | 350000 | 0 | 0 | 0 |
| AGE 70 | 4886 | 116227 | 116227 | 350000 | 0 | 0 | 0 |



WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX          POLICY #:0700014261
                                           AGE 47 M SMOKER     TABLE STANDARD
                                           POLICY DATE:10/03/1995

ADJUSTABLE LIFE INSURANCE POLICY WITH LEVEL DEATH BENEFIT OPTION

INITIAL ANNUAL PREMIUM:          4886
INITIAL SPECIFIED AMOUNT:        350000          MATURITY DATE:10/03/2043
OTHER COVERAGES:    NONE

GUARANTEED VALUES ARE BASED UPON GUARANTEED COST OF INSURANCE AND EXPENSE
CHARGES AND 4% INTEREST.  CURRENT VALUES ARE BASED UPON THE CURRENT
COST OF INSURANCE AND EXPENSE CHARGES AND THE CURRENT INTEREST RATE,
WHICH VARIES BY POLICY ACCOUNT VALUES AS FOLLOWS:

        POLICY ACCOUNT VALUE        CURRENT INTEREST RATE
            0 - 9,999                     6.50%
        10,000 - 19,999                   7.00%
        20,000 AND OVER                   7.25%

THE CURRENT INTEREST RATES ARE GUARANTEED NOT TO CHANGE DURING THE FIRST
POLICY YEAR.

THE PORTION OF POLICY ACCOUNT VALUE WHICH EQUALS THE AMOUNT OF ANY UNPAID
LOAN IS CREDITED WITH 6% INTEREST.  ALL INTEREST RATES SHOWN ARE EFFECTIVE
ANNUAL RATES.  INTEREST IS CREDITED MONTHLY AFTER DEDUCTION OF EXPENSE
AND COST OF INSURANCE CHARGES.

PREMIUMS ARE FLEXIBLE.  PREMIUMS ILLUSTRATED ARE BASED ON INTENDED PREMIUMS
AND, IF PAID OTHER THAN ANNUALLY, POLICY ACCOUNT VALUES AND CASH SURRENDER
VALUES WILL BE LESS THAN IF PREMIUMS WERE PAID ON AN ANNUAL BASIS.

THE POLICY ACCOUNT VALUES, CASH SURRENDER VALUES AND DEATH BENEFIT ILLUSTRATED
ARE END OF THE POLICY YEAR VALUES.

COVERAGE WILL CEASE IN YEAR 16 UNLESS THE PREMIUM IS INCREASED ON THE
GUARANTEED BASIS.

THE POLICY LOAN INTEREST RATE IS 7.4% PAYABLE IN ADVANCE.

A SERVICE CHARGE OF $25.00 WILL BE DEDUCTED FROM THE POLICY ACCOUNT VALUE
EACH TIME A PARTIAL SURRENDER AMOUNT IS PAID.

THE TAX STATUS OF THIS CONTRACT AS IT APPLIES TO THE HOLDER OF THIS POLICY
OR CONTRACT SHOULD BE REVIEWED EACH YEAR.

PAGE 2 OF 3          SPECIMEN

WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK
STATEMENT OF POLICY COST AND BENEFIT INFORMATION

STANDARD SUMMARY PENN OPTION FLEX            POLICY #:0700014261

WILLIAM PENN LIFE INSURANCE COMPANY          ELLIOTT K ARNOLD
     OF NEW YORK                             11 GRACE AVENUE
100 QUENTIN ROOSEVELT BLVD PO BOX 519        SUITE 402
GARDEN CITY, NEW YORK    11530               GREAT NECK NY 11021
                                             PREPARED ON:  10/05/95

|                              | GUARANTEED VALUES | PROJECTED VALUES |
|------------------------------|-------------------|------------------|
| FLEXIBLE PREMIUM ADJUSTABLE LIFE |               |                  |
| 10 YEAR SURRENDER COST       | 11.977            | 7.907            |
| 10 NET PAYMENT               | 13.960            | 13.960           |
| 20 YEAR SURRENDER COST       | .000              | 6.676            |
| 20 YEAR NET PAYMENT          | .000              | 13.960           |

AN EXPLANATION OF THE INTENDED USE OF THE INDICES IS PROVIDED IN THE LIFE
INSURANCE BUYER'S GUIDE.

