UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
THE WILLIAM PENN LIFE INSURANCE COMPANY
OF NEW YORK,

                                        Plaintiff,

                                                            Docket No.:

- against -

                                                            08 CIV 1141 (WCC)

KIMBAL VISCUSO, CHARLES M. BIRNS and BETH S.
MARTIN-BIRNS,

                                        Defendants.
--------------------------------------------------------------------X


**BIRNS DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S
MOTION TO DEPOSIT FUNDS AND IN OPPOSITION TO DEFENDANT VISCUSO'S
MOTION FOR DISMISSAL OR SUMMARY JUDGMENT**


Saretsky Katz Dranoff & Glass, L.L.P.
Attorneys for Defendants
Charles M. Birns and Beth S. Martin-Birns
475 Park Avenue South, 26th Floor
New York, New York 10016
(212) 973-9797

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................... ii

PRELIMINARY STATEMENT...................................................................... 1

STATEMENT OF FACTS ........................................................................... 3

ARGUMENT ................................................................................................ 7

I.    PLAINTIFF'S MOTION TO DEPOSIT THE FIELDMAN POLICY PROCEEDS .... 7

II.   RETENTION OF INTERPLEADER JURISDICTION IS PERMITTED EVEN WHEN THERE IS THE POTENTIAL FOR INDEPENDENT LIABILITY................ 7

III.  DEFENDANT VISCUSO'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE SHE CANNOT TAKE WITHOUT REFORMATION OF THE FIELDMAN POLICY AND REFORMATION IS UNAVAILABLE GIVEN THE FACTS OF THIS MATTER ............................................................. 11

   A.  THE REMEDY OF REFORMATION IS UNAVAILABLE TO PLAINTIFF BECAUSE THE FIELDMAN POLICY ACCURATELY REFLECTS THE INTENTION OF THE PARTIES AND BECAUSE PLAINTIFF'S MISTAKE, IF ANY, WAS DUE TO ITS OWN NEGLIGENCE IN FAILING TO READ THE DURABLE POWER OF ATTORNEY ..................................... 11

   B.  BECAUSE PLAINTIFF HAS UNCLEAN HANDS IT IS NOT ENTITLED TO THE EQUITABLE REMEDY OF REFORMATION.................................................................................... 16

IV.  BECAUSE THE BENEFICIARY CHANGE FORM WAS ACCEPTABLE TO PLAINTIFF THERE IS NO MERIT TO VISCUSO'S CLAIM THAT THE CHANGE IN BENEFICIARIES WAS VOID AB INITIO ........................................ 18

CONCLUSION............................................................................................. 23

i

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

Abbott v. Prudential Ins. Co. Of America,
281 N.Y. 375, 24 N.E.2d 87 (1939) ................................................................16-17

AEP Energy Services Gas Holding Company v. Bank of America, N.A.,
2007 WL 2428474 (S.D.N.Y. 2007)...................................................................11

Aetna Life Ins. Co. v. Carney,
169 Misc. 992, 9 N.Y.S.2d 59 (Sup. Ct. Erie Cnty. 1939)................................18

Androvett v. Treadwell,
73 N.Y.2d 746, 536 N.Y.S.2d 43, 532 N.E.2d 1271 (1988)............................20

Bartholomew v. Mercantile Marine Ins. Co.,
34 Hun, 263 (1884), affirmed 107 N.Y. 623, 13 N. E. 939 (1887) ..................12

Bible v. John Hancock Mut. Life Ins. Co. of Boston, Mass.,
256 N.Y. 458, 176 N.E. 838 (1931) .................................................................17

Campbell v. Metropolitan Life Ins. Co.,
812 F.Supp 1173 (E.D. Okla. 1992) .................................................................20

Carmen v. Fox Film Corporation,
269 F. 928, 931 (2d Cir. 1920) ........................................................................16

Christopher St. R. R. Co. v. Twenty-Third St. R. R. Co.,
149 N.Y. 51, 43 N.E. 538 (1896) .....................................................................12

Citigroup Global Markets, Inc. v. KLCC Investments, LLC,
2007 WL 102128 (S.D.N.Y. 2007)..................................................................9-10

Curtis v. Albee,
167 N.Y. 360, 60 N.E. 660 (1901) ...................................................................12

Da Silva v. Musso,
53 N.Y.2d 543, 428 N.E.2d 382, 444 N.Y.S.2d 50 (1981)...............................15

Goldberg v. Manufacturers Life Ins. Co.,
242 A.D.2d 175, 672 N.Y.S.2d 39 (1st Dept. 1998) ........................................15

Grosch v. Kessler,
256 N.Y. 477, 177 N.E. 10 (1931) ...................................................................16

Grymes v. Sanders,
93 U.S. 55, 23 L.Ed. 798 (1876)......................................................14

Haskins v. Thomajan,
99 A.D.2d 463, 470 N.Y.S.2d 41 (2d Dept. 1984) ..........................16

Lake View Brewing Co. v. Commerce Ins. Co. of Albany,
143 A.D. 665, 128 N.Y.S. 337 (4th Dept. 1911),
affirmed 207 N.Y. 746, 101 N.E. 1108 (1913) .................................12

