```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                         :    08 Civ. 1141 (WCC)
THE WILLIAM PENN LIFE INSURANCE COMPANY
OF NEW YORK,                             :    ECF CASE

                Plaintiff,               :

        - against -                      :    OPINION
                                              AND ORDER
KIMBAL VISCUSO, CHARLES M. BIRNS and     :
BETH S. MARTIN-BIRNS,
                                         :
                Defendants.
                                         :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                                              BLEAKLEY PLATT & SCHMIDT, LLP
                                              **Attorneys for Plaintiff**
                                              One North Lexington Avenue
                                              White Plains, NY 10601

ROBERT D. MEADE, ESQ.

       Of Counsel

                                              CONNELL FOLEY LLP
                                              **Attorneys for Defendant**
                                                **Kimbal Viscuso**
                                              85 Livingston Avenue
                                              Roseland, NJ 07068

M. TREVOR LYONS, ESQ.

      Of Counsel

                                              SARETSKY KATZ DRANOFF & GLASS LLP
                                              **Attorneys for Defendants**
                                              **Charles M. Birns and Beth S.**
                                              **Martin-Birns**
                                              475 Park Avenue South, 26th Fl.
                                              New York, NY 10016

ROBERT B. WEISSMAN, ESQ.

      Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Senior D.J.:**

Plaintiff William Penn Life Insurance Company of New York ("William Penn") brings this interpleader action to resolve competing claims to the proceeds of a life insurance policy. When issued, the policy named defendant Kimbal Viscuso as beneficiary. Defendants Charles M. Birns and Beth S. Martin-Birns (the "Birns defendants") claim that the insured's attorney-in-fact changed the beneficiary from Viscuso to them prior to the death of the insured. Viscuso argues that this purported change was ineffective and that she remains the beneficiary. William Penn proclaims its indifference as to these competing claims and moves for permission to deposit the proceeds of the policy with the Court and be discharged from the action pursuant to the federal interpleader statute, 28 U.S.C. § 1335. Viscuso opposes interpleader and moves to dismiss or, in the alternative, for summary judgment in her favor. The Birns defendants consent to interpleader, oppose Viscuso's motion for summary judgment and assert a variety of counterclaims against William Penn. For all of the following reasons, the Court accepts interpleader jurisdiction, grants summary judgment in favor of Viscuso and retains jurisdiction over William Penn for purposes of adjudicating the Birns defendants' counterclaims.

## BACKGROUND

On November 8, 1995, William Penn issued life insurance policy 0700014261, insuring the life of Jon Fieldman in the amount of $350,000 (the "Policy"). (Meade Aff., Ex. B.) Fieldman was the owner of the Policy, and Viscuso, the wife of Fieldman's then-business partner, was designated the beneficiary. (*Id.*, Ex. C.) The Policy was meant to fund a buy/sell agreement in the event of Fieldman's death. (*Id.*, Ex. B.)

1

On January 31, 2005, Fieldman signed a durable power of attorney designating Michael Birns as his attorney-in-fact and agent. (*Id.*, Ex. E.) The power of attorney states in relevant part that the authority of the attorney-in-fact "shall not include the authority to change the name of any beneficiary in any retirement asset or insurance contract." (*Id.*, Ex. E at 5.)

In October 2006 Fieldman's bookkeeper forwarded to Michael Birns a notice from William Penn indicating that the premium on the Policy was due and that the Policy would soon lapse unless the premium were paid. (*Id.*, Ex. H.) Upon receiving this notice Michael Birns called William Penn and informed the agent with whom he spoke that Fieldman "no longer had any business or personal reason for maintaining the Policy for the benefit of the originally-named beneficiary." (*Id.*) Michael Birns then submitted a change-of-beneficiary form designating the Birns defendants, who are his wife and son, as beneficiaries. (*Id.*, Ex. F.)