SPECIMEN

# Exhibit D

11/02/2006    15:47    EBBINSANDGREEN    *    NO.332    001

The Ticket Box
212 S Central Ave
Suite 509
Fort Lee NJ 07024

201461-4606

# DURABLE POWER OF ATTORN

When Recorded, Mail to:

Ronald G. Wilson, Esq.
3300 North Central Avenue
Suite 1800
Phoenix, Arizona 85012

EFFECTIVE DATE: Immediately

I, JON FIELDMAN, the Principal and a resident of Maricopa County, State of Arizona, have designated, constituted and appointed, and by these presents do hereby designate, constitute and appoint MICHAEL BIRNS, a resident of the State of New York, my Attorney-in-Fact and Agent (hereinafter called "Agent"), in my name and for my benefit as follows:

1. **Advisory Notice to Agent.** There have been recent changes to Arizona Revised Statute Section 14-5506, a statute which governs the exercise of Powers of Attorney. Under that new statute an agent cannot receive any benefits from Principal unless those benefits are specifically identified in detail within this instrument or within a written contract. Otherwise, the agent could be subject to criminal prosecution, or subject to the penalty provisions of Arizona Revised Statute Section 46-456, which authorizes the loss of the agent's right to inherit from principal as well as payment of treble damages and attorney fees. An agent should carefully review these statutes or consult with a knowledgeable attorney prior to exercising the authority granted by this Power of Attorney;

2. **General Grant of Power.** To exercise or perform any act, power, duty, right or obligation whatsoever that I now have or may hereafter acquire, relating to any person, matter, transaction or property, real or personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the following specifically enumerated powers. I grant to my Agent full power and authority to do everything necessary in exercising any of the powers herein granted, as fully as I might, or could do, if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my Agent shall lawfully do, or cause to be done, by virtue of this Power of Attorney and the powers herein granted;

3. **Powers of Collection and Payment.** To forgive, request, demand, sue for, recover, collect, receive, hold all such sums of money, debts, dues, commercial paper, checks, drafts, accounts, deposits, legacies, bequests, devises, notes, interests, stock certificates, bonds, dividends, certificates of deposit, annuities, pension, profit sharing, retirement, social security, insurance, and other contractual benefits and proceeds, all documents of title, all property, real or personal, intangible and tangible property and property rights, and demands whatsoever, liquidated or unliquidated, now or hereafter

11/02/2006    15:47                                                    NO.332    002

..... 19, 2006  1:30PM    FOBBINSANDGREEN                      ...TE   P. 1

owned by, or due, owing, payable or belonging to me, or in which I have or may thereafter acquire an interest; to have, use, and take all lawful means and equitable and legal remedies and proceedings in my name for the collection and recovery thereof, and to adjust, sell, compromise, and agree for the same, and to execute and deliver for me, on my behalf, and in my name, all endorsements, releases, receipts, or other sufficient discharges for the same;

4.    **Power to Acquire and Sell.**    To acquire, lease, purchase, exchange, grant options to sell, and sell and convey real or personal property, mortgage real property, tangible or intangible, or interests therein, on such terms and conditions as my Agent shall deem proper; to foreclose on mortgages and deeds of trust, to take title to property in my name if he or she thinks proper, and to execute, acknowledge and deliver deeds to real property, mortgages, releases, satisfactions and other instruments relating to real estate which he or she considers appropriate.    My Agent may accept the conveyance of real property in my name as a joint tenant with the right of survivorship with my spouse, including property wherein my said Agent is one of the joint tenants of my spouse, as the case may be;