Lopez v. Massachusetts Mutual Life Insurance Co.,
170 A.D.2d 583, 566 N.Y.S.2d 359 (2d Dept. 1991) ......................19

Mead v. Westchester Fire Ins. Co.,
64 N.Y. 453 (1876) ..................................................................12, 13

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente,
No. 98 Civ. 1756, 2001 WL 11070 (S.D.N.Y. 2001)......................8-9

Metzger v. Aetna Ins. Co.,
227 N.Y. 411, 125 N.E. 814 (1920) ..........................................12, 15

Muscarella v. Muscarella,
93 A.D.2d 993, 461 N.Y.S.2d 621 (4th Dept. 1983) .......................16

Ocheo Realty Corp. v. Sev Realty Corp.,
205 A.D. 324, 199 N.Y.S. 466 (1st Dept 1923) .........................12-13

Pecorella v. Greater Buffalo Press, Inc.,
107 A.D.2d 1064, 486 N.Y.S.2d 562 (4th Dept. 1985) ...................16

Salomon v. North British & Mercantile Ins. Co. of New York.
215 N.Y. 214, 109 N.E. 121 (1915) ................................................14

State Farm Life Ins. Co. v. Gutterman,
896 F.2d 116 (5th Cir 1990) ...........................................................20

Stavros v. Western & Southern Life Ins. Co., Inc.,
486 S.W.2d 712 (Ky. 1972) ........................................................21-22

Stuyvesant Ins. Co. v. Dean Constr. Co.,
254 F.Supp. 102 (S.D.N.Y. 1966).....................................................8

Surlak v. Surlak,
95 A.D.2d 371, 466 N.Y.S.2d 461 (2d Dept. 1983) ........................14

Ward v. Stratton,
988 F.2d 65 (8th Cir. 1993) ..................................................................................20

Westinghouse Elec. Corp. v. NYCTA,
735 F.Supp. 1205 (S.D.N.Y. 1990)...........................................................................14

Witt v. John Hancock Mut. Life Ins. Co. of Boston, Mass.,
246 A.D. 614, 282 N.Y.S. 874 (2d Dept. 1935) ........................................................18

Woodard v. General Motors Corp.,
298 F.2d 121 (5th Cir. 1962) ..................................................................................11

Zeldman v. Mutual Life Ins. Co. Of New York,
269 A.D. 53, 53 N.Y.S.2d 792 (1st Dept. 1945) .....................................................17

**STATUTES**                                                      **PAGE**

C.P.L.R. §1006(f)......................................................................................................7

C.P.L.R. §5004 .........................................................................................................7

**SECONDARY SOURCES**                                            **PAGE**

Black's Law Dictionary, Sixth Edition (1991).............................................................11

## PRELIMINARY STATEMENT

By this action, plaintiff, the William Penn Life Insurance Company Of New York, seeks interpleader with regard to adverse claims to the proceeds of a life insurance policy insuring the life of Jon Fieldman ("the Fieldman policy").  In so doing plaintiff seeks a discharge from further liability as to the Fieldman policy and has moved for such relief herein.

Defendants Charles M. Birns and Beth S. Martin-Birns ("the Birns defendants") were the named beneficiaries of the Fieldman policy at the time of Mr. Fieldman's death, while defendant Kimbal Viscuso was the original named beneficiary.  The change in beneficiaries was effected when Michael Birns, acting as attorney-in-fact for Mr. Fieldman pursuant to a Durable Power of Attorney, submitted a Beneficiary Change Form and plaintiff accepted same.

Defendant Kimbal Viscuso maintains that plaintiff erroneously accepted the Beneficiary Change Form because the Durable Power of Attorney contained a provision stating that it did not grant the attorney-in-fact permission to change the beneficiaries of any insurance policies. As such, defendant Viscuso, who is already proceeding independently against plaintiff in New Jersey Superior Court with a claim for the Fieldman policy proceeds, has moved for dismissal of the interpleader action based on plaintiff's unclean hands and, alternatively, has moved for summary judgment on her right to the proceeds of the Fieldman policy.

1

As explained in further detail below, the prior decisions of this Court make it clear that the independent liability of a stakeholder is not a bar to interpleader jurisdiction if the stakeholder is retained as a party with regard to litigation of defendants' independent liability counterclaims.    Further, because the Birns defendants were the named beneficiaries of the Fieldman policy at the time of Mr. Fieldman's death, their right to the proceeds of the Fieldman policy has vested and, unless the Fieldman policy is reformed, plaintiff is required to pay said proceeds to the Birns defendants.  In this regard, the only basis pled by plaintiff as grounds to reform the Fieldman policy is mutual mistake. However, because:  (i) the policy accurately reflects the intention of the parties at the time the change was made, and there was therefore no mistake; and (ii) plaintiff's negligence in failing to read the Durable Power of Attorney precludes it from relying on the doctrine of mutual mistake, reformation of the policy is not an available remedy and plaintiff is contractually obligated to pay the proceeds of the Fieldman policy to the Birns defendants. Defendant Viscuso's remedy is a claim for damages against plaintiff sounding in negligence, and her motion for summary judgment as to her entitlement to the proceeds of the Fieldman policy should, therefore, be denied.