The Policy reserves to the owner the right to change the beneficiary. (*Id.*, Ex. B. at 4.) On the line on the change-of-beneficiary form designated for the owner's signature, Michael Birns signed his own name followed by the words "Power of Attorney." (*Id.*, Ex. D.) He submitted a copy of the power of attorney to William Penn along with the form. (*Id.*; *id.*, Ex. H; Pl. Answer to Countercl. & Countercl. ¶ 15.) In a letter dated November 13, 2006, William Penn stated that the change of beneficiary had been completed and that the Birns defendants were the primary beneficiaries of the Policy. (Meade Aff., Ex. F.) William Penn subsequently accepted a premium payment from Michael Birns in the amount of $4,886. (Weissman Decl., Ex. D.)

Fieldman passed away on April 4, 2007. (Meade Aff., Ex. H.) Both Viscuso and Michael Birns (on behalf of the Birns defendants) submitted claims on the Policy. (*Id.*, Exs. H, I.) By letter dated April 18, 2007, William Penn informed Michael Birns that

> a review of [Fieldman's] policy file, revealed that Kimbal Viscuso was the primary beneficiary of record on the application for insurance. A Beneficiary Change Form was submitted by you as power of attorney and acknowledged. The Durable Power of Attorney does not include the authority to change the name of any beneficiary in any retirement asset or insurance contract. Therefore, Kimbal Viscuso is the current beneficiary of record.

(Weissman Decl., Ex. E.) However, William Penn has not paid the proceeds of the Policy to Viscuso. Instead, after Viscuso filed a state court action in New Jersey against it seeking payment, William Penn brought the present action in this Court, seeking to join Viscuso and the Birns defendants as rival claimants to the Policy. William Penn also asks the Court to enjoin defendants from instituting or maintaining any other action against it seeking to recover the proceeds of the Policy.

## DISCUSSION

**I.     Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The Court must resolve all ambiguity in favor of the non-moving party and draw every permissible factual inference in that party's favor. *See Anderson*, 477 U.S. at 255. The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). When

the movant has met that burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P 56(e)) (citations omitted) (emphasis in original).

## II.     Interpleader Jurisdiction

### A.     General Requirements

The federal interpleader statute grants district courts original jurisdiction over actions of interpleader or in the nature of interpleader where a plaintiff stakeholder has in its possession money or property worth $500 or more that is or may be the subject of adverse claims by two or more claimants of diverse citizenship. 28 U.S.C. § 1335. The plaintiff must be disinterested as to the competing claims and must deposit the fund or property with the court in order to be discharged from the action. *Id.* § 1335(a)(2); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001). The existence of a single, identifiable stake is a necessary element of interpleader jurisdiction. *See N. Am. Mktg. Corp. v. K. Gronbach & Assocs.*, 221 F.R.D. 296, 298 (D. Conn. 2002). The court in which the interpleader action has been brought may enjoin the claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action." 28 U.S.C. § 2361.

The availability of interpleader does not depend on the merits of the potential claims against the stakeholder. *See Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992). Thus, a

stakeholder "is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others." *Id.* The interpleader statute is "remedial and [meant] to be liberally construed." *Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc.*, 918 F.2d 1065, 1069 (2d Cir. 1990) (quoting *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 533, (1967)); *see also Citigroup Global Mkts., Inc. v. KLCC Invs., LLC*, 2007 WL 102128, at *7 (S.D.N.Y. Jan. 11, 2007).

Interpleader actions usually unfold in two stages. *N.Y. Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983). First, the court determines whether interpleader jurisdiction exists and, if it does, discharges the stakeholder from the action. *See id.*; 28 U.S.C. § 2361. The court then adjudicates the defendants' competing claims. *See N.Y. Life Ins. Co.*, 700 F.2d at 95. When appropriate, the court may resolve both issues at once. *See id.* (citing 3A J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE ¶¶ 22.14[1], [2] (2d ed. 1982)).