5.    **Management Powers.**    To maintain, repair, improve, invest, manage, insure, rent, lease, encumber, and in any manner deal with any real or personal property, tangible or intangible, or any interest therein, that I now own or may hereafter acquire, in my name and for my benefit, upon such terms and conditions as my Agent shall deem proper;

6.    **Banking Powers.**    To make, receive and endorse checks and drafts, deposit and withdraw funds, acquire and redeem certificates of deposit, in banks, savings and loan associations and other institutions, execute or release such deeds of trust or other security agreements, as may be necessary or proper in the exercise of the rights and power herein granted, to use any credit card held in my name and to make such purchases and sign such charge slips as may be necessary to use such credit cards;

7.    **Motor Vehicles.**    To apply for a Certificate of Title upon, and endorse and transfer title thereto, for any automobile, truck, pickup, van, motor cycle or other motor vehicle, and to represent in such transfer assignment that the title to said motor vehicle is free and clear of all liens and encumbrances, except those specifically set forth in such transfer assignment;

8.    **Business Interests.**    To conduct or participate in any lawful business of whatever nature for me and in my name; execute partnership agreements and sell, liquidate or dissolve any business; elect or employ officers, directors and agents; carry out the provisions of any agreement for the sale of any business interest or the stock therein; and exercise voting rights with respect to stock, either in person or by proxy, and exercise stock options;

9.    **Principal's Support.**    To do all acts necessary for maintaining Principal's customary standard of living, to provide for living quarters by purchase, lease, or other arrangement, or by the payment of the operating costs of Principal's existing quarters,

2

11/02/2006    15:47                                                                            NO.332    D03

APR.19. 2008  8:08PM    ROBBINSANDGREEN                          NO.7000   P. 3

including interest, amortization payments, repairs, and taxes, to provide normal domestic help for the operation of Principal's household, and provide clothing, transportation, medical, food and incidentals for Principal;

10.   **Medicaid Or Other Governmental Benefits.**  To utilize all lawful means and methods to recover such assets and rights, qualify Principal for and claim benefits provided by any governmental agency or body, to include Medicaid, Medicare, supplemental Social Security, and Social Security Disability Insurance.  This authority includes converting my assets into assets that do not disqualify me from receiving such benefits and to make gifts in accordance with the gifting authority granted elsewhere in this instrument, and to consider all rules, regulations, and statutes regarding disqualification or other adverse actions that may result from such gifting;

P.I.

W.I.

11.   **Gifts.**  To make gifts, to include the forgiveness of indebtedness, to my spouse, my children and descendants (if applicable) which may include my Agent, in whatever amounts and for whatever purposes as Agent deems appropriate.  To make gifts to any tax-exempt charitable organization recognized under Internal Revenue Code ("IRC") Sections 170(c) or 501(c)(3) and to those persons named as beneficiaries in the Principal's most recent Will or Trust, life insurance policy, retirement benefits or payable upon death designation.  As to any donee, these amounts shall not exceed the largest amount which then qualifies for the annual exclusion allowed for Federal Gift Tax Purposes as set forth in Section 2503 of the IRC.  The authority to make gifts is non-cumulative and shall lapse at the end of each calendar year.  All gifts may be made outright, in trust or to any guardian, conservator, or custodian of an eligible donee and gifts are not required to be in equal amounts and are not required to be made to all eligible donees.  Agent shall take into consideration past history of gifts by me and shall not make any gifts if it is not in my best interest as determined by agent.  The Agent is also specifically given power and authority to make gifts or transfers of Principal's interest in real or personal property in accordance with this paragraph to avoid estate recovery against such real or personal property under the Medicaid (AHCCCS/ALTCS) programs, including the power and authority to disclaim the Principal's community property interest in real and/or personal property unto the spouse;

Such gifts may include gifts or transfers to a trust, revocable or irrevocable, whether in existence or created by the Agent under this power of attorney for any purpose as set forth herein;

Gifts made for the purpose of qualifying the Principal for Medicaid (AHCCCS/ALTCS) benefits may result in a period of disqualification from such benefits;