## **STATEMENT OF FACTS**

On or about November 8, 1995 plaintiff William Penn Life Insurance Company of New York ("William Penn") issued the Fieldman policy in the amount of $350,000. (Exhibit "B" to Plaintiff's Motion for Interpleader Discharge.)  The named beneficiary was Kimbal Viscuso ("defendant Viscuso"), the wife of Mr. Fieldman's business partner, John Viscuso. (Page 8 of Exhibit "B" to Plaintiff's Motion.) The purpose of the insurance policy was to fund a buy/sell agreement following the death of Mr. Fieldman.  (Page 10 of Exhibit "B" to Plaintiff's Motion.)

On or about January 31, 2005, Mr. Fieldman signed a Durable Power of Attorney designating Michael Birns as his attorney-in-fact and agent.  (Exhibit "E" to Plaintiff's Motion.)  In the autumn of 2006 Michael Birns learned of the existence of the Fieldman policy when he received a communication from plaintiff William Penn indicating that the annual premium for the Fieldman policy had not been paid.  At this time the business relationship for which the insurance had been procured no longer existed.

On or about October 13, 2006, Michael Birns, acting on behalf of Fieldman, completed a Beneficiary Change Form changing the beneficiaries of the Fieldman policy to defendants Charles M. Birns and Beth S. Martin-Birns ("the Birns defendants").  (Exhibit "A".)  The Beneficiary Change Form, along with a copy of the Durable Power of Attorney, was delivered to plaintiff.  (See paragraph 15 of plaintiff's Answer to Counterclaims and Counterclaim, annexed hereto as Exhibit "B".)

3

On or about November 6, 2006, in response to the Beneficiary Change Form and the Durable Power of Attorney that was annexed, plaintiff acknowledged the change of beneficiary as requested, changed the policy to reflect the Birns defendants as the beneficiaries of the Fieldman policy and provided an endorsement ("the November 6 endorsement") confirming said change. (See Exhibit "C".) In reliance upon plaintiff's conduct, including its representations that the beneficiaries were changed as requested, Michael Birns paid plaintiff, with his own funds, the annual Policy premium of $4,886.00 by personal check dated November 8, 2006. (Exhibit "D".) Plaintiff accepted the Policy premium paid by Birns. Thereafter, plaintiff issued Michael Birns a letter, annexed to plaintiff's motion as Exhibit "F", dated November 13th, stating:

> "Pursuant to your instructions your recent request to change your beneficiary(s) has been completed. The new designation is as follows:

> **Primary Beneficiary:**
> Charles Bians [sic]
> Beth Birns

> **Contingent Beneficiary:**
> Michael Birns".

On April 4, 2007 Jon Fieldman passed away and, after Michael Birns provided plaintiff with proof of Mr. Fieldman's death, the Birns defendants, being the named beneficiaries of the Fieldman policy, claimed the proceeds of said policy.

Shortly thereafter, and notwithstanding the prior issued endorsement and letter, plaintiff wrote a letter to Michael Birns dated April 18, 2007, stating, "The Durable Power of Attorney does not include authority to change the name of any beneficiary in any retirement

4

asset or insurance contract.   Therefore, Kimbal Viscuso is the current beneficiary of record." (Exhibit "E".)  The timing of this letter, following Fieldman's death, allowed Michael Birns no opportunity to rectify the error perceived by plaintiff.   Based on the alleged invalidity of the change of beneficiaries, Kimbal Viscuso also submitted a claim for the proceeds of the Fieldman policy.  This, despite the fact that Michael Birns used his own funds to pay the premium for the Fieldman policy, that the business for which the insurance was obtained no longer existed and that, but for plaintiff's issuance of the endorsement changing the beneficiary, the premium payment would not have been made and the Fieldman policy would have lapsed.

In light of these competing claims to the proceeds of the Fieldman policy plaintiff commenced this interpleader action seeking to deposit the proceeds of the Fieldman policy into Court and be discharged from further liability.  (Exhibit "A" to Plaintiff's Motion.)  In response, the Birns defendants, in addition to claiming entitlement to the proceeds of the Fieldman policy, have filed counterclaims against plaintiff sounding in equitable estoppel and waiver.  (Exhibit "M" to Plaintiff's Motion.)  These claims are based on plaintiff's acceptance of Michael Birns's premium payment and plaintiff's representation, via the November 6 endorsement and the November 13 letter, that the Beneficiary Change Form was valid and acceptable to plaintiff.

Defendant Viscuso, for her part, has commenced an action against plaintiff in the Superior Court of New Jersey seeking payment of the proceeds of the Fieldman policy. (Exhibit "J" to Plaintiff's Motion.)  In response to plaintiff's action for interpleader defendant

Viscuso has not answered but, rather, has moved for dismissal or, alternatively, summary judgment.