As noted, Viscuso has moved to dismiss for lack of interpleader jurisdiction or, in the alternative, for summary judgment on the merits of her claim. (*See* Lyons Certification.) The parties are thus on notice that a decision on the merits may be rendered at this stage and have had the opportunity to brief the merits of their claims and submit supporting materials. The Court will therefore consider the issue of interpleader jurisdiction and, finding that jurisdiction exists and that there are no material factual disputes, grant Viscuso's motion for summary judgment.

    **B.**    <u>**The Court Has Interpleader Jurisdiction**</u>

It is undisputed that the stake is worth more than $500 and that defendants are of diverse

citizenship.[1] *See* 28 U.S.C. § 1335(a). William Penn has not yet deposited the funds with the Court, but deposit has been construed as a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit. *See Citigroup Global Mkts.*, 2007 WL 102128, at *7 ("[C]ourts regularly give a stakeholder an opportunity to comply with the deposit requirement before dismissing an interpleader action."); *Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc.*, 1984 U.S. Dist. LEXIS 14929, at *6 (S.D.N.Y. July 16, 1984) ("Practically speaking, deposit is not a prerequisite to obtaining jurisdiction, but rather, a condition of maintaining it. Otherwise, no Court would have the power to even order a fund deposited thereby ensuring its continued control over the matter.") Viscuso argues that interpleader is improper because defendants' claims are not adverse and William Penn lacks the clean hands necessary to seek equitable relief.[2]

---

[1] Viscuso is a citizen of New Jersey and the Birns defendants are citizens of New York.

[2] Viscuso also argues in the alternative that the Court should exercise its discretion to abstain from taking interpleader jurisdiction because the New Jersey state court in which she has brought suit against William Penn provides an adequate alternative forum in which all claims may be addressed. (*See* Def. Viscuso Mem. Supp. Mot. Dismiss at 8); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) ("[I]t it is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable."). But it seems highly doubtful that a New Jersey state court would have personal jurisdiction over the Birns defendants and William Penn–all New York residents–in a matter with no apparent connection to New Jersey. *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945); *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127-28 (2d Cir. 2008). To the Court's knowledge, the Birns defendants have not been joined in the New Jersey action or expressed any willingness to appear there. William Penn does not concede that it is subject to personal jurisdiction in the New Jersey action. (*See* William Penn. Mem. Opp. Mot. Dismiss at 6-7.) For these reasons, and because we are convinced that William Penn faces the risk of multiple liability on a single obligation should defendants proceed against it in separate actions, this Court will not abstain from exercising interpleader jurisdiction over this matter.

        **1.**        <u>**There Are Adverse Claims to the Policy Proceeds**</u>

Viscuso argues that her claim and that of the Birns defendants are not adverse because William Penn may in fact be liable to both claimants: to Viscuso as the Policy beneficiary and to the Birns defendants on a counterclaim for promissory estoppel or reliance. (*See* Def. Viscuso Mem. Opp. Interpleader at 2-3.) Viscuso notes, correctly, that the purpose of interpleader is to protect the stakeholder from multiple and inconsistent liabilities on a single obligation. *See, e.g.*, *N. Am. Mktg. Corp.*, 221 F.R.D. at 298 ("The goal of interpleader is to protect plaintiffs from multiple lawsuits involving singular liability."); *Citigroup Global Mkts.*, 2007 WL 102128, at *6 ("The stakeholder must legitimately fear multiple liability or the vexatious conflicting claims to the same fund."). As the Second Circuit has explained, the adversity requirement means that interpleader is inappropriate if the stakeholder may properly be liable to both claimants. *See Bradley v. Kochenash*, 44 F.3d 166, 169 (2d Cir. 1995). Interpleader is meant to protect the stakeholder only from unjustified multiple liability. *See id.*

    Viscuso's non-adversity argument is flawed because it conflates William Penn's undisputed liability to the beneficiary of the Policy with its potential liability to the other defendants on those defendants' counterclaims. Each defendant claims to be the Policy beneficiary and, as such, entitled to the $350,000 proceeds of the Policy. These are competing and inconsistent claims to the stake. If defendants were to proceed against William Penn in separate actions, there would be a risk of multiple and inconsistent liabilities on a single obligation: Viscuso might be deemed the beneficiary in one action while the Birns defendants secure that designation in the other. This is the sort of unjustified multiple liability that interpleader exists to prevent. *See Bradley*, 44 F.3d at 169.