3

371329-1

11/02/2006 16:28 FAX 5169440201          EKA PLANNING SERVICES                    005/013
11/02/2006   15:47                                                        NO.332   D04

-- -::,  ::::  ::-:-:  F;66INSANDGREEN                            ::-:::  :.:

This Durable Power of Attorney is not intended to create a general power of appointment under IRS Code Section 2041 and any gifts to the Agent must be made in compliance with the terms of this paragraph;

P.I. _____

W.I. _____

12.   **Tax Powers.**  To prepare, sign and file joint or separate income tax returns or declarations of estimated tax for any year, or years; to prepare, sign and file gift tax returns with respect to gifts made by me for any year, or years; to consent to any gift and to utilize any gift-splitting provision or other tax election; and to prepare, sign and file any claims for refund of any tax; to represent me in any proceedings now pending or hereafter arising between me and the Treasury Department of the United States Government, or any other federal, state, or foreign governmental authorities, relative to my income, gift, estate, or other tax liability for all years; granting unto my said attorney full power in my name and on my behalf to appear before proper officials of the Treasury Department, or any other federal, state or foreign government officials; to adjust, settle, compromise or otherwise dispose of all questions, relative to any of the said tax liabilities; to receive copies of my tax returns and any papers, letters or other communications concerning any or all of said tax liabilities; to sign any waivers of the statute of limitations or any other waivers; to sign closing agreements for final determination of tax liability, to receive, to endorse and collect, checks and settlement of any refund; to execute and file petitions to the Tax Court of the United States, and all other papers in connection with such proceeding; to substitute in the place and stead of said attorney, any other attorney or attorneys, and to appoint association attorneys, and to deem this instrument to be the equivalent of the Internal Revenue Service Form 2848, or other similar form used by State and local taxing authorities;

13.   **Safe Deposit Boxes.**  To have access at any time, or times, to any safe deposit box rented by me, wheresoever located, and to remove all, or any part of the contents thereof, and to surrender or relinquish said safe deposit box, and any institution in which any such safe deposit box may be located shall not incur any liability to me or my estate, as a result of permitting my Agent to exercise this power;

14.   **Retirement Assets and Insurance Contracts.**  To manage any interest which I may have in any retirement asset or insurance contract, which shall include any interest which I may have in any qualified retirement plan, annuity, or account, such as any pension, annuity or other plan, or account governed by ERISA, CSRS, or FERS, any IRA, SEP IRA, or SIMPLE IRA, any tax-sheltered annuity, any deferred compensation plan, any modified endowment contract, or any MSA. The authority to manage any such interest shall include making any elections or undertaking other acts which are required under applicable laws to create, maintain or enhance any tax-advantage status of my interest, including authorizing the timing and amount of any distributions from the retirement assets or insurance contracts, or payment for premiums, or authorizing payment for premiums for

4

271320 1

any insurance contract, but shall not include the authority to change the name of any beneficiary in any retirement asset or insurance contract;

P.I.

W.I.

15. **Power to Sue Third Parties.** If any third-party (including stock transfer agents, title insurance company, banks, credit unions, and savings and loan associations) with whom my Agent seeks to transact, refuses to recognize my Agent's authority to act on my behalf pursuant to this Power of Attorney, I authorize my Agent to sue and recover from such third-party all resulting damages, costs, expenses and attorney fees that are incurred because of such failure to act. The cost, expenses, and attorney fees incurred in bringing such action shall be charged against my general assets, to the extent that they are not received from said third-party;

16. **Benefits Received by Agent.** It is my intention that my Agent be reasonably compensated for the services rendered on my behalf and be reimbursed for any expenses paid by the Agent which were incurred on my behalf. Reasonable compensation shall not exceed the hourly wage or salary equivalent which the Agent customarily receives in his or her regular employment. Reimbursement shall include, but is not limited to, monies paid for medications, medical co-payments, fees for medical, nursing and care-giver services, household or personal incidentals, automobile maintenance and repair, lawn services or landscaping, fees for professional services, reasonable travel or lodging costs in performance of the duties created by this Power of Attorney, maintenance and repair of my residence and care of my pets. Benefits authorized to be received by my Agent shall include any imputed rent deemed to exist due to any arrangement, agreement or understanding between my Agent and I which allows my Agent to live rent-free in my residence or other property owned by me. Specifically, I grant to my Agent the ability to inherit from me, if I specifically name them in my Will or Trust;

P.I.