**ARGUMENT**

I.   **PLAINTIFF'S MOTION TO DEPOSIT THE FIELDMAN POLICY PROCEEDS**

As to plaintiff's motion to deposit the interpleaded funds with this Court, the Birns defendants have no opposition to this motion to the extent that an Order issue directing that the funds be deposited into Court with interest from the date of Mr. Fieldman's death. However, the Birns defendants dispute the rate of interest assigned by plaintiff and contend that the proper rate of interest for judgments deposited with the Court should be nine percent per annum.  C.P.L.R. §§1006(f) and 5004.  As such, the Birns defendants respectfully reserve their right to challenge plaintiff's calculation of interest at the appropriate time following determination of defendants' entitlement to the interpleader funds.

II.   **RETENTION OF INTERPLEADER JURISDICTION IS PERMITTED EVEN WHEN THERE IS THE POTENTIAL FOR INDEPENDENT LIABILITY**

With regard to the portion of plaintiff's motion seeking a discharge from further liability, and with regard to defendant Viscuso's cross-motion seeking dismissal of the interpleader action based on plaintiff's unclean hands, the Birns defendants respectfully suggest that a hybrid approach, used by this Court on prior occasions, is the most appropriate manner of resolving this matter.  As detailed further below, this hybrid approach would permit a discharge of plaintiff with regard to the interpleader funds while retaining plaintiff as a party to the action as a counterclaim defendant.

Initially, it should be noted that in Stuyvesant Ins. Co. v. Dean Constr. Co., 254 F.Supp. 102 (S.D.N.Y. 1966) this Court permitted plaintiff's action for interpleader to proceed despite an allegation of independent liability.  In Stuyvesant, plaintiff held a $65,000 bond which was claimed by various creditors of the party that posted the bond. Plaintiff sought interpleader to determine the party rightfully entitled to the bond, and one of the creditors/defendants moved to dismiss on the basis that plaintiff had potentially independent liability.  In denying defendant's motion to dismiss, the Court held that:

> "the possibility that [plaintiff] Stuyvesant may have incurred a so-called independent liability to Dean Atlantic under the bond poses no barrier to jurisdiction here.  Suffice it to say that 'contemporary procedure, with its flexible provisions for wide joinder of parties and claims, for separate trial of separate claims where necessary, and for shaping the judgment to the necessities of the case, is well adapted to disposing of interpleader cases where independent liability is asserted, and there is no reason today, under either the statute or the rule, for continuing to impose a restriction which has no claim to validity save that it is old.'... Dean Atlantic's motion to dismiss for lack of interpleader jurisdiction is therefore denied."

It is thus significant that the cases cited in co-defendant's memorandum of law in support of dismissal of the interpleader claim all either pre-date the Stuyvesant decision or were issued by courts of other jurisdictions.  As such, defendant Viscuso's argument that independent liability is an absolute bar to an interpleader action is simply not accurate and defendant Viscuso's motion to dismiss based on plaintiff's unclean hands should be denied.

Rather, this Court's approach in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente, No. 98 Civ. 1756, 2001 WL 11070 (S.D.N.Y. 2001) is instructive.  In Merrill

Lynch, the stakeholder had met the requirements for a valid interpleader action and claimed no interest in the funds at issue, however one of the claimants made a counterclaim alleging an independent basis for liability based on breach of contract and conversion. Id., at 5-7. The Court sustained the interpleader and discharged the stakeholder from liability for the funds deposited with the Court, but did not dismiss the stakeholder from the case. Id., at 7. Instead, the Court denied cross-motions for summary judgment on the counterclaim and held that it would revisit the breach of contract and conversion claims after the second stage of the interpleader if the funds were found to belong to that claimant. Id. A copy of the Merrill Lynch decision is annexed hereto as Exhibit "F".

Similarly, in Citigroup Global Markets, Inc. v. KLCC Investments, LLC, No. 06 Civ. 5466, 2007 WL 102128 (S.D.N.Y. 2007) this Court again found that it was appropriate to permit the deposit of the interpleaded funds while retaining the plaintiff as a party in order to resolve counterclaims pertaining to plaintiff's allegedly unclean hands. In doing so this Court noted:

> "Courts will not discharge an interpleader stakeholder who is not disinterested - that is where the stakeholder has some claim to the property at issue in the interpleader [citation omitted]. Citigroup is not an interested stakeholder in the sense that it claims some interest in the property that is the subject of the interpleader; it claims none. However, KLCC has asserted counterclaims against Citigroup alleging independent grounds for liability and D and D Trust has indicated that it will do the same in its answer. KLCC's counterclaims allege breach of contract, conversion, negligence, and breach of covenant of good faith and fair dealing... Because the Court has determined that interpleader is appropriate in this case and because Citigroup is a disinterested stakeholder, Citigroup

is discharged from further liability for the property held in the KLCC account on the condition that it deposits the property with the Court in accordance with a consent judgment submitted by the parties or other order of the Court. Citigroup is not, however, dismissed from the case. The Court will consider KLCC's counterclaims and any counterclaims that D and D Trust asserts in its answer after the issue of ownership of the property is resolved."

Id. at 8. A copy of this decision is annexed hereto as Exhibit "G".