    It is true that each defendant has asserted (or reserves the right to assert) counterclaims

against William Penn in the event he or she is found not to be the beneficiary, creating the possibility that William Penn will be liable to all claimants in a total amount greater than the value of the Policy. But no one argues that both Viscuso and the Birns defendants are all beneficiaries. Rather, each side argues that it, and not the other, is the beneficiary.[3] There is no possibility that William Penn may be properly liable on the Policy to both claimants.[4] William Penn's potential counterclaim liability to the non-beneficiary defendant does not change this fact, nor does it preclude interpleader. *See Ashton*, 918 F.2d at 1069 ("[W]e reject the argument that interpleader jurisdiction is improper where claims against the stakeholder potentially exceed the value of the interpleaded fund."). Where there are multiple claims to the stake as well as counterclaims against the stakeholder, interpleader is proper, and the court may discharge the plaintiff from liability on the stake but retain jurisdiction over the plaintiff for purposes of adjudicating the counterclaims. *See Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir. 1988); *Citigroup Global Mkts.*, 2007 WL 102128, at *8, *Merrill Lynch*, 2001 WL 11070, at *6; *Stuyvesant Ins. Co. v. Dean Constr. Co.*, 254 F. Supp. 102, 109 (S.D.N.Y. 1966).

---

[3] For this reason, *Trowbridge v. Prudential Insurance Co. of Am.*, 322 F. Supp. 190 (S.D.N.Y. 1971), which Viscuso cites, is distinguishable. *Trowbridge* involved an unauthorized change of the beneficiaries of two life insurance policies. *See id.* at 191. The court denied the insurance company's petition for interpleader relief. *See id.* at 193. In *Trowbridge*, unlike here, all parties agreed that the attempted changes were invalid. *See id.* at 191. Only one set of potential interpleader defendants claimed to be entitled, as beneficiaries, to recover the proceeds of the policy; the other potential defendant sought to recover in either tort or contract based on the plaintiff's mishandling of the attempted change. *See id.* at 193. Thus, unlike here, the plaintiff faced only one claim to the stake itself, so there was no possibility of inconsistent and unjustified multiple liabilities. *See id.* ("These are independent causes of action, not adverse to one another, which rely on separate and distinct elements.")

[4] In fact, Viscuso acknowledges in her brief that "it is unlikely under established law that William Penn faces multiple liability to the interpled fund." (Def. Viscuso Mem. Opp. Interpleader at 3.)

## 2.    The Doctrine of Unclean Hands Does Not Preclude Interpleader

Although sanctioned by statute, interpleader is fundamentally an equitable remedy.  *See Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 63 (2d Cir. 1994); *Irving Trust Co. v. Nationwide Leisure Corp.*, 93 F.R.D. 102, 110 (S.D.N.Y. 1981).  Therefore, the rule that one who seeks equitable relief must come into court with clean hands applies.  *See Royal Sch. Labs., Inc. v. Town of Watertown*, 358 F.2d 813, 817 (2d Cir. 1966); *Mallory S.S. Co. v. Thalheim*, 277 F. 196, 201-02 (2d Cir. 1921); *Decourley v. Prudential Ins. Co. of Am.*, 2008 WL 1967501, *3 (E.D. Mo. May 1, 2008); *Bell v. Nutmeg Airways Corp.*, 66 F.R.D. 1, 4 (D. Conn. 1975).

Viscuso argues that William Penn has unclean hands because its carelessness caused this dispute: William Penn should have reviewed the power of attorney, which was in its possession, and realized that Michael Birns did not have the authority to change the beneficiary of the Policy.  (*See* Def. Viscuso Mem. Supp. Mot. Dismiss at 6.)  Viscuso cites, *inter alia*, *United States v. Major Oil Corp.*, 583 F.2d 1152, 1158 (10th Cir. 1978), in which the court stated that "one is not entitled, under the 'clean hands' doctrine, to the remedy of interpleader (or the protections provided thereby) if the hazard which he seeks to avoid has been occasioned by his own act."  According to Viscuso, this principle bars William Penn from invoking the Court's interpleader jurisdiction.  (*See* Def. Viscuso Mem. Supp. Mot. Dismiss at 6.)