W.I.

17. **Interpretation and Governing Law.** This instrument is to be construed and interpreted as a general durable power of attorney. The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my Agent. This instrument is executed and delivered in the State of Arizona, and the laws of the State of Arizona shall govern all questions as to the validity of this power and the construction of its provisions;

18. **Third-Party Reliance.** Third parties may rely upon the representations of my Agent, as to all matters relating to any power granted to my Agent, and no person who may act in reliance upon the representations of my Agent, or the

5

271339-1

authority granted to my Agent shall incur any liability to me or my estate as a result of permitting my Agent to exercise any power;

19.    **Incapacity or Disability of Principal.**    This General Power of Attorney shall not be affected by my incapacity or disability and shall remain in full force and effect until revoked. This General Power of Attorney may be revoked by the Principal giving actual written notice to anyone dealing with the Attorney-in-Fact, or by recording a Revocation of Power of Attorney with the County Recorder of Maricopa County, Arizona. If this General Power of Attorney is not revoked within six (6) months from its effective date by recording a Revocation, it shall be considered to be renewed and effective for an additional six (6) months period until either the recording of the Revocation of Power of Attorney, or by actual notice to anyone dealing with the Attorney-in-Fact. Anyone dealing with the Attorney-in-Fact, shall be relieved from knowledge as to its revocation, until actual receipt of a recorded Revocation of said Power of Attorney. The failure of the Principal to record any Revocation shall be construed as a renewal of the Power of Attorney. My physician's declaration in writing of my incapacity or disability shall be determinative hereunder;

20.    **Transfer of Assets.**    To transfer any assets of mine, whether real or personal property, to the Trustee of any Revocable Trust established by me or for me, which provides benefits for me during my lifetime, and to establish such Revocable Trust for me, provided that the distribution after my death from any such Trust should conform to any estate plan that I have previously established by Will or otherwise with respect to the assets transferred;

21.    **Power to Create and Fund Trusts.**    To convey and transfer any of my property to a trustee who shall hold the same for my benefit, my spouse's benefit, and/or the benefit of my children and other members of my immediate family upon such trust terms and conditions as my Agent shall deem desirable and to establish a revocable trust for me, or trust pursuant to 42 U.S.C. Section 1396p(d)(4), provided that the distribution after my death from any such trust should conform to any estate plan that I have previously established by Will or otherwise with respect to assets transferred;

P.I. _____

W.I. _____

22.    **Tangible Personal Property.**    To distribute during my lifetime any bequests of tangible personal property which I have made by Will or dispositions of such property held in Trust or contained in a Memorandum referred to in a valid Will or Trust instrument when, in my agent's good faith determination, I am incapacitated to the point where I am unable to make decisions with regard to such property and I am unlikely to recover to the point where I can make such decisions in the future, provided that neither

6

11/02/2006 16:31 FAX  5169440201          EKA PLANNING SERVICES                    ☒008/013
11/02/2006    15:47                                              NO.332    P07

·11/19/2006  3:52PM   F568!NSANDGREEN                           LI.7095   P. 7

such property nor the proceeds from the sale of such property is necessary for my health, support, or comfort;

P.I.

W.I.

23.    **Disclaimer of Beneficial Interest.**  To renounce and disclaim any property or interest in property or powers to which for any reason and by any means I may become entitled, whether by gift or testamentary disposition; to release or abandon any property or interest in property or powers which I may now or hereafter own, including interest in or rights over trust assets (including the right to alter, amend, revoke or terminate to effect the disclaimer) and to exercise any right to claim an elective share in any estate or under any Will, and in exercising such discretion, my Agent may take into account such matters as shall include, but shall not be limited to, any reduction in estate or inheritance taxes on my estate, and the effect of such renunciation or disclaimer upon persons interested in my estate and persons who would receive the renounced or disclaimed property;

P.I.