Because the matter before this Court involves both a single fund as to which there are definitively adverse claims *and* equitable counterclaims based on plaintiff's independent liability, the Birns defendants respectfully suggest that the approach employed in Merrill Lynch, Pierce, Fenner & Smith, Inc., supra and Citigroup Global Markets, Inc., supra be adopted. That is, in order to avoid the multiplicity of lawsuits in the courts of New Jersey and New York that will inevitably result from the dismissal of the interpleader action, with their potentially contradictory results, the Birns defendants request that this Court retain jurisdiction and that the issue of entitlement to the interpleaded funds be addressed first. Following resolution of the issue of the defendants' entitlement to the proceeds of the Fieldman policy, the equitable rights of the non-taking party can be determined pursuant to its counterclaims.

### III. DEFENDANT VISCUSO'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE SHE CANNOT TAKE WITHOUT REFORMATION OF THE FIELDMAN POLICY AND REFORMATION IS UNAVAILABLE GIVEN THE FACTS OF THIS MATTER

With regard to defendant Viscuso's alternative request for summary judgment, as shown below this motion must be denied because it cannot be granted without reforming the terms of the insurance policy and, for the numerous reasons discussed below, the equitable remedy of reformation is not available under the facts of this case.

#### A. *The Remedy Of Reformation Is Unavailable To Plaintiff Because The Fieldman Policy Accurately Reflects The Intention Of The Parties And Because Plaintiff's Mistake, If Any, Was Due To Its Own Negligence In Failing To Read The Durable Power Of Attorney*

The doctrine of estoppel by contract states that, "a party to a contract may not take a position inconsistent with the contract's provisions to the prejudice of another." AEP Energy Services Gas Holding Company v. Bank of America, N.A., 2007 WL 2428474, 15 (S.D.N.Y. 2007). In this regard, Black's Law Dictionary, Sixth Edition (1991), states, "Estoppel by contract is intended to embrace all cases in which there is an actual or virtual undertaking to treat a fact as settled. It means [a] party is bound by [the] terms of [its] own contract until set aside or annulled by fraud, accident or mistake." See Woodard v. General Motors Corp., 298 F.2d 121 (5th Cir. 1962) ("The doctrine of estoppel by contract, upon which the appellants rely, 'means no more than that a party is bound by the terms of his own contract until set aside'. It is 'based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another.'")

An insurance policy is a contract and, therefore, pursuant to the doctrine of estoppel by contract, unless it is reformed it must be adhered to as written. In the matter before this court, plaintiff, in its reply counterclaim, seeks to reform the contract on the basis of mutual mistake. (Exhibit "B" at paragraphs 12 and 16-21.) However, an insurance contract is no different from any other when the rules of law governing the reformation of written agreements are to be applied. Lake View Brewing Co. v. Commerce Ins. Co. of Albany, 143 A.D. 665, 128 N.Y.S. 337 (4th Dept. 1911) affirmed 207 N. Y. 746, 101 N. E. 1108 (1913). The rule is elementary that, before the court will reform a written contract, the proof must convincingly establish that there has been a mutual mistake, or a mistake by one party and fraud or deception by the other party. Lake View Brewing Co., 128 N.Y.S. at 340 (citing Bartholomew v. Mercantile Marine Ins. Co., 34 Hun, 263 (1884), affirmed 107 N.Y. 623, 13 N. E. 939 (1887), Mead v. Westchester Fire Ins. Co., 64 N. Y. 453 (1876); Curtis v. Albee, 167 N. Y. 360, 364, 60 N. E. 660 (1901) and Christopher St. R. R. Co. v. Twenty-Third St. R. R. Co., 149 N. Y. 51, 58, 43 N. E. 538 (1896).) See also Metzger v. Aetna Ins. Co., 227 N. Y. 411, 125 N. E. 814 (1920) ("It is well settled that a contract cannot be reformed unless there was either mutual mistake, or else mistake on one side and fraud on the other, and the court reforms the contract in order to make it what the parties intended.")

Further, the burden of proof required to establish a right to reformation is extremely high. In Ocheo Realty Corp. v. Sev Realty Corp., 205 A.D. 324, 327, 199 N.Y.S. 466 (1st Dept 1923) the court wrote:

"To justify the court in changing the language of the instrument sought to be reformed on the ground of mistake, it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be so clear and convincing as to leave no room for doubt. [citations omitted]"

The <u>Ocheo</u> Court then elaborated stating:

"Lord Hardwicke said it must be proper proof, and the strongest proof possible, and Lord Thurlow that it must be strong irrefragable proof, and, he said, the difficulty of the proof was so great, that there was no instance of its prevailing against a party insisting that there is no mistake.'... <u>[T]he resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance, but only upon a certainty of error.</u>'"

<u>Ocheo Realty Corp.</u>, 205 A.D. at 327 (Emphasis added).

The New York State Court of Appeals, in writing for the reversal of a judgment reforming an insurance contract, succinctly stated the rule in <u>Mead. v. Westchester Fire Ins. Co.</u>, 64 N. Y. at 455, holding:

"The power of courts of equity to reform written instruments is one in the exercise of which great caution should be observed. To justify the court in changing the language of the instrument sought to be reformed (except in case of fraud), it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be so clear and convincing as to leave no room for doubt."