Viscuso is of course correct in noting that "the present controversy would not exist" absent William Penn's carelessness.  (*See id.*)  But that does not mean the doctrine of unclean hands bars interpleader here.  Traditionally, application of the doctrine "has required a finding of wrongful intent or wilful misconduct and mere negligent conduct has not sufficed."  *A. H. Emery Co. v. Marcan Prods. Corp.*, 389 F.2d 11, 18 n.4 (2d Cir. 1968).  Or, as another judge in this District put

9

it: "Typically, courts that have denied injunctive relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999). Application of the unclean-hands rule is appropriate """"where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party."""" *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (quoting *Performance Unlimited, Ltd. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (quoting, in turn, *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 126 (M.D. Pa. 1992))); *see also Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 15-16 (1966) (observing that the unclean-hands rule "is never used unless the plaintiff is guilty of immoral, unconscionable conduct").

In the interpleader context, the Second Circuit's decision in *Royal School Laboratories* is controlling. In that case Perkins, the Chairman of the School Building Committee of the Town of Watertown, signed an agreement with Twombly Associates, Inc. pursuant to which the latter would furnish laboratory equipment and furniture for the new Town high school. 358 F.2d at 814. A state statute required that a bond be secured to protect materialmen involved in the project, but Perkins did not request that Twombly obtain a bond and Twombly did not do so. *Id.* Twombly hired Royal School Laboratories to supply equipment and furniture for the project. *Id.* Twombly subsequently became insolvent, having paid Royal only ten percent of the amount it owed to Royal. *Id.*

Royal then sued the Town and Perkins in quasi-contract for the value of the materials Royal had provided; Royal also brought a tort claim based on breach of the statutory duty to secure a bond from Twombly. *Id.* New England Merchants National Bank of Boston, the assignee of Twombly,

filed a separate suit against the defendants for the amount of the contract price owed to Twombly. *Id.* The defendants sought interpleader relief, which the trial court denied on the basis that the claims in the two suits were "independent and distinct." *Id.* (internal quotation marks omitted).

The Second Circuit reversed. *Id.* at 817. The Court of Appeals held that the two claims against the Town were "not distinct from" each other, "but inextricably interrelated." *Id.* at 815. Allowing the suits to proceed separately would "leave[] the Town exposed to the very possibility of double liability which interpleader is designed to prevent," and create the risk of "two recoveries against it for the same enrichment." *Id.* As for the Town's responsibility for causing the controversy, the court held: "Whatever the scope of the doctrine that interpleader may not be invoked by a plaintiff with unclean hands, see Mallory S.S. Co. v. Thalheim, 277 F. 196, 201-202 (2 Cir. 1921), the Town's negligent failure to obtain a bond was not 'unclean' enough to trigger this principle." *Id.* at 817 n.3.[5]

*Royal School Laboratories* thus establishes that mere negligence on the part of the stakeholder does not bar interpleader, even if the controversy has resulted quite directly and foreseeably from that negligence. And in light of this precedent, statements to the effect that "one is not entitled . . . to the remedy of interpleader . . . if the hazard which he seeks to avoid has been occasioned by his own act" sweep too broadly, at least in this Circuit. *See Major Oil Corp.*, 583 F.2d at 1158. There has been no suggestion that William Penn engaged in unconscionable, bad-faith or willfully wrongful conduct here. *See A. H. Emery Co.*, 389 F.2d at 18; *Estate of Lennon*, 939 F.