W.I.

IN WITNESS WHEREOF, I, the Principal, execute this document intending it to be effective on the date that it is signed.  I understand that (a) this document gives my Agent serious powers over me and my assets, (b) the powers to continue after I become incapacitated, or disabled and (c) I can revoke and cancel this document at any time and for any reason, or no reason.  Further, I, the Principal sign my name to this Power of Attorney on the date indicated below and being first duly sworn , declare to the undersigned authority that I sign and execute this instrument as my Power of Attorney and that I sign it willingly, or willingly direct another to sign for me, or sign by an X which shall be witnessed, and that I execute it as my free and voluntary act for the purposes expressed in the Power of Attorney and that I am eighteen (18) years of age or older, of sound mind, and under no constraint or undue influence.  Further, I direct that photographic copies of this Power be made, which will have the same force and effect as the original.

271325-1

11/02/2006  15:31 FAX  5168440201          EKA PLANNING SERVICES                    ☑008/013
11/02/2006  15:47                                                              NO.332  ☐08

DATED at _Phoenix_ _Arizona_, on _January 31st_
_____, 2005.

**JON FIELDMAN**
8270 E. Wood Drive
Scottsdale, Arizona 85260

I, _Roberta M. Carlson_, the Witness, sign my name to the foregoing Power of Attorney, being first duly sworn and do declare to the undersigned authority that the Principal signs and executes this instrument as his/her Power of Attorney and that he/she signed it willingly, or willingly directs another to sign for him/her, and that I, in the presence and hearing of the Principal, sign this Power of Attorney as Witness to the Principal signing and that to the best of my knowledge, the Principal is eighteen (18) years of age or older, of sound mind and under no constraint or undue influence.

_Roberta M. Carlson_
Witness
(Witness must not be agent, agent's spouse or agent's child)

_January 31, 2005_
Date

STATE OF ARIZONA      )
                      ) ss.
County of Maricopa    )

Subscribed, sworn to and acknowledged before me by **JON FIELDMAN**, the Principal, and subscribed and sworn to before me by _Roberta M. Carlson_
_____, the witness, this _31st_ day of _January_, 2005.

_____
Notary Public

My Commission Expires:

_5-18-2006_

PI=Principal's Initials
WI=Witness' Initials

8

271)320-1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK,<br><br>      Plaintiff,<br><br>  -against-<br><br>KIMBAL VISCUSO,  CHARLES M. BIRNS and BETH S. MARTIN-BIRNS<br><br>      Defendants. | **Civil Action No. 08 Civ. 1141 (WCC)**<br><br><br>**ORDER** |

This motion having been brought before this Court by way of the motion of interpleader-defendant Kimbal Viscuso, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, to dismiss this action based upon the doctrine of unclean hands, or in the alternative for abstention pursuant to the discretionary power of the Court to decline to hear matters in equity;  or in the alternative for summary judgment awarding defendant Viscuso the full policy proceeds, and the Court, having reviewed and considered all of the papers submitted in support of and in opposition to this motion; and having heard the oral argument of the parties' counsel; and for good cause shown,

      IT IS, on this _____ day of April 2008,

      **ORDERED** that the motion of interpleader-defendant Kimbal Viscuso to dismiss this action, pursuant to 12(b)(1) and (6), or the discretionary power of the Court to abstain from hearing a matter in equity, is hereby granted; and

1935679-01

**IT IS FURTHER ORDERED** that plaintiff The William Penn Life Insurance  Company Of New York pending action in interpleader is dismissed in its entirety, without prejudice or costs to either party; and

**IT IS FURTHER ORDERED** that this order shall be served upon the parties within seven (7) days.

_____
Honorable William C. Connor, U.S.D.J.

1935679-01