In the matter before this Court, the only basis on which plaintiff seeks reformation is mutual mistake. As such, unless clear and convincing proof of such mutual mistake is established, the policy cannot be reformed. In this regard, "[a] mistake which will permit a

court of equity to reform a contract in writing in the absence of fraud must be one made by both parties to the agreement *so that the intentions of neither are expressed in it."* Salomon v. North British & Mercantile Ins. Co. of New York. 215 N.Y. 214, 219, 109 N.E. 121 (1915). (Emphasis added.) Thus, it has been stated that:

> "reformation is designed to bring a written contract into conformity with the actual agreement of the parties, where the writing is inaccurate because of mutual mistake or fraudulently induced, unilateral mistake. *It cannot be utilized to vacate a portion of an agreement which, in fact, does comport with the parties'* intention."

Surlak v. Surlak, 95 A.D.2d 371, 381, 466 N.Y.S.2d 461 (2d Dept. 1983). (Emphasis added.)

In the matter before this Court, there can be no doubt that it was the intention of both parties (or at the very least the Birns defendants) to change the beneficiary of the Fieldman policy from defendant Viscuso to the Birns defendants. Consequently, because the insurance policy accurately reflects the intentions of the parties (or a party, i.e. the Birns defendants) at the time that they entered into the agreement, the doctrine of reformation because of mutual mistake is unavailable.

Furthermore, reformation based on mutual mistake is inapplicable to the facts herein because, *"Mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible."* Grymes v. Sanders, 93 U.S. 55, 61, 23 L.Ed. 798 (1876) (Emphasis added); Westinghouse Elec. Corp. v. NYCTA 735 F.Supp. 1205, 1222 (S.D.N.Y. 1990). As such, mistake caused by a party's failure to

read readily accessible relevant documents has been held to be an insufficient basis for reformation of the contract. <u>Goldberg v. Manufacturers Life Ins. Co.</u>, 242 A.D.2d 175, 180, 672 N.Y.S.2d 39 (1st Dept. 1998) ("Such mistake based on a party's own negligence - in this case, the failure to read either [of two life insurance policies] - cannot serve as the basis for rescission or reformation.") (Emphasis added); <u>Metzger v. Aetna Insurance Co.</u>, 227 N. Y. at 415-416  (One who accepts a written contract, perfectly clear in its terms, cannot be heard to say that he misunderstood its terms when his misunderstanding is due to his own neglect in not reading it.) See also <u>Da Silva v. Musso</u>, 53 N.Y.2d 543, 551, 428 N.E.2d 382, 444 N.Y.S.2d 50 (1981) (An action for specific performance in which the Court held, "On the record before us we conclude that defendants were legally, if not factually, aware of the existence of the clause and that their mistake resulted from their negligence in failing to take the means readily accessible of checking the second mortgage documents.").

Plaintiff herein claims that the change of beneficiary should not have been made because the Durable Power of Attorney did not grant Michael Birns the power to make said change.  However, because plaintiff admits being in possession of the Durable Power of Attorney prior to making the change, it is self-evident that plaintiff's mistake, if any, was the result of its own negligence in failing to read the Durable Power of Attorney.  Thus, plaintiff, like the parties in <u>Goldberg</u>, supra, <u>Metzger</u>, supra and <u>Da Silva</u>, supra must be deemed to have had legal knowledge, if not factual knowledge, of the terms of the Durable Power of Attorney.  Hence, plaintiff's alleged mistake was based on its failure to behave as a reasonable person prior to issuing the endorsement reflecting the change of beneficiary

15

and cannot serve as a basis for reformation.  See <u>Grymes</u>, 93 U.S. at 61 (In order to avail itself of the doctrine of mistake in a claim at equity, "[t]he party complaining must have exercised at least the degree of diligence which may be fairly expected from a reasonable person.")

### B.    *Because Plaintiff Has Unclean Hands It Is Not Entitled To The Equitable Remedy Of Reformation*

Moreover, reformation of a contract is an equitable remedy.  In this regard, it has long been established that a party seeking the aid of equity must "do equity himself", i.e., he must come into court with clean hands. <u>Grosch v. Kessler</u>, 256 N.Y. 477, 478, 177 N.E. 10 (1931);  <u>Haskins v. Thomajan</u>, 99 A.D.2d 463, 470 N.Y.S.2d 41 (2d Dept. 1984); <u>Muscarella v. Muscarella</u>, 93 A.D.2d 993, 994, 461 N.Y.S.2d 621 (4th Dept. 1983). The misconduct which will bar equitable relief need not be sufficient to constitute the basis of a legal action; any willful conduct, "which would be condemned and pronounced wrongful by honest and fair-minded men, will be sufficient to make the hands of the applicant unclean," as long as the conduct pertains to the matter in litigation. <u>Carmen v. Fox Film Corporation</u>, 269 F. 928, 931 (2d Cir. 1920); <u>Pecorella v. Greater Buffalo Press</u>, Inc. 107 A.D.2d 1064, 1065, 486 N.Y.S.2d 562 (4th Dept. 1985).