---

[5] *Mallory*, which Viscuso cites, held that interpleader relief was unavailable to a party whose predicament was "of its own intentional creating" and whose conduct made it "an intentional wrongdoer as to . . . the respondents whom it now seeks to compel to interplead." 277 F. at 201-02. We see no reason to view William Penn as an "intentional wrongdoer" in this matter.

Supp. at 293. We therefore find that interpleader is proper despite William Penn's carelessness in accepting the beneficiary-change form from Michael Birns.

### III.     Viscuso is the Beneficiary of the Policy

Having decided that interpleader is appropriate, we will next consider the merits of defendants' competing claims to the Policy. Viscuso argues that, because the power of attorney did not authorize Michael Birns to change the beneficiary of any insurance policy, his attempt to do so was void *ab initio*. (Def. Viscuso Mem Supp. Mot. Dismiss at 12.) The Birns defendants contend that Williams Penn's acceptance of the beneficiary-change form made the change effective notwithstanding the limitation on Michael Birns's authority. (Birns Defs. Mem. Opp. Summ. J. at 18.)

The terms of the Policy reserve the right to change the beneficiary exclusively to the owner, Fieldman. The power of attorney specifically withheld from Michael Birns the authority to change the beneficiary of any insurance contract. William Penn, having received a copy of the power of attorney, was on notice of this limitation. It is a basic tenet of agency law that "the principal will not be bound by the act of his agent in excess of his actual authority where the party doing business with the agent knows the extent of the latter's authority," or is on notice thereof. *Strip Clean Floor Refinishing v. N.Y. Dist. Council No. 9 Bhd. of Painters*, 333 F. Supp. 385, 396 (E.D.N.Y. 1971). Thus, "[n]o obligation can be imposed upon the principal by the act of an agent outside of his real or apparent authority."[6] *Harriss v. Tams*, 258 N.Y. 229, 235 (1932); *see also Scientific Holding Co.*

---

[6] The principal's subsequent ratification of an unauthorized act can make the act binding, *see, e.g.*, *In re Barbieri*, 380 B.R. 284, 294 (Bankr. E.D.N.Y. 2007), but the Birns defendants do not argue that Fieldman ratified the change of beneficiary, and there is no evidence in the record

*v. Plessey Inc.*, 510 F.2d 15, 24 (2d Cir. 1974); *Riverside Research Inst. v. KMGA, Inc.*, 489 N.Y.S.2d 220, 224 (App. Div. 1985).[7] As a result, where an attorney-in-fact seeks to enter into a transaction that the governing power of attorney prohibits, the transaction is invalid. *See, e.g.*, *In re Culbreth*, 852 N.Y.S.2d 246, 246-47 (App. Div. 2008); *Salonen v. Salonen*, 777 N.Y.S.2d 326, 326 (App. Div. 2004).

Generally speaking, "the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary." *McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436, 440 (1998). The Policy at issue here provides in relevant part: "The Owner may change the designations of Owner and Beneficiary during the Insured's lifetime. Written notice of change must be filed at the Home Office . . . in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice." (Meade Aff., Ex. B at 4.) There can be no dispute that the purported change involved here did not comply with the terms of the Policy, since by those terms only the owner could have made the change, and a change would have required a writing signed by the owner.

The recent decision of the U.S. District Court for the Southern District of Florida in *Spoerr v. Manhattan National Life Insurance Co.*, 2007 WL 128815 (S.D. Fla. Jan. 12, 2007) is instructive. There, the Manhattan National Life Insurance Company ("Manhattan") issued a policy insuring the

---

suggesting that he did so. And since the Birns defendants have had the opportunity to advance this argument (if they believed it had merit), we do not agree with William Penn that the theoretical possibility of ratification precludes summary judgment at this point. (*See* William Penn. Mem. Opp. Mot. Dismiss at 7.)

[7] "[T]he parties' briefs assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (internal quotation marks and citation omitted).