In the present action plaintiff comes to this court with unclean hands inasmuch as it delivered the endorsement and accepted and retained Michael Birns's payments for the life insurance premiums despite having at least constructive knowledge, if not actual knowledge, of the terms of the Durable Power of Attorney. See <u>Abbott v. Prudential Ins. Co. Of America</u>, 281 N.Y. 375, 24 N.E.2d 87 (1939) ("If the company… with knowledge of

the invalidity of the policies, chose to deliver them as valid instruments and, misleading the insured, to collect the premiums thereon, the company is estopped from enforcing the condition. Delivery of the policy would in such case have the effect of a waiver of the condition.");  Bible v. John Hancock Mut. Life Ins. Co. Of Boston, Mass., 256 N.Y. 458, 176 N.E. 838 (1931) ("In the absence of warranty or warning, the delivery of the policies by the insurer, and the keeping of the premiums with knowledge of a then existing breach of the conditions... gave rise to a waiver or, more properly an estoppel."); Zeldman v. Mutual Life Ins. Co. Of New York, 269 A.D. 53, 53 N.Y.S.2d 792 (1st Dept. 1945) ("[T]he delivery of a policy or the receipt of premiums with knowledge of a then existing breach of conditions... will give rise to a waiver or, more properly, an estoppel.") Thus, although, as explained in section II of this memorandum of law, plaintiff's unclean hands do not divest this court of interpleader jurisdiction, they do prevent plaintiff from seeking the equitable remedy of reformation.

The inequity inherent in reforming the policy to reinstate defendant Viscuso is made still clearer when one considers that, were it not for Birns's payment of the insurance premiums, the policy would have lapsed and there would be no payments to any beneficiaries.  Thus, if the policy were to be reformed to name defendant Viscuso as the beneficiary, as sought by plaintiff in its reply counterclaim, both defendant Viscuso and plaintiff would reap inequitable benefits from plaintiff's misleading conduct with regard to Michael Birns.

**IV.   BECAUSE THE BENEFICIARY CHANGE FORM WAS ACCEPTABLE TO PLAINTIFF THERE IS NO MERIT TO VISCUSO'S CLAIM THAT THE CHANGE IN BENEFICIARIES WAS VOID AB INITIO**

Finally, with regard to defendant Viscuso's claim that the change of beneficiary was void *ab initio*, the terms of the life insurance policy are to the contrary. Specifically, page four of the policy, in the section entitled "Change of Owner and Beneficiary", states that in order to change the beneficiary of the policy, "a written notice of change must be filed at the Home Office at the address shown on the cover page *in a form acceptable to the Company*." (Emphasis added.) In light of plaintiff's issuance of the endorsement changing the beneficiary of the policy from defendant Viscuso to the Birns defendants, it is obvious that the written notice of change filed by Michael Birns was acceptable to plaintiff, especially since the Durable Power of Attorney was in plaintiff's possession. As such, under the terms of the policy, the change was valid notwithstanding the terms of the Durable Power of Attorney. At the very least, a factual issue exists as to whether the written notice of change filed by Michael Birns was "in a form acceptable to the Company."

In this regard, Viscuso's claim that, "her rights [were] unimpaired by the attempted change," is in error as the law is clear that a beneficiary of a life insurance policy *has no vested rights* until the death of the insured. Witt v. John Hancock Mut. Life Ins. Co. of Boston, Mass., 246 A.D. 614, 282 N.Y.S. 874 (2d Dep't 1935). The beneficiary's "rights" are contingent only and are subject to change at any time prior to the insured's death. Aetna Life Ins. Co. v. Carney, 169 Misc. 992, 9 N.Y.S.2d 59 (Sup. Ct. Erie Cnty. 1939) ("Whatever rights the beneficiary had before the insured's death were contingent and revocable at his will."). Thus, if an insurer, during the lifetime of the insured, has waived its

right to insist upon compliance with the policy provisions relating to a change of beneficiary, the original beneficiary is not entitled to rely upon the failure of the insured to comply with the policy provisions, as such provisions are for the protection only of the insurer. Witt, 246 A.D. at 614 ("The provision providing that a change of beneficiaries could only be accomplished with the consent of the company by an indorsement on the policies was one for the benefit of the insurer, which it could waive if it saw fit so to do. The fact that at a time when the policies had lapsed, such waiver was procured by a false representation that the policies were lost, made by the deceased to induce the company to issue certificates of lost policy, did not change the legal situation so far as the company was concerned. It had a strict legal right to make payment to the person designated as the beneficiary at the time of the death of... the deceased.")

Moreover, it is well established that an insurer waives precise compliance with the terms of a change of owner or beneficiary provision once it institutes an interpleader action and submits the insurance policy proceeds to the court. Lopez v. Massachusetts Mutual Life Insurance Co.., 170 A.D.2d 583, 584, 566 N.Y.S.2d 359 (2d Dept.1991). Hence, by filing the instant action for interpleader plaintiff has waived its right to insist on strict compliance with regard to its acceptance of the Beneficiary Change Form.