life of Patricia Spoerr. *Id.* at *1. Subsequently, Spoerr executed a durable power of attorney naming her son, Richard T. Spoerr, her attorney-in-fact. *Id.* Richard T. then executed a beneficiary-change form, signed by himself and referencing the power of attorney, changing the beneficiary of the policy from Richard E. Spoerr, Patricia Spoerr's husband, to the Patricia A. Spoerr Revocable Trust. *Id.* After Patricia Spoerr died, Manhattan paid the policy proceeds to Richard T. as trustee of the Trust. *Id.*

Richard E. then brought suit seeking recovery of the policy amount plus interest, and the court granted summary judgment in his favor. *Id.* The court found that the power of attorney did not authorize Richard T. to change the beneficiary of a life insurance policy, and held as a result that "the policy change request executed with Richard T.'s signature as Patricia's attorney-in-fact is void *ab initio*." *Id.* at *3. Manhattan's having paid the proceeds to Richard T. did not relieve it of liability to Richard E. because, "[a]s the [power of attorney] did not allow Richard T. as attorney-in-fact to execute the change of beneficiary form, . . . Manhattan was on notice that this change of beneficiary form was invalid and that Richard E. remained the beneficiary of the policy." *Id.* at *4.

Here, the Birns defendants argue that the change was valid because William Penn "accepted" it, which means that the notice of change must have been "in a form acceptable to the Company." (*See* Meade Aff., Ex. B at 4; Birns Defs. Mem. Opp. Summ. J. at 18.) Apparently, the Birns defendants mean to suggest that the purported change complied with the terms of the Policy. But a notice of change "in a form acceptable to the Company" is only one of the Policy's several requirements for a valid change of beneficiary. The requirement that the owner be the party making the change was indisputably not satisfied. And William Penn was not empowered to change the

14

beneficiary *sua sponte*, any more than Michael Birns was. William Penn's acceptance of the beneficiary-change form could not and did not change this fact, or divest Fieldman of his exclusive right to change the beneficiary. The Birns defendants' repeated emphasis of the fact that William Penn "accepted" the purported change is therefore beside the point. (*See* Birns Defs. Mem. Opp. Summ. J. at 18-20.) Neither of the two parties to the attempted change was legally empowered to effect it. The Court therefore concludes that the purported change of beneficiary from Viscuso to the Birns defendants was void *ab initio*.[8] *See Spoerr*, 2007 WL 128815, at *3.

As the Birns defendants point out, an insurer waives strict compliance with the policy provisions by bringing an action in interpleader. *See, e.g.*, *Lopez v. Mass. Mut. Life Ins. Co.*, 566 N.Y.S.2d 359, 360 (App. Div. 1991); (Birns Defs. Mem. Opp. Summ. J. at 19.) But interpleader does not waive the requirement that a change of beneficiary be in at least substantial compliance with the terms of the policy. *See McCarthy*, 92 N.Y.2d at 442; *In re Appleby*, 2006 N.Y. Misc. LEXIS 3844, at *10 (N.Y. Sur. Ct. Dec. 22, 2006). An insurance policy's change-of-beneficiary requirements exist not only to protect the insurer from multiple claims, but also to "serve[] the essential goal of preventing the courts and parties from speculating regarding the wishes of the deceased." *McCarthy*, 92 N.Y.2d at 442.

Under the doctrine of substantial compliance, exact compliance with the terms of the policy will be excused, and a change of beneficiary given effect, where the insured took "an affirmative act or acts to accomplish a change of beneficiary, and these affirmative act or acts . . . accomplished all that it was in [the insured's] actual power to do to change beneficiaries." *Sun Life Assur. Co. of*

---

[8] Having reached this conclusion, we need not consider the parties' contract-reformation arguments. (*See* Birns Defs. Mem. Opp. Summ. J. at 11; William Penn Reply Mem. at 5-6.)