The cases cited by defendant Viscuso in support of her claim that the change of beneficiaries was void *ab initio* are distinguishable from the matter at bar and are, as a result, of no consequence herein. All of the cases cited by defendant Viscuso concern actions in which the purported change in beneficiary was void because of a violation of a

statute or a provision of the insurance policy in question. By contrast, in the instant action there has been no allegation of any statutory violations nor is there any claim that the Beneficiary Change Form did not comply with the terms of the Fieldman policy. Rather, plaintiff's acceptance of the Beneficiary Change Form, acceptance of Michael Birns's premium payment and issuance of the November 6 endorsement raise at least a question of fact – if they do not constitute conclusive proof – that the change complied with the policy requirement that such changes be "in a form acceptable to the Company."

Further, in State Farm Life Ins. Co. v. Gutterman, 896 F.2d 116 (5th Cir 1990), contrary to the facts of the instant matter, although there was an invalid *attempt* to change the beneficiary of the life insurance policy, the insurer never actually made the change. Similarly, in Ward v. Stratton, 988 F.2d 65 (8th Cir. 1993) no change of beneficiaries was effected during the lifetime of the insured and, unlike the matter before this Court, the insurer never issued an endorsement reflecting any such change. Likewise, the decision in Androvett v. Treadwell, 73 N.Y.2d 746, 536 N.Y.S.2d 43, 532 N.E.2d 1271 (1988) contains no indication that the insurer ever accepted the purported change in beneficiaries or issued an endorsement reflecting the requested change. Campbell v. Metropolitan Life Ins. Co., 812 F.Supp. 1173 (E.D. Okla. 1992) involved a federal government employee life insurance policy in which the insured's employer retains the designation of beneficiary forms and provides them to the insurer only *after* the death of the employee/insured. In Campbell, the insured submitted a change of beneficiary form to her employer but, upon submission of this form to the insurer after the insured's death, it was discovered that the form had not been properly executed. Thus, again, the change of beneficiary was never

accepted by the insurer and the insurer never issued an endorsement reflecting the change. Hence, since none of these cases involve a situation in which a change of beneficiary was ever accepted by the insurer, none of them are relevant to the central question of whether plaintiff's acceptance of the Beneficiary Change Form, acceptance of Michael Birns's premium payment and issuance of the November 6 endorsement preclude a finding that the change in beneficiaries was not acceptable to plaintiff and prevent reformation of the contract of insurance.

Finally, in Stavros v. Western & Southern Life Ins. Co., Inc., 486 S.W.2d 712 (Ky. 1972), also cited by defendant Viscuso, the sister and guardian of the minor insured improperly changed the beneficiary of the life insurance policy, in violation of the policy terms, by failing to state in her application for said change that she was the guardian of the minor insured. Nonetheless, the change was accepted by the insurer and, following the death of the insured, the insurer paid the insured's sister, as the named beneficiary, the proceeds of the insurance policy. Thereafter, the estate of the insured brought suit against the insurer and the insured's sister to recover the proceeds of the policy, claiming that the change was in violation of the policy requirement that any change be made by the legal guardian of the minor insured. In the Stavros Court's decision it stated that, "Waiver of requirements for effecting a change of beneficiary may be made by a company in ordinary circumstances, for such requirements are for the benefit of the Company [citing Couch on Insurance]... [However], the question still arises whether that means that the Company is absolved of further liability when it accepts a change of beneficiary from an individual not legally entitled to effect such a change." In this regard, the Stavros Court remanded the

case for further proceedings as to whether the insurer was liable to the estate of the insured for accepting an invalid change of beneficiary. Notably, nowhere in its decision does the Court hold that the insured's sister was not entitled to collect the proceeds of the policy once the change had been made.

Similarly, in the instant matter, as argued above, the policy has been changed and reformation based on mutual mistake is not an available remedy because of plaintiff's negligence in failing to read the Durable Power of Attorney and because the policy accurately reflects the parties' intentions. Consequently, plaintiff's acceptance of the change of beneficiary, acceptance of the premiums paid by Michael Birns and issuance of the endorsement reflecting the naming of the Birns defendants as the beneficiaries of the policy requires that the proceeds of the policy be paid to the Birns defendants. Defendant Viscuso's remedy, like that of the plaintiff in <u>Stavros</u> is to seek recovery from plaintiff on equitable grounds.

## CONCLUSION

For all of the forgoing reasons, the Birns defendants respectfully request that this Court grant plaintiff's motion to deposit the interpleader funds, deny defendant Viscuso's motion for dismissal and summary judgment, and retain plaintiff as a party to this action with regard to the Birns defendants' counterclaims, together with such further relief as this Court deems just and proper.

Dated:  New York, New York
        May 16, 2008

Respectfully submitted,

SARETSKY KATZ DRANOFF & GLASS, L.L.P.

By: _____
        Robert B. Weissman (RW 0512)

Attorneys for Defendants
Charles M. Birns and Beth S. Martin-Birns
475 Park Avenue South
New York, New York 10016
(212) 973-9797