*Canada (U.S.) v. Gruber*, 2007 U.S. Dist. LEXIS 92141, at *56 (S.D.N.Y. Dec. 14, 2007) (citing *McCarthy*, 92 N.Y.2d at 440; internal quotation marks and citations omitted). The intent of the insured is key to the inquiry, but proof of intent alone is not enough: the insured's intent must have been thwarted by circumstances beyond his or her control. *See id.*; *Schoenholz v. N.Y. Life Ins. Co.*, 234 N.Y. 24, 29-30 (1922); *Conn. Gen. Life Ins. Co. v. Boni*, 368 N.Y.S.2d 1, 3 (App. Div. 1975). The insured must have done "all that was reasonably possible to do to show his intention" or have made "every reasonable effort to comply with the policy requirements." *McCarthy*, 92 N.Y.2d at 440 (internal quotation marks omitted).

The Birns defendants do not argue that the purported change of beneficiary substantially complied with the Policy requirements, relying instead on the erroneous premise that there was actual compliance. (*See, e.g.*, Birns Defs. Mem. Opp. Summ. J. at 20.) And the record reveals no basis for a finding of substantial compliance. In fact, conspicuously absent from the Birns defendants' brief is any suggestion whatever that Fieldman intended the change in question. The Birns defendants do not even argue that Michael Birns – who, as attorney-in-fact, owed Fieldman a fiduciary duty, *see, e.g.*, *In re Agrest*, 719 N.Y.S.2d 261, 262 (App. Div. 2001) – acted in furtherance of Fieldman's interests in attempting the change. As the record is completely silent on Fieldman's intent, and as there has been no suggestion that Fieldman did everything in his power (or anything at all) to change the beneficiary and was thwarted by forces beyond his control, the attempted change of beneficiary did not substantially comply with the terms of the Policy. *See McCarthy*, 92 N.Y.2d at 440.

Michael Birns's attempt to change the beneficiary of the Policy was void *ab initio*. Viscuso was the beneficiary at the time of Fieldman's death and is therefore entitled to the proceeds of the

16

Policy, plus interest at the rate of 5 ½ %[9] from the date of Fieldman's death.

As noted above, the Birns defendants have asserted various counterclaims against William Penn. Neither party has briefed the merits of those claims, so the Court will not rule on them at this time.

## CONCLUSION

For all of the foregoing reasons, the motion of plaintiff William Penn Life Insurance Company of New York ("William Penn") for interpleader relief is granted, and defendant Kimbal Viscuso's motion to dismiss the Complaint is denied. William Penn is hereby ordered to deposit into the registry of the Court the sum of $350,000, plus interest at the rate of 5 ½ % per annum computed from April 4, 2007 to the date of deposit. The depositing of said sum shall fully discharge the liability of William Penn on life insurance policy 0700014261.

Defendant Viscuso's motion for summary judgment on her claim to the proceeds of the Policy is granted. The Clerk of the Court is directed to enter judgment in Viscuso's favor in the amount deposited by William Penn pursuant to this Order and to disburse said deposited funds to Viscuso.

---

[9] New York Insurance Law section 3214, which governs interest on the proceeds of life insurance policies, provides in relevant part that "interest upon the principal sum paid to the beneficiary or policyholder shall be computed daily at the rate of interest currently paid by the insurer on proceeds left under the interest settlement option, from the date of the death of an insured . . . in connection with a death claim on such a policy of life insurance." N.Y. INS. LAW § 3214(c) (McKinney 2008). Under the terms of the Policy, the interest rate for the interest settlement option is "at least 5 ½ %," though "[t]he Company may elect to credit interest at a higher rate." (Meade Aff., Ex. B at 12.) According to the affidavit of Victor Fonseca, William Penn's Claims Supervisor, no such election has been made. (*See* Fonseca Aff. ¶ 3.) Therefore, the applicable interest rate is 5 ½ %.

The Court retains jurisdiction over William Penn and defendants Charles M. Birns and Beth S. Martin-Birns for purposes of adjudicating the Birns defendants' counterclaims against William Penn.

All defendants are hereby enjoined from instituting or prosecuting any proceeding in any State or United States court asserting claims to the proceeds of William Penn life insurance policy 0700014261.

SO ORDERED.

Dated: White Plains, New York
       July 30, 2008

                                              *William C. Conner*
                                              Sr. United States District Judge